PETER R. DION-KINDEM (SBN 95267)
THE DION-KINDEM LAW FIRM
PETER R. DION-KINDEM, P. C.
21550 Oxnard Street, Suite 900
Woodland Hills, California 91367
Telephone:      (818) 883-4900
Fax:            (818) 883-4902
Email:          peter@dion-kindemlaw.com

LONNIE C. BLANCHARD, III (SBN 93530)
THE BLANCHARD LAW GROUP, APC
3311 East Pico Boulevard
Los Angeles, CA 90023
Telephone:      (213) 599-8255
Fax:            (213) 402-3949
Email:          lonnieblanchard@gmail.com

Attorneys for Plaintiff Michael Kirchner

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Kirchner, an individual, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>      vs.<br><br>Shred-It USA Inc., a Delaware Corporation, First Advantage LNS Screening Solutions, Inc., and Does 1 through 10,<br><br>      Defendants. | Case No. 2:14-CV-01437-WBS-EFB<br><br>**Plaintiff Michael Kirchner's Memorandum of Points and Authorities in Opposition to Defendant First Advantage, Inc.'s Motion to Dismiss**<br><br>Date:     **November 17, 2014**<br>Time:     **2:00 p.m.**<br>Ctrm:     **5, 14th Floor**<br>Judge:    **Hon. William B. Shubb** |

**Plaintiff's Opposition to Defendant First Advantage's Motion to Dismiss**

# TABLE OF CONTENTS

I.    Plaintiff has standing because First Advantage furnished a "consumer report" concerning Plaintiff to Shred-It, and Plaintiff is entitled to statutory damages for First Advantage's violation of FCRA..................................................................................................... 1

    A.    The report issued by First Advantage and furnished to Shred-It, which was generated in part through the use of Plaintiff's social security number and which reflected that Plaintiff's "consumer file" was "frozen," is a "consumer report" under FCRA. ................................................................................................................ 1

    B.    Defendant's "lack of injury" claim fails because Defendant violated its obligations under the FCRA. ........................................................................... 4

II.   Plaintiff's claim against First Advantage is not barred by the statute of limitations. ...................... 4

    A.    First Advantage has not demonstrated as a matter of law that Plaintiff claim is barred by the two-year statute.............................................................................. 5

    B.    First Advantage has not shown as a matter of law that its alleged violations occurred more than five years before Plaintiff filed his complaint. .................................. 6

III.  Plaintiff has alleged facts demonstrating First Advantage's violation of Section 1681b(b)(1). ....................................................................................................... 7

IV.   Plaintiff has alleged sufficient facts to establish First Advantage's willfulness......................... 10

V.    Plaintiff has sufficiently alleged his class claims. .......................................................... 12

    A.    Plaintiff's proposed class definition is not a "fail safe" class. ......................................... 12

    B.    Plaintiff has adequately alleged the elements of his class claim. ..................................... 17

        1.    Plaintiff has alleged sufficient numerosity. ......................................................... 17

        2.    Plaintiff has alleged fact showing common issues of law or fact and that Plaintiff's claims are typical. .................................................................... 17

        3.    Plaintiff is not an "inadequate" representative merely because he does not seek actual damages for class members............................................................ 18

        4.    There are no defenses "unique" to Plaintiff that preclude certification.............. 21

        5.    Determination of First Advantage's liability will easily be determined.............. 22

        6.    The prosecution of these FCRA claims on a class action basis is far superior to the alternative............................................................................. 23

    C.    If the Court believes that Plaintiff should amend his complaint to alleged facts

regarding his class claims, Plaintiff should be given leave to allege such facts. .............. 25

VI.   Plaintiff should be allowed to amend if the Court determines that additional facts must be alleged. ............................................................................................................................... 25

## Table of Authorities

### Cases

*Beck-Ellman v. Kaz USA, Inc.* (S.D. Cal. 2012) 283 F.R.D. 558, 566 .................................................... 21

*Boothe v. TRW Credit Data* (S.D.N.Y. 1982) 557 F.Supp. 66 ...................................................... 9

*Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir.1976) ....................................... 22

*Chakejian v. Equifax Information Services, LLC* (E.D. Pa. 2011) 275 F.R.D. 201................................. 20

*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957).............................. 25

*Edeh v. Equifax Info. Servs.*, LLC, 919 F.Supp.2d 1006, 1012 (D. Minn. 2013)........................................ 2

*Forbush v. J.C. Penney Co.,* 994 F.2d 1101 (5th Cir.1993) .......................................................... 13

*Gen. Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Com'n*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)................................................................................... 17

*Hiemstra v. TRW, Inc.* (1987) 195 Cal.App.3d 1629, 1633 [241 Cal.Rptr. 564, 566] .............................. 9

*Hiemstra v. TRW, Inc.*, 195 Cal. App. 3d 1629, 1634 (1987)............................................................ 9

*In re AutoZone, Inc., Wage and Hour Employment Practices Litigation* (N.D. Cal. 2012) 289 F.R.D. 526, 546 *reconsideration denied,* (N.D. Cal., Jan. 15, 2013, 3:10-MD-02159-CRB) 2013 WL 163289 .................................................................................................................................... 16

*In re Cornerstone Propane Partners, L.P. Sec. Litig.,* 2006 WL 1180267, *6 ........................................ 22

*Joint Equity Committee of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.* (C.D. Cal. 2012) 281 F.R.D. 422, 435-36.......................................................................... 22

*Linda R.S. v. Richard D.* (1973) 410 U.S. 614, 619 [93 S.Ct. 1146, 1149, 35 L.Ed.2d 536]................... 4

*Messner v. Northshore University HealthSystem* (7th Cir. 2012) 669 F.3d 802, 825 ............................. 16

*Perez-Farias v. Global Horizons, Inc.* (9th Cir. 2012) 499 Fed.Appx. 735, 738 ..................................... 4

*Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 463 (E.D.Pa.1968) ....................... 17

*Syed v. M-I LLC*, No. CIV. 1:14-742 WBS, 2014 WL 5426862, at *4-6 (E.D. Cal. Oct. 23, 2014) . 10, 25

*Trosper v. Styker Corporation* (N.D. Cal., Aug. 21, 2014, 13-CV-0607-LHK) 2014 WL 4145448 ....... 15

*Williams v. Sinclair,* 529 F.2d 1383, 1386–88 (9th Cir.1975)......................................................... 21

*Young v. Nationwide Mut. Ins. Co.* (6th Cir. 2012) 693 F.3d 532, 538-39............................................ 13

### Statutes

15 U.S.C. § 1681a(d)(1)................................................................................................................ 1

15 U.S.C. Section 1681b(b) .......................................................................................................... 7

**Plaintiff's Opposition to Defendant First Advantage's Motion to Dismiss**

15 U.S.C. Section 1681p ............................................................................................................ 4

Civil Code Section 1785.11.2 .................................................................................................. 1

I.   **PLAINTIFF HAS STANDING BECAUSE FIRST ADVANTAGE FURNISHED A "CONSUMER REPORT" CONCERNING PLAINTIFF TO SHRED-IT, AND PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES FOR FIRST ADVANTAGE'S VIOLATION OF FCRA.**

   A.   **The report issued by First Advantage and furnished to Shred-It, which was generated in part through the use of Plaintiff's social security number and which reflected that Plaintiff's "consumer file" was "frozen," is a "consumer report" under FCRA.**

   Even assuming that this Court may properly consider matters outside of the four corners of Plaintiff's Complaint, it is undisputed that First Advantage, using Plaintiff's social security number, obtained a report from a credit reporting company regarding Plaintiff that First Advantage then furnished to Defendant Shred-It and that such report disclosed the following information regarding Plaintiff:

   **Alerts:**

   SpecialAlert_FROZENFILE - Consumer file is frozen (state legislation)

   The fact that Plaintiff had put a security freeze[1] on his credit report is information that First Advantage obtained only because it ran a credit check using Plaintiff's social security number (which *was* accurate), and which it had obtained from Plaintiff pursuant to Plaintiff's defective authorization.

   Pursuant to 15 U.S.C. § 1681a(d)(1), a "consumer report" is defined as follows:

   The term "consumer report" means any written, oral, or other communication of ***any information*** by a consumer reporting agency bearing on a consumer's credit worthiness, ***credit standing***, credit capacity, ***character***, general reputation, ***personal characteristics***, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for --

   (A) credit or insurance to be used primarily for personal, family, or household purposes;

---

[1] Under California law, every "consumer" is entitled to put a "security freeze" on his credit account. Thus, Civil Code Section 1785.11.2 provides:

   (a) A consumer may elect to place a security freeze on his or her credit report by making a request in writing by mail to a consumer credit reporting agency. "Security freeze" means a notice placed in a consumer's credit report, at the request of the consumer, and subject to certain exceptions, that prohibits the consumer credit reporting agency from releasing the consumer's credit report or any information from it without the express authorization of the consumer. If a security freeze is in place, information from a consumer's credit report may not be released to a third party without prior express authorization from the consumer. This subdivision does not prevent a consumer credit reporting agency from advising a third party that a security freeze is in effect with respect to the consumer's credit report.

---

1    (B) employment purposes; or

2    (C) any other purpose authorized under section 1681b of this title. (Emphasis added.)

3    The fact that Plaintiff placed a credit freeze on his credit report is indisputably "information"

4    bearing on Plaintiff's "character" or "personal characteristics," *i.e.*, Plaintiff has an interest in his

5    privacy and does not want persons accessing his credit information without his express consent.

6    Accordingly, the report furnished by First Advantage concerning Plaintiff is a "consumer report" under

7    FCRA.

8    Defendant's reliance on *Edeh v. Equifax Info. Servs.*, LLC, 919 F.Supp.2d 1006, 1012 (D. Minn.

9    2013), a non-binding district court case, is misplaced. In that case, the plaintiff had requested a "credit

10   freeze" to be placed on his Equifax consumer credit file. Edeh filed his first lawsuit against Equifax

11   (*Edeh I* ), alleging various violations of the FCRA, including allegations that the Defendant reported

12   inaccurate information related to one of Edeh's credit card accounts. *See Edeh v. Equifax Info. Servs.,*

13   *LLC, et al.,* Civil No. 11–2671 (SRN/JSM).

14   When a consumer files a lawsuit against Equifax in which the accuracy of the information

15   contained within the consumer's credit file is disputed, pursuant to its policies, Equifax takes a

16   consumer's credit file "offline" until the dispute is resolved. This was referred to as Equifax's "offline

17   policy." When a consumer's credit file is offline, it continues to exist within Equifax's consumer

18   database, but it is unavailable to creditors and other third parties. It does not become available to such

19   third parties until Equifax places the file back "online," regardless of whether or not a credit freeze is in

20   place. While it is offline, the consumer's credit file is also unavailable to Equifax personnel who are

21   responsible for responding to routine customer requests for credit file disclosures. During the time a

22   consumer's credit file is offline, if that consumer requests a copy of his credit file, it is Equifax's

23   procedure to route the request to its internal consumer department. Members of that department are

24   supposed to coordinate with outside counsel to arrange for delivery of the credit file to the consumer.

25   Pursuant to its offline policy, Equifax took Edeh's file offline when Edeh filed *Edeh I,* a case in

26   which he disputed the accuracy of information contained within his credit file. After litigation

27   commenced, and during the time Edeh's file was offline, Edeh contacted Equifax on numerous

28

**Plaintiff's Opposition to Defendant First Advantage's Motion to Dismiss**

occasions to request a copy of his credit file and credit score. He also made several requests to remove the credit freeze. Equifax, however, did not send Edeh a copy of his credit file and credit score, nor did it remove the credit freeze.

On January 13, 2012, Edeh applied for a loan with Mayo Employees Federal Credit Union (MEFCU). On February 13, 2012, MEFCU notified Edeh that it was unable to extend credit to him because it was "unable to obtain credit report" from Equifax. In March 2012, MEFCU again attempted to obtain Edeh's credit file from Equifax, but received the following message: "Consumer requested security freeze on his/her file—report unavailable." A MEFCU loan officer notified Edeh that he was "unable to obtain the needed information" from Edeh's credit file, and so he could not process Edeh's loan application. On March 30, 2012, Think Mutual Bank attempted to obtain a copy of Edeh's Equifax credit file in order to complete a credit application, but was unable to do so. Without the credit report, Think Mutual Bank could not complete the application. In April 2012, Edeh applied for a Discover credit card, but because Discover was unable to access Edeh's credit report, it was unable to process his application.

The Court rejected Edeh's claim based on the alleged violation of Section 1681i of the FCRA -- which is not involved in this case and only governs disputes regarding "the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency." Thus, this case did not involve the issue of whether a "consumer report" had been prepared regarding Edeh, but whether the "fact" of the existence of a security freeze was "inaccurate."

The Court held that, even if the presence of a security freeze constituted an "item of information" within a consumer's file, Edeh's claim still failed because the information was not "inaccurate":

> There is no evidence in the record that Edeh's Equifax credit file contained inaccurate information. The allegedly inaccurate information at issue in this case is the presence of a credit freeze on Edeh's consumer file. Edeh acknowledges that in May 2011, he placed the credit freeze on his consumer credit file. He outlines his attempts to remove the credit freeze, and states that despite his requests to remove the freeze, Equifax failed to remove it. *See* Compl. ¶ 91 (stating that Equifax "never removed the credit freeze"); *id.* ¶ 107 ("Defendant failed to remove the credit freeze from Plaintiff's consumer credit file...."). Because Edeh was unable to remove the credit freeze, the credit freeze, in fact, remained in place. Thus, the notice of a credit freeze within Edeh's file was technically accurate, although perhaps the presence of the freeze was no longer desired. (*Edeh v. Equifax Information Services, LLC* (D. Minn. 2013) 919 F.Supp.2d 1006, 1013 *reconsideration*

1    *denied,* (D. Minn., Mar. 20, 2013, CIV. 12-1301 JNE/FLN) 2013 WL 1173920.

2    This case (which is not controlling) is clearly inapposite to the issue in this case.

3    **B.    Defendant's "lack of injury" claim fails because Defendant violated its obligations**
4         **under the FCRA.**

5    Defendant contends that "Plaintiff does not allege any facts showing he was harmed by the

6    alleged lack of proper certification" and that the lack of such certification could therefore have not

7    "harmed" plaintiff. The FCRA specifically provides for an award of statutory damages in lieu of

8    "actual" damages, however, where a Defendant's violation is willful, as is alleged in this case. Thus,

9    Plaintiff is not required to show "actual damages" in order to pursue a claim for statutory damages.

10   Indeed, were Defendant's argument accepted, a plaintiff would never be able to pursue a claim

11   for statutory damages under any statute without also showing "actual" damages. This clearly is not the

12   law. In fact, the law is clear that where statute creates legal rights, a plaintiff has standing thereunder to

13   seek statutory damages by showing a violation of those rights. (*Linda R.S. v. Richard D.* (1973) 410 U.S.

14   614, 619 [93 S.Ct. 1146, 1149, 35 L.Ed.2d 536] (". . . Congress may enact statutes creating legal rights,

15   the invasion of which creates standing, even though no injury would exist without the statute."); *Perez-*

16   *Farias v. Global Horizons, Inc.* (9th Cir. 2012) 499 Fed.Appx. 735, 738.) ("Because the FLCA creates

17   legal rights, Workers have standing under both federal and state law to seek statutory damages by

18   showing a violation of those rights. . . . Proof of injury from each class member is not required.")

19   If, as Plaintiff has indisputably alleged, Defendant willfully violated its statutory obligations,

20   Plaintiff is entitled to statutory damages and need not prove "actual injury."

21   **II.    PLAINTIFF'S CLAIM AGAINST FIRST ADVANTAGE IS NOT BARRED BY THE STATUTE OF**
22        **LIMITATIONS.**

23   15 U.S.C. Section 1681p provides:

24        An action to enforce any liability created under this subchapter may be brought in any
25        appropriate United States district court, without regard to the amount in controversy, or in
          any other court of competent jurisdiction, not later than the earlier of—

26        (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for
27        such liability; or

28        (2) 5 years after the date on which the violation that is the basis for such liability occurs.

---

**Plaintiff's Opposition to Defendant First Advantage's Motion to Dismiss**

In this case, the violation that is the basis of First Advantage's liability is the furnishing of the consumer report to Shred-It without first obtaining from Shred-It the requisite certification of Shred-It's compliance with its obligations as to Plaintiff. Plaintiff alleges that he first discovered First Advantage's violations, *i.e.*, that a consumer report had in fact been furnished without First Advantage providing the requisite certification to First Advantage within two years of the filing of the lawsuit:

> 46. The violation that is the basis of liability of this claim is the provision of a consumer report regarding Plaintiff or the class member without first obtaining the requisite certification from the person to whom the consumer report was being provided that such person, as to each consumer as to which a consumer report was provided, "***has complied*** with paragraph (2) ***with respect to the consumer report***, and the person ***will comply*** with paragraph (3) ***with respect to the consumer report*** if paragraph (3) becomes applicable; and (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation."

> 47. Plaintiff discovered Defendants' violation(s) within the last two years when he obtained and reviewed his personnel file from Shred-It and discovered that Shred-It had procured and/or caused to be procured from First Advantage a "consumer report" regarding him for employment purposes and thereafter discovered, after First Advantage filed its motion to dismiss in this action, that Shred-It had not provided the requisite certification to First Advantage regarding Plaintiff's consumer report before First Advantage provided the consumer report to Shred-It.

A.      **First Advantage has not demonstrated as a matter of law that Plaintiff claim is barred by the two-year statute.**

First Advantage has not established as a matter of law that Plaintiff knew that First Advantage had furnished a consumer report to Shred-It pertaining to Plaintiff without first obtaining the required certification from Shred-It more than two years before Plaintiff filed this action. Indeed, it is unclear how First Advantage could ever demonstrate Plaintiff's knowledge in this regard, because there is no reason for Plaintiff to have been involved in the communications between First Advantage and Shred-It regarding Shred-It's certification to First Advantage that it had in fact complied with its obligations as to Plaintiff.

First Advantage's discussion of when Plaintiff *signed* the deficient authorization is irrelevant to the statute of limitations applicable to Plaintiff's claim against First Advantage. It is not obtaining Plaintiff's signature on the deficient authorization that constitutes First Advantage's violation (which signature was obtained by Shred-It, not First Advantage). Nor is it even the procurement of the

consumer report by Shred-It that is the basis of liability against First Advantage. Rather, the violation upon which First Advantage's liability is based is First Advantage's provision of the consumer report to Shred-It without first obtaining Shred-It's ***certification that it actually "has complied"*** with its obligations under Section 1681b(b)(2) as to Plaintiff.

In *Syed v. M-I LLC*, No. CIV. 1:14-742 WBS, 2014 WL 5426862, at *6 (E.D. Cal. Oct. 23, 2014), this Court rejected the identical statute of limitations argument asserted by the CRA in that case, holding:

> With regard to the claim against PreCheck, the facts allegedly constituting the violation are PreCheck's furnishing of a consumer report on plaintiff without first receiving § 1681b(b)(1) certification from M-I. Nothing on the disclosure and authorization form signed by plaintiff necessarily alerts plaintiff to a lack of § 1681b(b)(1) certification or otherwise constitutes "discovery by the plaintiff of the violation." 15 U.S.C. § 1681p. To the contrary, any alleged violation of § 1681b(b)(1) on the part of PreCheck would have had to occur *after* plaintiff signed the form. Further, PreCheck advances no reason, and the court can see no reason, why a reasonably diligent plaintiff would have necessarily discovered the § 1681b(b)(1) violation on September 19, 2011–the date plaintiff stopped working for M–I. Because the court must accept the truth of plaintiff's allegation that he discovered the violation "within the last two years" for purposes of this motion, (FAC ¶ 50), the court will deny PreCheck's motion to dismiss on this ground.

**B.    First Advantage has not shown as a matter of law that its alleged violations occurred more than five years before Plaintiff filed his complaint.**

As discussed above, the violations asserted against First Advantage consist of its provision of a consumer report to Shred-It regarding Plaintiff without obtaining a certification from Shred-It. There are no facts alleged in the First Amended Complaint demonstrating that such acts occurred more than five years before this action was filed. Indeed, the consumer report attached to Defendant's moving papers reflects that it was created on April 27, 2011, with is less than five years before this action was filed.

Defendant's reference to the date of an agreement that was entered into between First Advantage Enterprise Screening Corporation, an entity that is not a named defendant in this action, and Shred-It is puzzling. ***Defendant First Advantage is not a party to this agreement*** and certainly cannot rely thereon to satisfy its statutory obligation to obtain a certification from Shred-It before providing a consumer report about Plaintiff to Shred-It. Moreover, the act of entering into a "master agreement" does not

violate the FCRA – it is First Advantage's act of providing a consumer report without obtaining the requisite certification that is the basis of Plaintiff's claim against First Advantage.

**III.    PLAINTIFF HAS ALLEGED FACTS DEMONSTRATING FIRST ADVANTAGE'S VIOLATION OF SECTION 1681B(B)(1).**

15 U.S.C. Section 1681b(b) of the FCRA regulates the conduct of "persons" who furnish or use a "consumer report" for employment purposes as follows:

(b) Conditions for furnishing and using consumer reports for employment purposes

(1) Certification from user

*A consumer reporting agency may furnish a consumer report for employment purposes only if* --

(A) the person who obtains such report from the agency certifies to the agency that--

(i) the person *has complied* with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and

(ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and

(B) the consumer reporting agency provides with the report, or has previously provided, a summary of the consumer's rights under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

(2) Disclosure to consumer

(A) In general

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person. . . . (Emphasis added.)

Thus, First Advantage was not authorized to "furnish" a consumer report regarding Plaintiff to Shred-It for employment purposes unless and until Shred-It first "certified" to First Advantage that it --

"**has complied** with paragraph (2) with respect to the consumer report, and the person **will comply** with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and

(ii) information from the consumer report **will not be used** in violation of any applicable Federal or State equal employment opportunity law or regulation . . . (Emphasis added.)

First Advantage does not dispute that it is a "consumer reporting agency" for purposes of the requirements of the FCRA. In his First Amended Complaint, Plaintiff alleges that First Advantage violated obligations under Section 1681b(b)(1) as follows:

39. Defendants violated Section 1681b(b)(1) by furnishing consumer reports regarding Plaintiff and other class members for employment purposes to Shred-It and others without first obtaining from Shred-It and other persons to whom they furnished such reports a certification by such person as to each consumer report it furnished to such person that such person "has complied with paragraph (2) [of Section 1681b(b)] with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) [of Section 1681b(b)] becomes applicable."

40. Defendants knew or should have known about their legal obligations under the FCRA. The language of Section 1681b(b)(1) is plain and clearly ascertainable. According to Section 1681b(b)(1)(A), a "consumer reporting agency may furnish a consumer report for employment purposes only if -- (A) the person who obtains such report from the agency certifies to the agency that-- (i) the person **has complied** with paragraph (2) **with respect to the consumer report**, and the person **will comply** with paragraph (3) **with respect to the consumer report** if paragraph (3) becomes applicable; and (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation." (Emphasis added.)

41. By failing to obtain the required specific certification from Shred-It and other persons to whom Defendants furnished consumer reports as to each consumer report provided before providing the specific consumer report that was the subject of the certification, Defendants violated the express requirement of Section 1681(b)(1).

42. Defendants knew or should have known about their legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission. Defendants obtained or had available substantial written materials which apprised them of their duties under the FCRA. Any reasonable consumer reporting agency knows about or can easily discover these obligations.

43. Despite knowing of these legal obligations, Defendants intentionally or recklessly acted consciously in breaching their known duties and depriving Plaintiff and other Class members their rights under the FCRA. Plaintiff believes that Defendants did not obtain proper and valid certifications before providing consumer reports to those persons to whom they were provided because Defendants did not want to incur the expenses associated with obtaining such certifications as to each consumer as to whom a

**Plaintiff's Opposition to Defendant First Advantage's Motion to Dismiss**

1    consumer report was generated and provided by Defendants.

2         These factual allegations (which must be accepted as true for purposes of this motion) establish

3    First Advantage's violation of its obligations under FCRA.

4         First Advantage's claim that, as a matter of law, it had in fact received a certification of

5    compliance from Shred-It with respect to Plaintiff before providing the consumer report regarding

6    Plaintiff to Shred-It has no merit. There are no facts alleged in the First Amended Complaint

7    establishing such fact as a matter of law. Moreover, First Advantage's reliance on the declaration of an

8    employee and a "master agreement" between Shred-It and *an entity that did not provide the consumer*

9    *report in dispute*, is completely improper. (See Objections filed herewith.)

10        The "prospective" certification contained in the master agreement is of no legal effect. Section

11   1681b(b)(1) specifically required First Advantage to obtain a certification from Shred-It that it "*has*

12   *complied*" with paragraph (2) with respect to the consumer report," *inter alia*. A contractual undertaking

13   between Shred-It and *another third party entity that did not provide the consumer report to Shred-It*

14   that Shred-It would be *"deemed"* to have satisfied its certification obligations merely by ordering a

15   consumer report has no legal effect, and First Advantage cites no law which supports such claim.

16        Both *Boothe v. TRW Credit Data* (S.D.N.Y. 1982) 557 F.Supp. 66 and *Hiemstra v. TRW, Inc.*

17   (1987) 195 Cal.App.3d 1629, 1633 [241 Cal.Rptr. 564, 566] are inapposite. In *Boothe*, the "blanket

18   certification" by the employer was not that it "had complied" with its disclosure and authorization

19   obligations, but that "it will request and use credit data received from TRW solely in connection with a

20   credit transaction involving the consumer as to whom a credit profile is sought." This is a separate

21   obligation from the obligation of Shred-It to certify that it "has complied" with the disclosure and

22   authorization requirements of Section 1681b(b)(2).

23        Similarly, in *Hiemstra*, TRW obtained from subscribers, a general agreement certifying that it

24   will "request and use credit data received from TRW solely in connection with a credit transaction

25   involving the consumer as to whom the credit profile is sought." Again, this prospective "blanket

26   certification" did not involve a certification that the employer "has complied" with its disclosure and

27   authorization requirements as mandated by Section 1681b(b).

28

---

**Plaintiff's Opposition to Defendant First Advantage's Motion to Dismiss**

First Advantage's attack on the adequacy of Plaintiff's allegations is nonsensical. Plaintiff is alleging that **no certification** was obtained by First Advantage from Shred-It, accurate or inaccurate. Thus, there is no certification to provide, to quote from, or to describe how such non-existent certification was insufficient.

IV.   **PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO ESTABLISH FIRST ADVANTAGE'S WILLFULNESS.**

There is no statutory support for First Advantage's claim that a contractual undertaking between Shred-It and **a third party not named as a defendant in this case** constitutes the required "certification"[2] by **Shred-It to First Advantage** that Shred-It "has complied" with its obligations in Section 1681b((b)(2).

In *Syed v. M-I LLC*, No. CIV. 1:14-742 WBS, 2014 WL 5426862, at *4-6 (E.D. Cal. Oct. 23, 2014), this Court rejected a similar claim by a CRA that a "prospective blanket" certification that an employer "would comply" with its obligations was sufficient under Section 1681b(b)(1). The Court reasoned:

> Plaintiff alleges that PreCheck "intentionally or recklessly" breached its obligation under § 1681b(b)(1) of the FCRA. (FAC ¶¶ 42–43.) This obligation, plaintiff argues, required PreCheck to obtain a specific certification from M–I *after* M–I had provided a disclosure form to plaintiff and received plaintiff's authorization but *before* it furnished M–I with the consumer report. (*See* FAC ¶ 49.) Plaintiff's understanding relies on § 1681b(b)(1)'s use of the phrase "has complied with paragraph (2) with respect to the consumer report." 15 U.S.C. § 1681b(b)(1)(A) (i).[2]
>
> PreCheck argues it interpreted § 1681b(b)(1) as allowing it to obtain a one-time "prospective, blanket certification" from M–I. (PreCheck's Mem. at 9 (Docket No. 38–1).) It points to a document purportedly provided by M–I to PreCheck in June 2002 that promised M–I would "preform legal obligations [under the FCRA]," including that it would "make a clear and conspicuous written disclosure to the consumer before the report is obtained, in a document that consists solely of the disclosure, that a report may be obtained." (*See id.* at 12; Do Decl. Ex. A (Docket No. 10–4).)
>
> Unlike the interpretation analyzed in *Safeco,* however, the court sees no apparent foundation in the text of § 1681b(b)(1) for PreCheck's belief that it could rely on M–I's prospective certification of compliance with paragraph (2). *See Safeco* 551 U.S. at 69–70

---

[2] *Cf. Black's Law Dictionary* 220 (7th ed.1997) (defining "certify" as "1. To authenticate or verify in writing. 2. To attest as being true or as meeting certain criteria."); *Webster's II New Riverside University Dictionary* 244 (1994) (defining "certify" as "[t]o confirm formally as true, accurate, or genuine, esp. in writing").

("While we disagree with Safeco's analysis, we recognize that its reading has a foundation in the statutory text and a sufficiently convincing justification to have persuaded the District Court to adopt it and rule in Safeco's favor." (internal citations omitted)). Prospective certification actually runs counter to § 1681b(b)(1)'s use of the phrase "has complied," which clearly appears to refer retrospectively to an action already taken. 15 U.S.C. § 1681b(b)(1) ("the person *has complied* with paragraph (2)" (emphasis added)). It makes no sense for M–I to certify that it "has complied" with the FCRA before having done so; M–I must wait until it actually "has complied" to certify its actions. Even if the statute's language is not entirely "pellucid," it is clear enough to foreclose the use of a prospective certification as to compliance with paragraph (2).

This understanding is reinforced by the statute's next clause, which requires certification that "the person *will comply* with paragraph (3) ... if paragraph (3) becomes applicable"-a sharp contrast of language suggesting that Congress contemplated prospective certification as to paragraph (3), but not paragraph (2). 15 U.S.C. § 1681b(b)(1)(A)(i). Accordingly, whether or not PreCheck received a prospective certification from M–I in 2002, the plain language of § 1681b(b)(1) supports plaintiff's allegation that PreCheck intentionally or recklessly violated the FCRA by failing to secure a certification that M–I "has complied" with paragraph (2).

PreCheck's actions might be objectively reasonable if it could point to some court decision or "authoritative guidance" from the FTC that it relied upon when deciding to use a prospective, blanket certification. That is, PreCheck must show that it had some "sufficiently convincing justification" for thinking that a prospective certification fulfilled its obligation under the FCRA. *Safeco* 551 U.S. at 69–70. But PreCheck has not provided, and the court cannot find, any court decision addressing the use of prospective certifications under § 1681b (b)(1).

PreCheck does offer two FTC opinion letters, (Precheck's Mem. at 9–10 (Docket No. 39)), but these letters do not authorize, or even directly address, the use of prospective certification. The first letter only confirms that a consumer reporting agency "is not required to maintain a record of the consumer's underlying written authorization" so long as it "receive[s] the employer's certification before furnishing a consumer report for employment purposes." (*See* Letter from Shoba Kammula, Fed. Trade Comm'n, to Stephen Kilgo, President, Intelnet Inc. (July 28, 1998), Muro Decl. Ex. A (Docket No. 39–3).) The second letter states that a consumer reporting agency must obtain certification "that the client obtaining the report is in compliance" with 15 U.S.C. § 1681b(b)(2). (*See* Letter from William Haynes, Att'y, Div. of Credit Practices, Fed. Trade Comm'n, to John Beaudette, Operations Manager, Employment Screenings Servs. (June 9, 1998), Muro Decl. Ex. B.) When read in context, the use of the phrase "in compliance" does not authorize prospective certification. And even if it did, neither letter contains the level of "authoritative guidance" required by *Safeco. (See* Letter from Shoba Kammula, Fed. Trade Comm'n, to Stephen Kilgo, President, Intelnet Inc. (July 28, 1998), Muro Decl. Ex. A ("This is an informal staff opinion and is not binding on the Commission."); Letter from William Haynes, Att'y, Div. of Credit Practices, Fed. Trade Comm'n, to John Beaudette, Operations Manager, Employment Screenings Servs. (June 9, 1998), Muro Decl. Ex. B ("The statements contained in this letter represent the opinions of the Commission's staff and are advisory in nature.").)

Finally, PreCheck points to several court cases allowing "blanket certifications" under a

**Plaintiff's Opposition to Defendant First Advantage's Motion to Dismiss**

different subsection of the FCRA–15 U.S.C. § 1681e-and argues that these cases support its conclusion that prospective, blanket certifications can be used under § 1681b(b)(1) as well. (*See* Pl.'s Mem. at 10–11 (citing *Boothe v. TRW Credit Data,* 557 F.Supp. 66, 71 (S.D.N.Y.1982); *Hiemstra v. TRW, Inc.,* 195 Cal.App.3d 1629, 1634, 241 Cal.Rptr. 564 (2d Dist.1987).) However, § 1681e contains significantly different language from § 1681b(b)(1). It contains concurrent—and prospective-looking language, while § 1681b(b)(1) contains retrospective language. *Compare* 15 U.S.C. § 1681e (requiring a user of consumer reports to "certify the purposes for which the information *is sought,* and certify that the information *will be* used for no other purpose" (emphasis added), with 15 U.S.C. § 1681b(b)(1) (requiring that a user certify that "the person *has complied* with paragraph (2)" (emphasis added)). This distinction defeats the idea that PreCheck could have reasonably relied on cases interpreting § 1681e.

Unlike with M–I, the dearth of authority interpreting § 1681b(b)(1) works against PreCheck because PreCheck cannot justify its non-compliance with the plain meaning of the statutory text. Accordingly, the court finds dismissal for failure to state a claim against PreCheck inappropriate.

V.   **PLAINTIFF HAS SUFFICIENTLY ALLEGED HIS CLASS CLAIMS.**

The class identified by Plaintiff as to his claims against First Advantage is as follows:

> All persons residing in the United States (including all territories and other political subdivisions of the United States) as to whom First Advantage LNS Screening Solutions, Inc. furnished consumer reports for employment purposes within the period prescribed by FCRA, 15 U.S.C. §1681p without first obtaining from the person to whom First Advantage LNS Screening Solutions, Inc. furnished such consumer report a certification that such person had complied with its obligations under Section 1681b(b)(2) as to the subject of the consumer report.

A.   **Plaintiff's proposed class definition is not a "fail safe" class.**

First Advantage's "fail safe class" argument is baseless. First, the Ninth Circuit has not explicitly held that fail-safe classes are precluded. In *Vizcaino v. United States Dist. Ct. for W.D. Wash.,* 173 F.3d 713 (9th Cir.1999), plaintiff defined members of the putative class as "common law employees." The district court held that it was circular to define a class using a legal conclusion that was essential to an ultimate finding of liability. *Id.* at 722. The Ninth Circuit rejected this reasoning, holding that "[i]t is implicit in the definition of the class that its members are persons who claim to have been (or to be) common law employees who were denied ESPP benefits." *Id.* The court elaborated, quoting with approval a Fifth Circuit opinion holding that membership in a class can be defined in terms of the

success of class members' legal claims. *Id.* (citing *Forbush v. J.C. Penney Co.,* 994 F.2d 1101 (5th Cir.1993)).

In *Forbush,* defendant argued that plaintiff's class was improperly defined because "the court ... first [had to] determine whether an employee's pension benefits were improperly reduced before that person [could] be said to be a member of the class." *Forbush,* 994 F.2d at 1105. The court rejected this argument, stating:

> This argument is meritless and, if accepted, would preclude certification of just about any class of persons alleging injury from a particular action. These persons are linked by this common complaint, and the possibility that some may fail to prevail on their individual claims will not defeat class membership. *Id.*

This is not a "fail safe" class, because no "legal determination of liability" is necessary to determine a class members' membership in the class. Rather, whether First Advantage furnished a consumer report regarding the class member is an objective factual determination. Similarly, whether the user to whom First Advantage provided such report certified before providing such report that it ***actually "had complied"*** with its obligations under Section 1681b(b)(2) is also an objective, factual determination, not a legal determination of liability.

In *Young v. Nationwide Mut. Ins. Co.* (6th Cir. 2012) 693 F.3d 532, 538-39, the Court explained why a class which is defined by reference to objective criteria is not an impermissible "fail safe" class:

> The class definition at issue before us includes persons "who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted." Defendants assert that the determination of whether premium taxes were charged that were not owed or were at rates higher than permitted goes to the heart of the claims and impermissibly determines a required element of each claim against them. But a "fail-safe" class is one that includes *only* those who are *entitled* to relief. Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those "class members win or, by virtue of losing, they are not in the class" and are not bound. *Randleman,* 646 F.3d at 352. Such a result is prohibited in large part because it would fail to provide the final resolution of the claims of *all* class members that is envisioned in class action litigation. Plaintiffs' classes will include both those entitled to relief and those not. Defendants' other argument—that they are not ultimately liable for many of the class members, even if they were incorrectly charged—proves the point. This is not a proscribed fail-safe class.
>
> Defendants also assert that the class definition is not administratively feasible because it requires impermissible merits inquiries. Defendants' argument is less a question of

violating the limitation on merits inquiries and more related to fulfilling the requirement that a class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member. *See Crosby v. Social Sec. Admin.,* 796 F.2d 576, 580 (1st Cir.1986) (citations omitted). Courts have found feasibility lacking in a class definition that contains claimants who did not have a hearing "within a reasonable time," *id.,* a definition requiring individual determinations of constitutional violations, *see Catanzano v. Dowling,* 847 F.Supp. 1070, 1079 (W.D.N.Y.1994), and a definition requiring legal determinations of whether each class member was "disabled" under the Americans with Disabilities Act, *Davoll v. Webb,* 194 F.3d 1116, 1146 (10th Cir.1999). Permissible defining criteria have been described as follows:

> For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria. In some circumstances, a reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective criterion for proper inclusion in a class definition. Similarly, a reference to fixed, geographic boundaries will generally be sufficiently objective for proper inclusion in a class definition.

*Moore's Federal Practice* § 23.21[3] (citations omitted).

Plaintiffs' classes are defined by classic categories of objective criteria. Class membership based on the proposed definition requires determining the following facts: the location of the insured risk/property; the geographical boundaries for the relevant local government; the local tax for a particular taxing district within whose boundaries the insured property is located; and the local tax charged and collected from the policyholder. Although Defendants describe these facts as disputed, it is clear from their briefs and arguments below that what they dispute is whether they are ultimately liable to a policyholder for an incorrect overcharge, not whether the policyholder was, in fact, so charged. *Cf. Kinder v. Nw. Bank,* 278 F.R.D. 176, 183 (W.D.Mich.2011) (finding class definition sufficiently definite when based on objective criteria including whether plaintiffs used one of the defendant's ATMs at one of the specified locations during the relevant time period and whether they were charged a fee).

To the extent that these facts overlap with a required element of Plaintiffs' claims (such as showing injury), allowing a determination that an individual was subject to one tax, but was charged a different tax, is no different than determining whether an individual is of a minority race or gender, required elements in class action discrimination cases and most certainly part of the class definition. *See, e.g., Dukes,* 131 S.Ct. at 2547 (describing class as including only female employees of Wal–Mart). Had this class included all Kentucky policyholders, Defendants would surely have challenged the definition as overly broad. The criteria referenced in the class definition are objective and are not necessarily determinative of the ultimate issue of liability. The district court did not abuse its discretion in finding the proposed definition sufficiently definite.[2]

Were First Advantage's argument accepted, no class whose membership depended on any factual, objective criteria could ever be certified. This, or course, is not the case. As the Court explained in *Trosper v. Stryker Corporation* (N.D. Cal., Aug. 21, 2014, 13-CV-0607-LHK) 2014 WL 4145448

> Defendants' contention that Trosper's proposed class is "fail safe" is meritless. Plaintiff's class definition includes "[a]ll individuals who were employed by defendants during the Class Period in California who held the title of "Sales Representatives.' " Mot. at 3. Nothing in this definition would allow a putative class member to escape class membership should the class fail at the merits stage, nor does the class definition require a determination of whether Howmedica violated Cal. Lab.Code § 2802 for any given class member before deciding if that person is a class member. Indeed, were Defendants' assertion true that "because there is only one substantive legal claim pled ... the proposed class [ ] effectively and necessarily requires a determination of [whether Howmedica's reimbursement policy violated Cal. Lab.Code § 2802] before a Sales Representative can qualify as a class member," (Opp'n at 11), Defendants' construction of the "fail safe" doctrine would render every class unascertainable if the plaintiff class seeks a finding of liability against the defendant. Defendants' construction is also unsupported by the law. *See, e.g., Hopkins v. Stryker Sales Corp.,* 2012 WL 1715091, at *3 (N.D.Cal. May 14, 2012) (certifying, without mentioning any "fail safe" problem, a class with definition of "[a]ll employees who were employed by defendant during the class period in California who hold the title of 'Sales Representative' "); *Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.,* 2013 WL 6145706, at *3–4 (N.D.Cal. Nov. 21, 2013) (granting conditional class certification of a class of "[a]ll persons, who are, have been, or will be employed by Bed Bath & Beyond of California Limited Liability Corporation in the State of California from August 1, 2008 through the date of preliminary approval in a Covered Position"); *Lindell v. Synthes USA,* 2014 WL 841738, at *4 (E.D.Cal. Mar. 4, 2014), *report and recommendation adopted,* 2014 WL 1794467 (E.D.Cal. May 6, 2014) (recommending class certification of two classes, both defined as "all former, current, and future Sales Consultants who have been, are, or will be employed by Synthes in California from four years prior to the filing of this action (December 13, 2007) to the date of final disposition").

> Accordingly, the Court finds Plaintiff's proposed class definition is ascertainable because the class definition does not require success on the Plaintiffs' claims in order to determine who is or is not a class member.

Similarly, in *Onley v. Job.com, Inc.* (E.D. Cal., Sept. 30, 2013, 1:12-CV-01724-LJO) 2013 WL 5476813, the Court explained the concept as follows:

> However, in the Ninth Circuit, it is not necessary to deny certification (or in this case strike class allegations) simply because the initially proposed class is a "fail safe" class. *In re AutoZone, Inc., Wage & Hour Employment Practices Litig.,* 289 F.R.D. 526, 546 (N.D.Cal.2012). Rather, the proposed class may be redefined to avoid ascertainability problems. *Id.*

> Here, Plaintiff has done just that, and now seeks certification of the following class:

1
2
3

> All persons within the United States who received any telephone calls from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system within the four years prior to the filling of the Complaint.

4

Doc. 54 at 2.

5

There is no longer any language in this class definition that could even arguably cause a "failsafe" problem. Moreover, membership in this class can be readily determined by objective criteria. Only those persons within the United States who received autodialed or prerecorded calls fromJob.com on their cellular telephone between October 19, 2008 and October 12, 2012 (the date the Complaint was filed) may be included.

6
7
8

Third Party Defendants respond to this new proposed class by arguing that the class is nevertheless infirm because it proposes to represent anyone contacted by Job.com, without regard to whether such persons consented to be called. Doc. 58 at 3. Although Third Party Defendants are correct that prior consent means there is no violation of the TCPA, Third Party Defendants cannot have it both ways. If it is per se impermissible to define the class in such a way that it only includes persons whose rights have been violated because they did not consent, it cannot be per se impermissible to re-define that class to include some individuals who consented to be called. To so hold would absolutely preclude class actions in TCPA cases, an outcome that finds no support in the law.

9
10
11
12
13
14

In *In re AutoZone, Inc., Wage and Hour Employment Practices Litigation* (N.D. Cal. 2012) 289

15

F.R.D. 526, 546 *reconsideration denied,* (N.D. Cal., Jan. 15, 2013, 3:10-MD-02159-CRB) 2013 WL

16

163289, the district court explained that the Ninth Circuit has not explicitly held that fail safe classes are

17

precluded:

18

> But as the Central District noted, the Ninth Circuit does not seem to have "explicitly held that fail-safe classes are precluded." *See Heffelfinger v. Elec. Data Sys. Corp.,* No. 07–101 MMM, 2008 WL 8128621, at *10 n. 57. *Heffelfinger* noted that the Circuit had held, in the context of whether a poorly-drafted class definition justified denying certification outright, that "[i]t is implicit in the definition of the class that its members are persons who claim to have been [wrongfully denied benefits]." *Id.* (citing *Vizcaino v. United States Dist. Court for W.D. Wash.,* 173 F.3d 713, 722 (9th Cir.1999)). However, *Vizcaino* left a district court broad discretion, *Heffelfinger* concluded, "to define [a] class to avoid the 'fail-safe' problem." *Id.* (further noting "the court has discretion either to redefine the class or to afford plaintiffs an opportunity to do so").

19
20
21
22
23
24

> Rather than denying certification on the basis of the fail safe definition, the Court would have discretion here to redefine the class as "all employees who sought and did not receive reimbursement for mileage," which seems to avoid both ascertainability problems. This problem is therefore not insurmountable.

25
26
27

Moreover, as the Seventh Circuit held in *Messner v. Northshore University HealthSystem* (7th

28

Cir. 2012) 669 F.3d 802, 825:

---

**Plaintiff's Opposition to Defendant First Advantage's Motion to Dismiss**

1    Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand,
2    the fail-safe problem is more of an art than a science. Either problem can and often
3    should be solved by refining the class definition rather than by flatly denying class
     certification on that basis. See, *e.g., Campbell,* 269 F.R.D. at 73–74 (court revised class
4    definition to correct problem); *Lewis v. First American Title Ins. Co.,* 265 F.R.D. 536,
     551 (D.Idaho 2010) (same); *Carson P. ex rel. Foreman v. Heineman,* 240 F.R.D. 456,
5    492 (D.Neb.2007) (same); *Flanagan v. Allstate Ins. Co.,* 228 F.R.D. 617, 618–19
     (N.D.Ill.2005) (same).

6    **B.      Plaintiff has adequately alleged the elements of his class claim.**

7         **1.      Plaintiff has alleged sufficient numerosity.**

8         Plaintiff has alleged the existence of class members in excess of 1,000. (FAC, ¶ 49.) This factual

9    allegation, which must be accepted as true for purposes of this motion, clearly satisfies the numerosity

10   requirement. There is no absolute minimum number of plaintiffs necessary to demonstrate that the

11   putative class is so numerous so as to render joinder impracticable. (*See Gen. Tel. Co. of the Northwest,*

12   *Inc. v. Equal Employment Opportunity Com'n*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319

13   (1980).) Joinder has been deemed impracticable in cases involving as few as 25 class members.

14   (*Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 463 (E.D.Pa.1968).)

15        **2.      Plaintiff has alleged fact showing common issues of law or fact and that**
16        **Plaintiff's claims are typical.**

17        Based on First Advantage's moving papers, it appears that the key legal issue in this case is

18   whether an agreement between Shred-It ***and a third party legal entity that is not being sued***, under the

19   terms of which Shred-It was deemed to have made a certification ***to such third party*** of its compliance

20   with its disclosure and authorization requirements, is legally effective to constitute the required

21   certification by Shred-It to First Advantage that Shred-It ***"has complied"*** with Shred-It's statutory

22   obligations set forth in Section 1681b(b)(2).  Even if the agreement was between First Advantage and

23   Shred-It, the result would be no different. The legal issue as to whether such prospective certification is

24   legal would be common, and the resolution of such issue will resolve the issue of First Advantage's

25   liability under Section 1681b(b)(1). For this reason, Plaintiff's claims are clearly typical of those of the

26   other class members.

27        First Advantage's contention that, at the pleading stage, Plaintiff is required to "identify" other

28   persons who were subjected to the same wrongdoing is not supported by any apposite authority. First

**Plaintiff's Opposition to Defendant First Advantage's Motion to Dismiss**

Advantage's citation to *Wright v. Stone ContainerCorp.*, 524 F.2d 1058, 1062 (8th Cir. 1975) is disingenuous, as that case involved an appeal from an order denying a motion for class certification in a racial discrimination case. The Eighth Circuit held that, in the context of a motion for class ccertification in a discrimination case, where the plaintiff failed to identify other class members who had been subjected to the same or similar discriminatory treatment, the trial court did not abuse its discretion in denying the motion for class certification:

> Under the peculiar circumstances of this case however, we cannot say that the trial court abused its discretion in refusing to certify the class under Rule 23(a). Except for two vague references at the class hearing, Wright could not identify any person who had been subjected to the same or similar discriminatory treatment as he allegedly suffered. He could only speculate that approximately two hundred past and present employees and job applicants were involved. The typicality requirement of Rule 23(a)(3) obligates the class representative to at least demonstrate that there are other members of the class who have similar grievances. Green v. Missouri Pac. R.R., 62 F.R.D. 434, 436 (E.D.Mo.1973), rev'd on other grounds, 523 F.2d 1290 (8th Cir. 1975); accord, Williams v. Matthews Co., 499 F.2d 819, 829 (8th Cir.), cert. denied, 419 U.S. 1027, 95 S.Ct. 507, 42 L.Ed.2d 302 (1974). Wright failed in this regard.

First Advantage's attempt to apply this clearly inapposite holding to its motion to dismiss is clearly unavailing, and First Advantage does not cite one case which holds that for pleading purposes, a plaintiff must "identify" any other class members.

### 3. Plaintiff is not an "inadequate" representative merely because he does not seek actual damages for class members.

First Advantage's attack on Plaintiff's adequacy as a class representative based on the fact that Plaintiff is only seeking statutory damages is disingenuous. In *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948 (7th Cir.2006), the Seventh Circuit held that failure to pursue actual damages does not preclude a finding of adequacy. In *Murray*, the proposed class in *Murray* sought statutory damages for violations of 15 U.S.C. §§ 1681b(c)(1)(B)(i) and m(d)(1)(D), resulting from a potential lender's failure to make a "firm offer of credit" upon accessing a consumer's credit file without the consumer's consent and failure to provide clear disclosure of the consumer's right to close her credit information to parties lacking prior consent. 434 F.3d at 951. Vacating and remanding the district court's decision of denying class certification, the Seventh Circuit held:

> *The district court's second reason—that Murray should have sought compensatory*

1

*damages for herself and all class members rather than relying on the statutory-*
*damages remedy—would make consumer class actions impossible*. What each person's

2

injury may be is a question that must be resolved one consumer at a time. Although

3

compensatory damages may be awarded to redress negligence, while statutory damages
require wilful conduct, ***introducing the "easier" negligence theory would preclude class***

4

***treatment***. Common questions no longer would predominate, and an effort to determine a
million consumers' individual losses would make the suit unmanageable. Yet individual

5

losses, if any, are likely to be small—a modest concern about privacy, a slight chance that
information would leak out and lead to identity theft. That actual loss is small and hard to

6

quantify is why statutes such as the Fair Credit Reporting Act provide for modest

7

damages without proof of injury." (*Id.*, at 952-953 (emphasis added).)

8

        In *Medrano v. WCG Holdings, Inc.* (C.D.Cal. 2007) 2007 WL 4592113, *Reynoso v. South*

9

*County Concepts* (C.D.Cal. 2007) 2007 WL 4592119, and *Tchoboian v. Parking Concepts, Inc.*

10

(C.D.Cal.2009) 2009 WL 2169883, the Courts all cited *Murray* in rejecting the "adequacy" argument

11

proffered by First Advantage in this case.

12

        First Advantage's argument that Plaintiff should allege actual damages, thereby allowing it to

13

claim that a class action cannot be pursued because damages are dependent on individualized issues, is

14

particularly galling. The District Court's decision in *Gardner v. Equifax Info. Serv., LLC*, No. 06-3102,

15

2007 WL 2261688, relied upon by First Advantage, is not only not binding, but also does not cite any

16

case law to support its holding, nor does it adequately address the fact that a notice and opt-out

17

procedures would allow any potential members to pursue claims for actual damages if they so desired.

18

        In *Braxton v. Farmer's Ins. Group* (N.D. Ala. 2002) 209 F.R.D. 654, 660 *aff'd sub nom. Braxton*

19

*v. Fire Ins. Exchange* (11th Cir. 2003) 91 Fed.Appx. 656, the Court found the plaintiff to be an adequate

20

representative in suit alleging that homeowners' insurer raised premiums by 50% or more in reliance on

21

information contained in consumer credit reports without complying with notice requirements of the

22

Fair Credit Reporting Act (FCRA). Rejecting the insurer's contention that that it might be in the best

23

interest of some class members to pursue actual damages, rather than the statutory damages sought by

24

named plaintiff on behalf of the class, the Court held that there was no real conflict of interest because

25

class members would have the opportunity to opt out of the class and pursue their claims individually:

26

        The other argument advanced by FIE on the issue of Braxton's adequacy as a class
        representative is the one raised by FIE *vis à vis* the adequacy of counsel: that it might be

27

        in the best interest of some class members to pursue actual damages, rather than the
        statutory damages sought by Braxton on behalf of the class. As Braxton points out, this

28

alleged conflict can be eliminated by an appropriate notice to the class members, advising them of the type of damages sought by the class representative. Because certification is sought under Rule 23(b)(3), class members will have the opportunity to opt out of the class and pursue their claims individually, should they choose to do so. Thus, there is no real conflict of interest here, and the court finds that Braxton is an adequate class representative. *Braxton v. Farmer's Ins. Group* (N.D. Ala. 2002) 209 F.R.D. 654, 660 *aff'd sub nom. Braxton v. Fire Ins. Exchange* (11th Cir. 2003) 91 Fed.Appx. 656

In *Chakejian v. Equifax Information Services, LLC* (E.D. Pa. 2011) 275 F.R.D. 201, the District Court approved a settlement in which the named plaintiff was only seeking statutory damages for the Defendants' violation of the FCRA.

In *Meehan v. Buffalo Wild Wings, Inc.* (N.D. Ill. 2008) 249 F.R.D. 284, 287, the District Court granted a motion for class certification of a FCRA claim, notwithstanding the fact that the plaintiff had only sought statutory damages:

Plaintiff has established that he seeks only statutory damages on behalf of himself and the class and that he does not have any interest in conflict with the interests of the class members. There is no indication that as class representative, he will receive anything more than that received by class members who are not the class representative. That being the case, the named plaintiff can adequately represent the class and thus, plaintiff has submitted sufficient evidence to meet the adequacy requirement.

In *Holloway v. Full Spectrum Lending* (C.D.Cal. 2007) 2007 WL 7698843, defendants contended that Plaintiff's decision not to seek actual damages in the case made the Plaintiff an inadequate representative. The Court first noted:

…the determination of statutory damages, which range from $100 to $1,000 per violations need not be determined on an individual basis, but rather can be determined based upon Defendant's conduct in the aggregate. See *Murray v. GMAC*, 434 F.3d at 953 (recognizing that class representatives may forgo "the sort of person-specific arguments that render class treatment infeasible" and limit recovery to statutory damages)." (*Holloway* (C.D.Cal. 2007) 2007 WL 7698843 at pg. 5)

The Court went on to reject the defendants' argument on adequacy, stating:

Given the potential hurdle of certifying an actual damages class and the low probability that any class member's actual damages exceed the available statutory damages, the Court agrees. Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification." *Murray v. GMAC*, 434 F.3d at 953. There is no indication that the injuries in this case are large. In fact, FSL has argued that there are no injuries. Furthermore, if members of the class have suffered damages in excess of the $1,000 statutory maximum, they may opt out and proceed individually. See *Murray v. GMAC*, 434 F.3d at 953 (almost all claims must be large

**Plaintiff's Opposition to Defendant First Advantage's Motion to Dismiss**

enough to justify individual litigation for this to preclude class treatment) (citing *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894 (7th Cir.1999)). In this case, the statutory damages Holloway seeks are likely sufficient for the vast majority of class members, whose actual damages are likely far below the statutory maximum. Moreover, these individuals may not be aware of their injury without this lawsuit and even if aware, likely lack an incentive to proceed individually because of the statutory damages cap of $1,000."

Here, First Advantage asserts that Plaintiff did not sustain any "actual injury" and has not shown how any of the class members in fact sustained "actual injury" as a result of its alleged failure to obtain the requisite certification from the users to whom it provided the reports. Thus, even assuming class members sustained actual injury (which First Advantage has not demonstrated and in fact contends they did not sustain), class members could easily opt-out of the class if they desired to pursue a claim for actual damages. It is clear that Defendant's "lack of adequacy" argument is based on phantom allegations and a flimsy "straw man," that blows away with the faintest breath of analysis.

### 4. There are no defenses "unique" to Plaintiff that preclude certification.

Defendant's "lack of standing" defense is demonstrably meritless as a matter of law and certainly will not "preoccupy" Plaintiff. Similarly, Defendants' statute of limitations defense is meritless and will not "preoccupy" Plaintiff.

Moreover, numerous courts have recognized that the existence of statute of limitations defenses does not preclude class certification. (*Williams v. Sinclair,* 529 F.2d 1383, 1386–88 (9th Cir.1975) reversing order denying certification and holding that "[t]he existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones. Given a sufficient nucleus of common questions, the presence of the individual issue of compliance with the statute of limitations has not prevented certification of class actions in securities cases."); *Beck-Ellman v. Kaz USA, Inc.* (S.D. Cal. 2012) 283 F.R.D. 558, 566 ("Defendants further argue that Plaintiff Beck–Ellman's claim is atypical because her claims are subject to unique defenses. Namely, Defendants argue that her CLRA, unjust enrichment, and implied warranty claims are time-barred. . . . However, "[g]iven a sufficient nucleus of common questions, the presence of the individual issue of compliance with the statute of limitations" need not bar class certification.")

---

**Plaintiff's Opposition to Defendant First Advantage's Motion to Dismiss**

In addition, the statute of limitations is a merits determination often not suitable for resolution at the class certification stage. (*Joint Equity Committee of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.* (C.D. Cal. 2012) 281 F.R.D. 422, 435-36 ("statute of limitations issues do not suffice to defeat Rule 23(b)(3) predominance when," as here, "important common issues otherwise exist, particularly in the investment fraud context."); *In re Cornerstone Propane Partners, L.P. Sec. Litig.,* 2006 WL 1180267, *6 ("given a sufficient nucleus of common questions, the presence of the individual issues of compliance with the statute of limitations has not prevented certification of class actions . . . "); *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir.1976) (holding that the "existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones").)

  5.  **Determination of First Advantage's liability will easily be determined.**

In this case, all potential class members have claims stemming from First Advantage's failure to obtain the requisite certifications. First Advantage attempts to defend against Plaintiff's claim by contending that it obtained the requisite "certifications" from the users to whom it furnished consumer reports through the use of "user agreements," under the terms of which the user was deemed to "have certified" its compliance with its Section 1681b(b)(2) obligations whenever the user ordered a consumer report. Based on this contention, it is obvious that First Advantage did not obtain individual certifications from its users as to each employee.  If it had, it would have presented one.

First Advantage's business practice in this regard is common, and the success of Plaintiff's claim hinges upon the determination of the legality of what First Advantage admits is its common/regular business practice. A determination of the legality of First Advantage's common/regular business practice is necessary to the resolution of the claims that all the proposed class members could bring individually under the FCRA, and this common question is sufficient to meet the commonality requirement. Whether a prospective contractual undertaking is a legally sufficient "certification" under Section 1681b(b)(1) is a common question, the resolution of which will resolve Plaintiff's claim. First Advantage's "individualized question" argument is patently disingenuous.

6. **The prosecution of these FCRA claims on a class action basis is far superior to the alternative.**

Contrary to First Advantage's claim, the prosecution of FCRA claims on a class action basis is far superior. As the Court noted in *Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2014 WL 3734525, at *11-12 (N.D. Cal. 2014) in granting certification of the plaintiff's FCRA claims and rejecting many of the very arguments asserted by First Advantage in its motion:

> Factors relevant to the superiority requirement include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.
>
> Fed. R. Civ. P. 23(b)(3). "A consideration of these factors require the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1180, 1190 (9th Cir.2001) (internal citation omitted). A class action here would certainly achieve economies of time, effort and expense and promote uniformity. And there is not similar litigation already underway elsewhere that weighs against proceeding as a class here, nor any reason not to try a class action in this District.
>
> With respect to the first factor, however, Defendant contends that class members with actual damages will be forced to abandon their high-value actual damages claims to pursue statutory damages as part of the class, while at same time noting that no evidence exists that any potential class member has suffered any actual damages. ***Given that Trans Union contends that no class member has suffered any large actual damages, and that any potential class member with significant damages could simply opt out of the class, Defendant's argument is unfounded.*** At the same time, Defendant asserts that because no other Plaintiffs have come forward with similar claims indicates that a class action is unnecessary. Surely, thousands of people need not attempt to bring suit or join existing suits to demonstrate interest in their claims or the feasibility of a class action. Indeed, as Plaintiff notes, many class members might be unaware of their rights under the FCRA and CCRAA and/or unaware of the alleged violations. Even if the potential class members are aware of the alleged violations, many would probably have little interest or motivation to bring an individual suit if they had not experienced any actual damages.
>
> Defendant also attempts to refute superiority on the ground that attorneys' fees for Plaintiff's claims are recoverable, and the economies of class action are therefore unnecessary. This objection is misplaced for two reasons. First, even if each class member were to bring a separate suit, the costs and fees of each separate action would exceed those of a class action. It is more efficient to adjudicate the claims as a class

action rather than thousands of individual actions. Moreover, Rule 23(b) does not ask the Court to determine whether a class action is *necessary,* rather whether it is superior. The Court concludes that it is.

Finally, at oral argument Trans Union complained that granting class certification of statutory damages claims places unfair economic pressure on the defendant and forces the defendant to settle even if it believes it has a meritorious defense and the class was never actually harmed. Judge Wilkinson raised this concern in his concurrence in *Stillmock,* 385 Fed.Appx. at 281 ("[O]nce a class is certified, a statutory damages defendant faces a bet-the-company proposition and likely will settle rather than risk shareholder reaction to theoretical billions in exposure even if the company believes that the claim lacks merit.") (internal quotation marks and citation omitted). The problem with Trans Union's argument, however is that it has effectively been rejected by the Ninth Circuit. In *Bateman v. American Multi–Cinema, Inc.,* 623 F.3d 708 (9th Cir.2010), the court held it was improper for a district court to find that a class action was not superior because the potential statutory damages class action award was so disproportionate to actual harm. *Id.* at 719. *Bateman* involved a related statute, the Fair and Accurate Credit Transactions Act ("FACTA"), which incorporates the FCRA statutory damages provision, *id.* at 711, so its reasoning applies equally to statutory damages under the FCRA; namely, that Congress is aware of the concern about potentially enormous liability of defendants in statutory damage class actions and has amended statutes to address such problems when it has the votes to do so. *Id.* at 720–21 (noting that Congress added a provision to the Truth In Lending Act ("TILA") to limited aggregate statutory damages). The Ninth Circuit held: "[i]n the absence of ... affirmative steps to limit liability, we must assume that Congress intended FACTA's remedial scheme to operate as it was written." *Id.* at 722–23. The same is true for FCRA. (Emphasis added.)

In *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 724 (9th Cir. 2010), the Ninth Circuit reversed a district court's order denying class certification of a Fair and Accurate Credit Transactions Act ("FACTA") claim and remanded to the district court. FACTA amended the FCRA and incorporates the FCRA's statutory damages provision, which allows a consumer to recover damages between $100 and $1,000 for each willful violation of FACTA without having to prove actual damages. In his complaint, the plaintiff had not asserted a claim for actual harm, but only asserted a claim for statutory damages. Certainly if the Ninth Circuit believed that FCRA claims could not be pursued on a class action basis for any of the reasons asserted by First Advantage herein, it would not have reversed the denial of certification.

In *Reardon v. ClosetMaid Corp.*, No. 2:08-CV-01730, 2013 WL 6231606, at *20 (W.D. Pa. Dec. 2, 2013), the District Court granted the plaintiff's' Motion for Summary Judgment as to liability and willfulness as to the members of the Disclosure Class who received only the defective Disclosure Form

and denied the defendants' motion to decertify the class (the district court had earlier certified the Disclosure Class).

The cases cited by First Advantage are readily distinguishable and inapposite to the claims involved in this action.

### C.   If the Court believes that Plaintiff should amend his complaint to alleged facts regarding his class claims, Plaintiff should be given leave to allege such facts.

Plaintiff believes he has adequately alleged the elements of a class action. If the Court believes that Plaintiff should file an amended Complaint to clarify the nature of his claims, and, as discussed above, if Plaintiff is given leave to amend the class definitions, Defendants' attack on the sufficiency of the "class" allegations will fall by the wayside.

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings. The Ninth Circuit has held that the rule should be applied with "extreme liberality." *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987); *Howey v. United States,* 481 F.2d 1187, 1190 (9th Cir.1973), *see also, Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957).) Here, First Advantage cannot make any showing as to why Plaintiff should not be given leave to amend if the Court believes believe Plaintiff should amend.

### VI.   PLAINTIFF SHOULD BE ALLOWED TO AMEND IF THE COURT DETERMINES THAT ADDITIONAL FACTS MUST BE ALLEGED.

Defendant attacks Plaintiff's First Amended Complaint on the grounds that Plaintiff has not alleged sufficient facts to state a viable claim. While Plaintiff disputes such contention, if the Court believes that additional facts must or should be alleged, the Court should grant Plaintiff leave to file an amended complaint. (FRCP 15(a) (leave to amend "shall be freely given when justice so requires;" *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957).)

If this Court believes that the class definition should be refined in some way or additional allegations made regarding the propriety of class relief, Plaintiff should be allowed the opportunity to do so by further amendment to the complaint. (*See also Syed v. M-I LLC*, No. CIV. 1:14-742 WBS, 2014 WL 5426862, at *6 (E.D. Cal. Oct. 23, 2014):

**Plaintiff's Opposition to Defendant First Advantage's Motion to Dismiss**

PreCheck also moves to strike plaintiff's class allegation pursuant to Federal Rule of Civil Procedure 12(f) on the basis that it defines an impermissible "fail-safe" class. *See Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 538 (6th Cir.2012) ("[A] 'fail-safe' class is one that includes only those who are entitled to relief ... [and] allow[s] putative class members to seek a remedy but not be bound by an adverse judgment-either those class members win or, by virtue of losing, they are not in the class and are not bound.") (Internal quotation marks and citations omitted). Because the issue of class certification is not presently before it, the court will deny PreCheck's motion to strike without prejudice. PreCheck may assert its fail-safe arguments in opposition to a motion for class certification or, if plaintiff fails to move for certification, renew its motion to strike prior to trial.

## VII.   CONCLUSION.

For the reasons set forth above, First Advantage's Motion to Dismiss must be denied.

Dated: November 3, 2014          THE DION-KINDEM LAW FIRM

BY: _____
          PETER R. DION-KINDEM, P.C.
          PETER R. DION-KINDEM
          Attorney for Plaintiff Michael Kirchner