PETER R. DION-KINDEM (SBN 95267)
THE DION-KINDEM LAW FIRM
PETER R. DION-KINDEM, P. C.
21550 Oxnard Street, Suite 900
Woodland Hills, California 91367
Telephone:      (818) 883-4900
Fax:            (818) 883-4902
Email:          peter@dion-kindemlaw.com

LONNIE C. BLANCHARD, III (SBN 93530)
THE BLANCHARD LAW GROUP, APC
3311 East Pico Boulevard
Los Angeles, CA 90023
Telephone:      (213) 599-8255
Fax:            (213) 402-3949
Email:          lonnieblanchard@gmail.com

Attorneys for Plaintiff Michael Kirchner

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Kirchner, an individual, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>     vs.<br><br>Shred-It USA Inc., a Delaware Corporation, First Advantage LNS Screening Solutions, Inc., and Does 1 through 10,<br><br>     Defendants. | **Case No. 2:14-cv-01437-WBS-EFB**<br><br>**Memorandum of Points and Authorities in Support of Stipulation re Preliminary Approval of Class Action Settlement; Declaration of Peter R. Dion-Kindem** |

**Table of Contents**

I.    Introduction...................................................................................................... 6

II.   Standards For preliminary approval.................................................................. 7

III.  The proposed settlement satisfies the standards for preliminary approval. ...................... 9

    A.    The Class Action Claims. ........................................................................ 9

    B.    The course of proceedings and settlement negotiations. ................................. 10

    C.    The material provisions of the settlement agreement. ................................... 10

        1.    The Settlement Class.................................................................... 10

        2.    The Proposed Settlement Benefits .................................................. 11

            a)    Payments to settlement class members. .................................. 11

            b)    Costs of notice........................................................... 11

            c)    Attorneys' fees and costs. ................................................. 11

        3.    Class notice. ............................................................................. 12

        4.    Class Action Fairness Act Notice. ................................................... 12

        5.    Class Representative Service Award. ................................................ 12

IV.  The proposed settlement satisfies the requirements for class certification....................... 12

    A.    Numerosity........................................................................................... 13

    B.    Commonality........................................................................................ 14

    C.    Typicality. .......................................................................................... 14

    D.    Adequacy of Representation. .................................................................... 15

    E.    Rule 23(b)(3) Considerations.................................................................... 15

        1.    Predominance............................................................................ 16

        2.    Superiority................................................................................ 17

V.   The settlement is appropriate for preliminary approval............................................ 18

    A.    The value of any expected recovery balanced against the proposed settlement............... 18

    B.    Arm's length settlement negotiations. ....................................................... 18

    C.    The proponents of the settlement are experienced......................................... 19

D.      Public policy considerations support preliminary approval.................................. 19

VI.    Conclusion. ...................................................................................................................... 19

## Cases

*Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 620 [117 S.Ct. 2231, 2248, 138 L.Ed.2d 689] 7, 18

*Baby Neal for and by Kanter v. Casey* (3d Cir. 1994) 43 F.3d 48, 57.................................................... 15

*Bernhard v. TD Bank, N.A.* (D.N.J., Oct. 5, 2009, CIV.08-4392RBK/AMD) 2009 WL 3233541 8, 14, 16

*Collier v. Montgomery County Housing Authority* (E.D. Pa. 2000) 192 F.R.D. 176, 184 .................... 8, 9

*Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper* (1980) 445 U.S. 326, 339 [100 S.Ct. 1166, 1174, 63 L.Ed.2d 427] ................................................................................................................................ 17

*Eisenberg v. Gagnon* (3d Cir. 1985) 766 F.2d 770, 786........................................................................ 14

*Fishbein v. Druz* (E.D. Pa., Sept. 21, 1989, CIV. A. 89-5987) 1989 WL 110863 ................................ 17

*General Telephone Co. of Southwest v. Falcon* (1982) 457 U.S. 147, 156-57 [102 S.Ct. 2364, 2370, 72 L.Ed.2d 740] ....................................................................................................................................... 14

*Haynes v. Logan Furniture Mart, Inc.* (7th Cir. 1974) 503 F.2d 1161, 1165.......................................... 17

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation (3d Cir. 1995) 55 F.3d 768* ................................................................................................................................................ 8, 9

*In re MicroStrategy, Inc. Securities Litigation* (E.D. Va. 2001) 148 F.Supp.2d 654, 665 ..................... 19

*In re National Football League Players' Concussion Injury Litigation* (E.D. Pa. 2014) 961 F.Supp.2d 708................................................................................................................................................................ 8

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions (3d Cir. 1998) 148 F.3d 283, 308-09* ............................................................................................................................................. passim

*Jackson v. Southeastern Pennsylvania Transp. Authority* (E.D. Pa. 2009) 260 F.R.D. 168, 186 ........... 14

*Johns v. DeLeonardis* (N.D. Ill. 1992) 145 F.R.D. 480, 483 ................................................................. 13

*Philadelphia Elec. Co. v. Anaconda Am. Brass Co.* (E.D. Pa. 1968) 43 F.R.D. 452, 463 ...................... 13

*Riordan v. Smith Barney* (N.D. Ill. 1986) 113 F.R.D. 60, 62 ................................................................ 13

*Rolland v. Cellucci* (D. Mass. 2000) 191 F.R.D. 3, 6 ............................................................................ 19

*Smith v. Professional Billing & Management Services, Inc.* (D.N.J., Nov. 21, 2007, 06-4453JEI) 2007 WL 4191749 .......................................................................................................................................... 8

*Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 975 ....................................................................... 11

*Stewart v. Abraham* (3d Cir. 2001) 275 F.3d 220, 227.......................................................................... 14

*Stewart v. Rubin* (D.D.C. 1996) 948 F.Supp. 1077, 1087 aff'd, (D.C. Cir. 1997) 124 F.3d 1309........... 19

*Sullivan v. DB Investments, Inc.* (3d Cir. 2011) 667 F.3d 273, 297 ...................................................... 16

**Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement**

*Weinberger v. Kendrick* (2d Cir. 1982) 698 F.2d 61 ........................................................ 8

*Zeno v. Ford Motor Co., Inc.* (W.D. Pa. 2006) 238 F.R.D. 173, 196-97................................ 16

**<u>Statutes</u>**

15 U.S.C. § 1681n (1)(A)........................................................................................ 18

Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1715 ................................ 12

Fair Credit Reporting Act. See 15 U.S.C. § 1681b(b)(2) ............................................ 9

**<u>Other Authorities</u>**

1 Newberg on Class Actions, § 3:6 (4th Ed.) ............................................................ 13

4 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2002) at § 11.25, p. 38 ........ 7, 8

Advisory Committee Note to 1996 Amend. to Rule 23................................................ 17

MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.632 (2004)........................................ 7, 8

**<u>Rules</u>**

Fed.R.Civ.P. 23(a) and 23(b)(3) ...................................................................... 12, 13

Rule 23(a)(1).................................................................................................. 13

Rule 23(b)(3).................................................................................................. 16

**Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement**

## I.    INTRODUCTION.

Unless otherwise set forth herein, this Memorandum incorporates by reference the definitions in the Stipulation re Class Action Settlement, a copy of which is attached as Exhibit 1 to the Declaration of Peter R. Dion-Kindem filed herewith.

Under the terms of the proposed Settlement, Defendant Shred-it USA, Inc. agrees to fund a settlement of $250,000 for the benefit of Settlement Class Members for their alleged damages resulting from Shred-it's alleged FCRA violations.

The Agreement defines "Settlement Class Members" as

> All individuals as to whom, during the period of time from June 16, 2009, through June 16, 2014, Shred-it procured or caused to be procured a consumer report for employment purposes who signed an authorization form, in electronic or written form, allowing for consumer reports to be obtained which included a liability release or other language of any kind other than the authorization and disclosure permitted under the Fair Credit Reporting Act, 15 U.S.C. 1681b(b)(2).

Defendant has represented that approximately 3,328 persons are members of this class and will receive a pro rata share of the Net Settlement Fund, which is estimated to be $151,575, or approximately $45.55 per class member. Given the fact that this Court has already rejected an identical claim asserted by a plaintiff against an employer such as Shred-it in the *Syed* action (which is currently under appeal), this settlement amount is fair and reasonable.

Subject to court approval, the following amounts shall be paid from this settlement amount:

    a.    An Attorney's Fee Award of up to $80,000 (Plaintiff's counsel will only be seeking 25% of the gross settlement, or $62,500);

    b.    An Attorney's Costs Award of up to $20,000;

    c.    A Class Representative Incentive Award to the Representative Plaintiff of $5,000;

    d.    Class Administration Costs of up to $31,000.

The Stipulation re Settlement contains all the material terms of the settlement, including the manner and form of notice to be given to the Class, the contingencies or conditions to the settlement's final approval, and other necessary and proper terms.

By this Stipulation, the Parties request that the Court take the first step in the approval process -- preliminary approval of class action settlement.

In determining whether preliminary approval is warranted, the issue before the Court is whether the settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the settlement may be given to Settlement Class Members and a hearing scheduled to consider final settlement approval. The Court is not required at this point to make a final determination as to the fairness of the settlement. (*See* 5 James Wm. Moore, Moore's Federal Practice ¶ 23.83[1], at 23-336.2 to 23-339 (3d ed. 2002).)

Since the settlement meets the criteria for preliminary approval and is well within the range of what might be approved as fair, reasonable and adequate, the Parties respectfully request that the Court enter the proposed Preliminary Approval Order lodged herewith.

## II.    STANDARDS FOR PRELIMINARY APPROVAL.

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval. 4 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2002) at § 11.25, p. 38. Preliminary approval is the first of three steps. The second step is the dissemination of notice of the settlement to all Class members. The third step is a settlement approval or final fairness hearing. See MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.632 (2004).

The legal standard to be applied to determine whether to preliminarily approve a class settlement is two-fold. First, the Court must determine whether a settlement class may be conditionally certified for settlement purposes. *See Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 620 [117 S.Ct. 2231, 2248, 138 L.Ed.2d 689] (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23). While a settlement class must satisfy each of the requirements of Rule 23(a) and 23(b)(3), "the fact of settlement is relevant to a determination of whether the proposed Class meets the requirement imposed by the Rule." *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions (3d Cir. 1998) 148 F.3d 283, 308-09*. In this context, some courts make only a preliminary determination that the proposed claims satisfy the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). MANUAL FOR

COMPLEX LITIGATION (FOURTH) § 21.632.

Second, the Court must examine the proposed settlement to determine whether it appears fair and reasonable. MANUAL FOR COMPLEX LITIGATION (FOURTH), §21.632. In *In re National Football League Players' Concussion Injury Litigation* (E.D. Pa. 2014) 961 F.Supp.2d 708, the Court explained this inquiry as follows:

> At the preliminary approval stage, the bar to meet the "fair, reasonable and adequate" standard is lowered, and the court is required to determine whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval."

To determine whether a settlement "falls within the range of possible approval," a court must "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Id*. As the Court explained in *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation (3d Cir. 1995) 55 F.3d 768*, an initial presumption of fairness is established when the court finds that: (1) the parties' negotiations occurred at arm's length; (2) there was sufficient discovery; and (3) the proponents of the settlement are experienced in similar litigations. This examination is generally "made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties." *In re Nat'l Football League Players'*, 2014 WL 114351; *see also Bernhard v. TD Bank, N.A.* (D.N.J., Oct. 5, 2009, CIV.08-4392RBK/AMD) 2009 WL 3233541, *citing In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.1997); *Smith v. Professional Billing & Management Services, Inc.* (D.N.J., Nov. 21, 2007, 06-4453JEI) 2007 WL 4191749 and NEWBERG ON CLASS ACTIONS, § 11.25.

The approval of a proposed settlement of a class action is a matter within the broad discretion of the trial court. Of course, settlements of class actions are favored in the law. *See In re General Motors Truck Litigation*, 55 F.3d at 784. The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *In re Nat'l Football League*, at *5; *Weinberger v. Kendrick* (2d Cir. 1982) 698 F.2d 61; *Collier v. Montgomery County Housing Authority* (E.D. Pa. 2000) 192 F.R.D. 176, 184 (citing factors established in *Girsh v. Jepson*,

521 F.2d 153 (3d Cir. 1975)). Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight.

In addition to being substantively reasonable in relation to the risks and likely rewards of litigation, the proposed settlement must be ''the result of good faith, arms length negotiations.'' *Collier*, 192 F.R.D. at 184. In evaluating this requirement, courts proceed as follows:

> If the proposed settlement appears to be the product of serious informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class Representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the Class Members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement. *Id.*

A finding that these factors are present establishes an initial presumption of fairness. *Id.*; *see also General Motors*, 55 F.3d at 785-86. Here, the proposed settlement meets these standards.

**III.    THE PROPOSED SETTLEMENT SATISFIES THE STANDARDS FOR PRELIMINARY APPROVAL.**

An analysis of the Rule 23 certification requirements and that the proposed settlement demonstrated that the settlement should be preliminarily approved because the settlement provides for a fair and reasonable resolution.

**A.    The Class Action Claims.**

This class action was filed on June 16, 2014. The First Amended Complaint alleges that Defendant willfully violated the Disclosure and Pre-Adverse Action provisions of the Fair Credit Reporting Act. See 15 U.S.C. § 1681b(b)(2) (the "Disclosure Provision"). The FAC alleges that Shred-it is subject to liability for statutory damages pursuant to 15 U.S.C. § 1681n(1)(A) for its willful non-compliance with its obligations under Section 1681b(b)(2).

Section 1681n(1)(A) provides:

> (a) In general
>
> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1)     (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

Under Plaintiff's legal theory, if successful at trial, class members could recover their statutory damages in an amount between $100 and $1,000 plus any punitive damages awarded with respect to their claim.

Shred-it has vigorously disputed its liability in this litigation, contending that the claims are not subject to certification, its disclosure/consent forms comply with the law, and Shred-it did not act willfully or negligently.

**B.     The course of proceedings and settlement negotiations.**

After filing of the FAC, Shred-it filed a motion to dismiss, relying the Court's decision in *Syed v. M-I LLC* (E.D. Cal., Oct. 23, 2014, CIV. 1:14-742 WBS) 2014 WL 5426862, in which the Court had found essentially identical claims against the employer in that case were not "willful" violations as a matter of law.

Thereafter, the plaintiff in Syed appealed, and the parties in this case entered into settlement discussions and ultimately reached agreement on the material terms of a proposed class action settlement. The terms of this proposed resolution are set forth below.

**C.     The material provisions of the settlement agreement.**

**1.     The Settlement Class.**

The Agreement defines "Settlement Class" as follows:

All individuals as to whom, during the period of time from June 16, 2009, through June 16, 2014, Shred-it procured or caused to be procured a consumer report for employment purposes who signed an authorization form, in electronic or written form, allowing for

consumer reports to be obtained which included a liability release or other language of any kind other than the authorization and disclosure permitted under the Fair Credit Reporting Act, 15 U.S.C. 1681b(b)(2).

### 2. The Proposed Settlement Benefits

#### a) Payments to settlement class members.

The Settlement Agreement provides for the creation of a Settlement Fund of $250,000. From this Fund, attorney's fees (not to excess $80,000), attorney costs (not to exceed $5,000), a class representative fee (not to exceed $5,000), and class administration expenses (not to exceed $31,000) are deducted. The net amount remaining is then divided pro rata among the settlement class members who do not opt out of the settlement.

#### b) Costs of notice.

The Parties have estimated that Notice and Administration Expenses will be not exceed $31,000. The cost of notice and settlement administration are properly considered part of the value of a settlement. *See, e.g., Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 975.

#### c) Attorneys' fees and costs.

Shred-it has agreed to pay Plaintiff's Counsel their reasonable attorneys' fees in an amount not to exceed $80,000, which is less than one-third of the total $250,000 settlement amount for which Shred-it is potentially liable.

Plaintiff's counsel has decided to only request 25% of the $250,000, the bench-mark common fund percentage in the Ninth Circuit. (*In re Bluetooth Headset Products Liability Litigation* (9th Cir. 2011) 654 F.3d 935, 942 ("Applying this calculation method, courts typically calculate 25% of the fund as the "benchmark" for a reasonable fee award, providing adequate explanation in the record of any "special circumstances" justifying a departure. *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990); *accord Powers,* 229 F.3d at 1256–57; *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir.1989).")

Any reduction in such fees will only benefit Shred-it. This payment, therefore, will not reduce or affect the monetary claim of each class member.

### 3. Class notice.

The Notice to be sent to each individual Class member (Exhibit B to the Settlement Agreement) is sufficient to inform Class members regarding: (a) the formation of the Class; (b) the Class definition; (c) the terms of the proposed settlement; (d) the proposed request for an award of attorneys' fees and expenses to counsel; (e) the proposed incentive payment to the Representative Plaintiff; (f) Class members' right to opt out of the Class and thereby not participate in the proposed settlement; (g) Class members' right to object to the proposed settlement; (h) the time and date of the Final Approval Hearing; and, (i) Class members' right to appear at the Final Approval Hearing in favor of or in opposition to the proposed settlement. The Notice is clear in content and provides Class members with sufficient information to make an intelligent decision as to whether to remain in the Class, opt out of the Class, or object to any aspect of the proposed settlement.

### 4. Class Action Fairness Act Notice.

Shred-it will cause notice of the proposed settlement to be served as required under the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1715.

### 5. Class Representative Service Award.

The Settlement provides that Michael Kirchner will apply for an incentive award of up to $5,000 to compensate him appropriately for the risk in pursuing the litigation and his efforts in prosecuting this case including retaining and assisting counsel and keeping abreast of the litigation. The award is subject to court approval. Shred-it agrees not to oppose the request.

### IV. THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR CLASS CERTIFICATION.

To conditionally certify the class, the Court must apply the six (6) prerequisites under Fed.R.Civ.P. 23(a) and 23(b)(3). The Rule 23(a) requirements are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class: (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ. P. 23(a). Federal Rule 23(b)(3) adds two additional requirements including (5) predominance of common questions and (6) superiority of the action as a class action. Rule 23(b)(3) requires the Court to find that:

> (3) . . . the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy. (Fed. R. Civ. P., Rule 23(b)(3).)

### A.    Numerosity.

The determination as to whether joinder is impracticable focus on several factors as explained in 1 Newberg on Class Actions, § 3:6 (4th Ed.):

> . . . number is only one of several considerations. Apart from class size, factor relevant to the joinder impracticability issue include judicial economy arising from avoidance of a multiplicity of actions, geographic dispersement of class members,) size of individual claims, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members. (footnotes omitted)

Thus, citing and relying on *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.* (E.D. Pa. 1968) 43 F.R.D. 452, 463, this treatise further explained:

> In the final analysis, the court should take the kind of common sense approach that was surely contemplated by the drafters of the rule. This approach is typified by the court in Philadelphia Electric Co. v. Anaconda American Brass Co. in which the court rejected the defendants' contention that one of the plaintiff classes which had 25 members failed to meet the Rule 23(a)(1) prerequisite: "While 25 is a small number compared to the size of the other classes being considered, it is a large number when compared to a single unit. I see no necessity for encumbering the judicial process with 25 lawsuits if one will do." (footnote omitted).

Courts, therefore, have found that less that a class with less than 36 members meets the Rule 23(a)(1) requirement. *Johns v. DeLeonardis* (N.D. Ill. 1992) 145 F.R.D. 480, 483 ( A class of Gypsies and subclass of 25 female Gypsies were certified in an action against police officers alleging unlawful searches and invasions of privacy during a raid of a Chicago Gypsy council meeting.); *Riordan v. Smith Barney* (N.D. Ill. 1986) 113 F.R.D. 60, 62 (29 members in securities class).3 There is no requirement that a Plaintiff allege the exact number of class members. *Jackson v. Southeastern Pennsylvania Transp.*

*Authority* (E.D. Pa. 2009) 260 F.R.D. 168, 186.

There is no question that the class meets the numerosity requirement. In this case, there are approximately over 3,000 total Settlement Class Members. These numbers are certainly sufficient to establish that joinder is impracticable.

**B.     Commonality.**

"The Commonality requirement will be satisfied if the names plaintiffs share at least one question of law or fact with the grievances of the prospective class." *Stewart v. Abraham* (3d Cir. 2001) 275 F.3d 220, 227. Even where there are some factual differences among class members, as long as there is a common question of law or fact, class certification will not be defeated. *Bernhard*, 2009 WL 3233541, at *3 (quoting *Baby Neal ex rel Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994)).

Here, by definition, members of the Settlement Class share the same questions of law and fact. The members of Settlement Class are alleged to be the victims of policies and procedures whereby Shred-it, in violation of the FCRA, did not give a lawful disclosure to consumers when it obtained consumer reports for employment purposes.

The theories of liability as to all Settlement Class members, therefore, arise from the same practices and present basic questions that are common to all class members.

**C.     Typicality.**

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions* (3d Cir. 1998) 148 F.3d 283, 311; *accord Bernhard*, *supra*, 2009 WL 3233541, at *4 (citing *Baby Neal*, 43 F.3d. at 57)).

The threshold for establishing typicality is low. Typicality does not require that the claims of the class members be identical. *Eisenberg v. Gagnon* (3d Cir. 1985) 766 F.2d 770, 786. Rather, a plaintiffs claims are typical when the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his personal claims he can reasonably be expected to advance the interests of absent class members. *General Telephone Co. of Southwest v. Falcon* (1982) 457 U.S. 147, 156-57 [102 S.Ct. 2364, 2370, 72 L.Ed.2d 740].

**Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement**

Here, Plaintiff asserts a claim that arises from the same policies, procedures and course of conduct that give rise to the claims of the other class members. Plaintiff and the putative class members were subject to the same course of conduct by Shred-it in the manner in which it provided a background check disclosure and authorization to class members. Finally, Plaintiff and the putative class members were subject to the same failures to provide legal disclosures and obtain legal authorizations.

The same claim is advanced on behalf of all of the Settlement Class Members. Plaintiff is a Settlement Class Member, and Plaintiff's claims thus rest on the same legal and factual issues as those of the Settlement Class Members. Consequently, in seeking to prove their claims, Plaintiff will necessarily advance the claims of Settlement Class Members. Although Rule 23 does not require claims be identical, if the claims are identical, typicality is established. *Baby Neal for and by Kanter v. Casey* (3d Cir. 1994) 43 F.3d 48, 57.

### D.    Adequacy of Representation.

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class. Adequacy of representation is a two-part inquiry: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the Class. *In re: Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d at 312.

Here, Plaintiff has no interests that are antagonistic to the interests of the Settlement Class. All Class Members have an interest in proving that the Defendant violated its obligations under the FCRA when it improperly obtained and used their consumer reports for an employment purpose.

Plaintiff will also fairly and adequately represent the interests of the Settlement Classes. Plaintiff has retained qualified and experienced attorneys to represent him and the class in this matter. The attorneys have substantial experience in class action and consumer litigation and are qualified to conduct the litigation.

### E.    Rule 23(b)(3) Considerations.

Once the Plaintiff carries the burden of demonstrating that the Rule 23(a) requirements are met, there are two additional considerations that the court must undertake pursuant to Rule 23(b):

predominance and superiority. *Bernhard*, 2009 WL 3233541, at *4. Under Rule 23(b)(3), the Court must find that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy. *In re Prudential*, 148 F.3d at 314.

### 1. Predominance.

In *Sullivan v. DB Investments, Inc.* (3d Cir. 2011) 667 F.3d 273, 297, the Court explained that the predominance inquiry examines the cohesiveness of the proposed class claims:

> The predominance inquiry " 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation,' " In re Ins. Broker. Antitrust Litig., 579 F.3d 241, 266 (3d Cir.2009) (quoting Amchem, 521 U.S. at 624, 117 S.Ct. 2231), and assesses whether a class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated," Fed.R.Civ.P. 23(b)(3) advisory committee's note to 1966 amendment.

Predominance is satisfied when "there exists generalized evidence which provides or disproves an element on a simultaneous, class wide basis, since such proof obviates the need to examine each class members' individual position." *Zeno v. Ford Motor Co., Inc.* (W.D. Pa. 2006) 238 F.R.D. 173, 196-97 (citing *Allapattah Servs. Inc., v Exxon Corp.*, 333 F.3d 1248, 1260-61 (11th Cir. 2009)). The predominance requirement is satisfied here because the essential factual and legal issues regarding the Settlement Class Members' claims are common, *i.e.*

- Whether Shred-it failed to provide lawful, timely notice when obtaining consumer reports for employment purposes;

- Whether Shred-it's notice violated the FCRA;

- Whether Shred-it violation was willful.

Because these issues are common, and indeed are determinative of Settlement Class Members' claims, they far outweigh – predominate over – the importance of any individual issues particular to Class Members.

Plaintiff's claims are subject to generalized proof of (1) whether the disclosure and authorizations used by Shred-it to procure background checks were compliant. The actual form

disclosure and authorization form that gives rise to the class claim was similarly deficient to the forms used for all class members, *i.e*, all of them release and/or indemnity provisions.

### 2.    Superiority.

Finally, this Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. P. 23(b)(3). *In re Prudential*, 148 F.3d at 315. The factors to be considered here in determining the superiority of the class mechanism are (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability. *Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper* (1980) 445 U.S. 326, 339 [100 S.Ct. 1166, 1174, 63 L.Ed.2d 427]; *Fishbein v. Druz* (E.D. Pa., Sept. 21, 1989, CIV. A. 89-5987) 1989 WL 110863 (quoting Deposit Guar., "The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they employ the class-action device.")

Efficiency is the primary focus in determining whether a class action is indeed superior. In examining these factors, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.* (7th Cir. 1974) 503 F.2d 1161, 1165. To determine superiority, courts also consider the anticipated amount of recovery for each plaintiff, noting that class actions are particularly appropriate where multiple lawsuits are infeasible because of the small amount of any individual remedy. *See* Advisory Committee Note to 1996 Amend. to Rule 23.

In this case, there are approximately 3,328 class members for whom the facts and issues involved are identical for all class members. The class members are persons who allegedly suffered a violation of their rights under the FCRA, but whose damages may be relatively modest or difficult to measure and therefore have a remedy by statute. For the individual class member, each one may have little incentive

and few resources to pursue litigation on his or her own. The class members are dispersed over several states, and there are no manageability concerns. The class action is the best method of resolving the matter. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (*quoting Mace v. V an Ru Credit Corp.*, 109 F.3d 338, 344 (1997)).

A class action in this case is superior to other available methods for the fair and efficient adjudication of the controversy because a class resolution of the issues described above outweighs the difficulties in management of separate and individual claims and allows access to the courts for those who might not gain such access standing alone, particularly in light of the relatively small amount of the actual and statutory damage claims that would be available to individuals. Moreover, such a certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit. Thus, both predominance and superiority are satisfied.

## V.     THE SETTLEMENT IS APPROPRIATE FOR PRELIMINARY APPROVAL.

### A.     The value of any expected recovery balanced against the proposed settlement.

The proposed settlement would provide Settlement Class Members a payment for their claimed statutory damages within the range authorized by Section 1681n(1)(A) which authorizes the right to recover between $100 and $1,000. 15 U.S.C. § 1681n (1)(A).

Such amount is appropriate where, as in this case, the Court in another case has determined that Defendant's alleged violation does not constitute a "willful violation" as a matter of law and consideration of the risks and costs attendant to an appeal, which, if successful, would still require a trial on the merits

That the class members can achieve this recovery without the costs and risk of continued litigation clearly establishes the fairness and adequacy of the settlement as a preliminary matter.

### B.     Arm's length settlement negotiations.

This action has been vigorously litigated by the parties and sufficient discovery has been obtained by Plaintiff to assess the strengths of their respective claims and defenses. The parties have had

the opportunity to present dispositive motions, upon which the court has ruled

**C.    The proponents of the settlement are experienced**

Finally, counsel is highly experienced in consumer and wage and hour class action litigation and endorse the settlement as fair and adequate under the circumstances. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See, e.g., In re MicroStrategy, Inc. Securities Litigation* (E.D. Va. 2001) 148 F.Supp.2d 654, 665; *Stewart v. Rubin* (D.D.C. 1996) 948 F.Supp. 1077, 1087 aff'd, (D.C. Cir. 1997) 124 F.3d 1309; *Rolland v. Cellucci* (D. Mass. 2000) 191 F.R.D. 3, 6. In counsel's opinion, there is no obvious deficiency in the class settlement.

**D.    Public policy considerations support preliminary approval.**

The resolution by compromise was reached after this Court's ruling in the related case through extensive negotiation, and the resolution still saves significant judicial resources by resolving without going through a lengthy and costly appeal.

This case is brought under the Fair Credit Reporting Act, a statute that recognizes the importance of private attorneys general prosecuting cases on behalf of consumers whose rights have been violated by enacting a fee-shifting provision as part of the statute. The settlement is consistent with the public interest because it is consistent with the proper administration of justice and the purpose of the FCRA in ensuring that job applicants receive a meaningful disclosure and authorization.

**VI.    CONCLUSION.**

The Parties have reached a Settlement in this case that provides genuine relief to Class Members. The Settlement is an excellent result considering the contentiousness of the litigation and the challenges faced by the Plaintiff. Each Class Member is entitled to a cash recovery as a result of the Settlement, regardless of whether they were aware Defendants' conduct potentially violated the FCRA or whether they suffered actual harm. There is no claims process. In addition, the terms of the Settlement as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through appeal satisfy the requirements for preliminary approval.

Accordingly, the Plaintiff and Shred-it's request the Court for an Order preliminarily approving

**Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement**

the Settlement.

Dated: March 18, 2015        THE DION-KINDEM LAW FIRM

BY: _____
       PETER R. DION-KINDEM, P.C.
       PETER R. DION-KINDEM
       Attorney for Plaintiff Michael Kirchner

**Declaration of Peter R. Dion-Kindem in Support of Stipulation for Preliminary Approval**

I, Peter R. Dion-Kindem, declare:

1.     I am an attorney licensed to practice in California. I am co-counsel for Plaintiff Michael Kirchner in this action. I have personal knowledge of the following facts and could and would competently testify thereto if called as a witness.

2.     I am the principal of Peter R. Dion-Kindem, P.C. I was admitted to the California Bar in December 1980 and have been practicing civil litigation, including the prosecution of employment claims, throughout my career. Plaintiff's co-counsel, Lonnie C. Blanchard, III of Blanchard Law Group, APC, and I have agreed to a fee-sharing agreement based on the amount of time our respective firms have devoted to the case. Any costs advanced are to be reimbursed from the settlement amount.

3.     Attached as Exhibit 1 is a copy of the executed Stipulation of Class Action Settlement. The key substantive terms of the Settlement are accurately summarized in the Memorandum.

4.     I have expertise with the issues involved herein and have litigated numerous class action claims, and am fully capable of prosecuting this litigation. I have been counsel of record for at least 23 class actions in federal and state court. I have been appointed class counsel in at least nine different class proceedings.

5.     The extensive information exchange conducted in this matter, as well as discussions between counsel, have been adequate to give the Representative Plaintiff and Class Counsel a sound understanding of the merits of their positions and to evaluate the worth of the claims of the Class.

6.     The Representative Plaintiff is a member of the class and has no interests adverse to those of the other class members. Plaintiff has been instrumental in prosecuting this action and has personally risked liability for a large cost bill if the matter was not successful.

7.     The Representative Plaintiff and Class Counsel also have taken into account the uncertainty and risk of further litigation, the potential outcome, and the difficulties and delays inherent in such litigation, including the financial ability of the Defendants to respond to any judgment that may be obtained against them if the claims are successful. Based on the foregoing, the Representative

Plaintiff and Class Counsel believe the Settlement set forth in this Agreement is a fair, adequate and reasonable settlement, and is in the best interests of the Class Members.

8. Under the terms of the proposed Settlement, Defendant Shred-it USA, Inc. agrees to fund a settlement of $250,000 for the benefit of Settlement Class Members for their alleged damages resulting from Shred-it's alleged FCRA violations.

9. The Agreement defines "Settlement Class Members" as

> All individuals as to whom, during the period of time from June 16, 2009, through June 16, 2014, Shred-it procured or caused to be procured a consumer report for employment purposes who signed an authorization form, in electronic or written form, allowing for consumer reports to be obtained which included a liability release or other language of any kind other than the authorization and disclosure permitted under the Fair Credit Reporting Act, 15 U.S.C. 1681b(b)(2).

10. Defendant has represented that approximately 3,328 persons are members of this class and will receive a pro rata share of the Net Settlement Fund, which is estimated to be $151,575, or approximately $45.55 per class member. Given the fact that this Court has already rejected an identical claim asserted by a plaintiff against an employer such as Shred-it in the *Syed* action (which is currently under appeal), this settlement amount is fair and reasonable.

11. Subject to court approval, the following amounts shall be paid from this settlement amount:

> a. An Attorney's Fee Award of up to $80,000 (Plaintiff's counsel will only be seeking 25% of the gross settlement, or $62,500);
>
> b. An Attorney's Costs Award of up to $20,000;
>
> c. A Class Representative Incentive Award to the Representative Plaintiff of $5,000;
>
> d. Class Administration Costs of up to $31,000.

### Service Award to Class Representative

12. As part of the Settlement, Defendant has agreed that Plaintiff may seek a Service Award of $5,000 in addition to his share of the settlement fund.

13. Plaintiff is a former employee of Defendant who has taken an extraordinary step to challenge her former employer's actions by bringing this action. Plaintiff did so in the belief that he, and the class members, were, in fact, entitled to the relief sought in this case. Until this case was filed,

**Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement**

no one was pursuing the claims raised in this matter. Plaintiff's actions have resulted in a substantial recovery for the class members, and the Service Award sought for Plaintiff is reasonable. Absent the actions taken by Plaintiff, none of the Class Members would have reaped the rewards of this action.

### Attorney's Fees and Expenses for Class Counsel

14. As for the fees to be awarded to Class Counsel, the Settlement provides for Class Counsel to apply to the Court for an award of fees of up to $80,000. Class Counsel has chosen only to request fee equal to the 25% "benchmark" used in the Ninth Circuit in common fund cases, plus reimbursement of their litigation expenses, not to exceed $5,000.

15. The percentage award is commensurate with (a) the risk Class Counsel took in commencing this action, (b) the time, effort and expense dedicated to the case, (c) the skill and determination they have shown, (d) the results they have achieved throughout the litigation, and (d) the value of the Settlement that they have achieved for Class Members.

16. Here, given that this is a settlement with a common-fund, a fee request of 25%, or $62,500 is fair and reasonable. Reduction of this fee request will benefit only Defendant.

### Attorney Costs

17. Pursuant to the settlement, Class Counsel have requested to have the costs they advanced on behalf of the class reimbursed, and defendant has stipulated to said request being granted up to the estimated amount of $5,000. The out of pocket costs directly related to this litigation incurred by my office and that of my co-counsel.

### Claims Administrator

18. The parties have agreed to retain Simpluris, Inc., a company with substantial class action administration experience, as the claims administrator in this case. Simpluris has provided a proposal, which caps the costs of administration at $31,000, which the parties and the administrator, based on their experience, estimated would be necessary for the administration of the case like this.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Dated: March 18, 2014

_____
Peter R. Dion-Kindem

Exhibit 1

[Counsel listed on following page]

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Michael Kirchner, an individual, on behalf of himself and all others similarly situated,

      Plaintiff,

      vs.

Shred-It USA Inc., a Delaware Corporation, First Advantage LNS Screening Solutions, Inc., and Does 1 through 10,

      Defendants.

**Case No. 2:14-CV-01437-WBS-EFB**
**CLASS ACTION**

**JOINT STIPULATION OF CLASS ACTION SETTLEMENT**

PETER R. DION-KINDEM (SBN 95267)
THE DION-KINDEM LAW FIRM
PETER R. DION-KINDEM, P. C.
21550 Oxnard Street, Suite 900
Woodland Hills, California 91367
Telephone:     (818) 883-4900
Fax:           (818) 883-4902
Email:         peter@dion-kindemlaw.com

LONNIE C. BLANCHARD, III (SBN 93530)
THE BLANCHARD LAW GROUP, APC
3311 East Pico Boulevard
Los Angeles, CA 90023
Telephone:     (213) 599-8255
Fax:           (213) 402-3949
Email:         lonnieblanchard@gmail.com

WESTERMAN BALL EDERER MILLER ZUCKER & SHARFSTEIN
Greg S. Zucker
Philip J. Campisi, Jr.
1201 RXR Plaza
Uniondale, New York  11556
Telephone:     (516) 622-9200
Facsimile:     (516) 622-9212
Email:         gzucker@westermanllp.com
               pcampisi@westermanllp.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Shon Morgan (Bar No. 187736)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100
Email:         shonmorgan@quinnemanuel.com

Attorneys for Defendant Shred-it USA Inc. n/k/a Shred-it USA LLC

**JOINT STIPULATION OF CLASS ACTION SETTLEMENT**

## SETTLEMENT AGREEMENT

Plaintiff Michael Kirchner, individually and on behalf of the putative Rule 23 class, and Defendant Shred-It USA Inc. n/k/a Shred-it USA LLC ("Shred-it"), enter into this Settlement Agreement and Release to settle the issues between them asserted in this action. Except to the extent governed by federal law, this Agreement shall be governed by the statutes and common law of California, excluding any that mandate the use of another jurisdiction's laws.

[remainder of page intentionally left blank]

## **Table of Contents**

SETTLEMENT AGREEMENT ..................................................................................................3

RECITALS ............................................................................................................................4

DEFINITIONS.......................................................................................................................5

    1.     Action or Litigation..............................................................................................5

    2.     Agreement............................................................................................................5

    3.     Class Counsel.......................................................................................................5

    4.     Class Counsel Attorney's Fees. ...........................................................................5

    5.     Class Counsel Costs.............................................................................................5

    6.     Class Representative or Kirchner.........................................................................6

    7.     Court....................................................................................................................6

    8.     Covered Period(s)................................................................................................6

    9.     Defendant, Shred-it, or Released Persons............................................................6

    10.    Final Approval Order and Judgment....................................................................6

    11.    Net Settlement Fund. ...........................................................................................6

    12.    Notice of Settlement and Release of Claims........................................................6

    13.    Opt-Out or Objections Deadline..........................................................................7

    14.    Parties..................................................................................................................7

    15.    Settlement Administrator.....................................................................................7

    16.    Settlement Administrator Costs. ..........................................................................7

    17.    Settlement Class...................................................................................................7

    18.    Settlement Class Member. ...................................................................................7

    19.    Settlement Effective Date. ...................................................................................7

    20.    Settlement Fund. ..................................................................................................8

RELIEF AND BENEFITS .....................................................................................................9

    21.    Monetary Benefits to Settlement Class Members.................................................9

**JOINT STIPULATION OF CLASS ACTION SETTLEMENT**

22. Distribution of Monetary Benefits. ..................................................................9

    A.    Service Payment to Kirchner. ..................................................... 9

    B.    Attorneys' Fees. ......................................................................... 9

    C.    Attorneys' Costs. ...................................................................... 10

    D.    Settlement Class Members' Pro Rata Distribution. ................... 10

    E.    Cy Pres Fund. ............................................................................ 10

23. Taxes. ...........................................................................................................10

24. Payments to Class Counsel. ..........................................................................11

25. Payment of Net Settlement Fund. ................................................................11

26. Service Payment to Kirchner and Payments to Settlement Class Members. ...................11

APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SETTLEMENT
ADMINISTRATOR COSTS ..............................................................................12

27. Attorneys' Fees and Class Counsel Costs and Settlement Administrator Costs. ............ 12

RELEASE OF CLAIMS .........................................................................................12

28. Settlement Class Release and Waiver of Claims. ........................................ 12

29. Kirchner's Release and Waiver of Claims. ................................................... 13

30. Prior Releases and Waivers of Claims. ........................................................ 13

31. Known and Unknown Claims Released. ....................................................... 14

NO ADMISSION OF LIABILITY ........................................................................ 14

32. No Admission. .............................................................................................. 14

NOTICE, OPT-OUT, OBJECTIONS AND SETTLEMENT APPROVAL .......... 14

33. Notice to Settlement Class Members. .......................................................... 14

34. Notices Returned as Undeliverable. ............................................................. 15

35. Toll-Free Telephone Line. ............................................................................ 15

36. Right to Opt Out. .......................................................................................... 15

37. Objections. ................................................................................................... 16

**JOINT STIPULATION OF CLASS ACTION SETTLEMENT**

38. Preliminary Settlement Approval. ................................................. 16

39. Compliance with CAFA. ............................................................... 17

40. Final Fairness Hearing & Final Approval Order and Judgment. ..................... 17

41. Settlement Not Approved. ............................................................. 17

42. Settlement Modification. ............................................................. 18

43. Class Certification for Settlement Purposes Only. ................................. 18

CONFIDENTIALITY AND COMMUNICATIONS ............................................... 19

44. No Public Comment. ................................................................... 19

45. Communications with Settlement Class Members. .................................... 19

46. No Waiver. ........................................................................... 19

OTHER PROMISES ....................................................................... 19

47. Agreement Not Evidence. ............................................................. 19

48. No Waiver. ........................................................................... 20

49. Authority. ........................................................................... 20

50. Best Reasonable Efforts and Mutual Full Cooperation. ............................. 20

51. Entire Agreement. ................................................................... 20

52. Modification. ....................................................................... 21

53. Binding. ............................................................................ 21

54. No Prior Assignments. ............................................................... 21

55. Construction. ....................................................................... 21

56. Construction of Captions and Interpretations. .................................... 21

57. Notices. ............................................................................ 21

58. Class Signatories. .................................................................. 22

59. Counterparts. ....................................................................... 23

EXHIBITS .............................................................................. 23

**JOINT STIPULATION OF CLASS ACTION SETTLEMENT**

## <u>RECITALS</u>

A.  On June 16, 2014, Michael Kirchner filed an action in the Eastern District of California entitled *Michael Kirchner, an individual, on behalf of himself and all others similarly situated v. Shred-it USA Inc., et al.*, No. 2:14-cv-01437 (the "Action"). On September 5, 2014, Kirchner filed a First Amended Complaint in the Action.

B.  Kirchner has asserted a cause of action against Shred-it for its alleged violations of the Fair Credit Reporting Act ("FCRA") relating to Shred-it's alleged procurement of consumer reports regarding employees or prospective employees through the use of disclosure and authorization forms that Kirchner contends violates the FCRA because such forms contain provisions and/or language other than the disclosure and authorization, including, without limitation, an indemnity and release provision.

C.  On October 8, 2014, Shred-it filed a motion to dismiss the Action.

D.  On November 25, 2014, the Parties reached a compromise in principle on a class basis, contingent upon the negotiation and execution by the parties of a final agreement approved by the Court. The Parties jointly notified the Court of the same and duly filed a Notice of Settlement on November 25, 2014.

E.  Shred-it denies it has engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been or could have been alleged against it in the Action, denies that the claims asserted by the Kirchner is suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever, but has agreed to this Settlement Agreement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented, the inconvenience involved, and the disruption to its business operations.

F.  All counsel who have represented the Kirchner and the Settlement Class defined below are aware that Shred-it has significant defenses to the allegations in this Action upon which Shred-it might prevail and that, as a result, Kirchner and the Settlement Class may not receive any benefit or consideration for the claim that has been asserted against Shred-It.

G.  Based upon their analysis and evaluation of several factors, Class Counsel recognize the substantial risks of continued litigation and delays, including the likelihood that the claims, if not settled now, might not result in any recovery whatsoever for the Settlement Class.

H.  Class Counsel have conducted a thorough study and investigation of the law and facts relating to the claim that has been asserted as well as a thorough study and investigation of the scope and identity of the Settlement Class, and have concluded, taking into account the benefits of this settlement, as defined below, and the risks and delays of further litigation, that this settlement is fair and reasonable and in the best interests of the Settlement Class.

I.  Subject to the approval of the Court, the Parties wish to settle this Action, effect a compromise, and settle the claims asserted in the Action against Shred-It.

J.  In light of the above recitals, the Parties understand and agree that the claims asserted here shall be settled, compromised, and released, subject to the approval of the Court, upon and subject to the following terms and conditions:

## DEFINITIONS

**1.  Action or Litigation.**

This action, entitled Michael Kirchner, an individual, on behalf of himself and all others similarly situated v. Shred-it USA Inc., et al., No. 2:14-cv-01437 (E.D. Cal. filed June 16, 2014).

**2.  Agreement.**

This Stipulation re Class Action Settlement.

**3.  Class Counsel.**

Peter R. Dion-Kindem, P.C. and The Blanchard Law Group, APC, each of which represents the Kirchner and the Settlement Class.

**4.  Class Counsel Attorney's Fees.**

The sum of $80,000.00 in attorney's fees that Shred-it has agreed to pay Class Counsel, subject to Court approval. Any reduction in such fees will not increase the Net Settlement Fund available for distribution to Class Members.

**5.  Class Counsel Costs.**

A sum not to exceed $5,000 in costs incurred by Class Counsel in connection with the Action

and this settlement, which sum shall be paid from the Settlement Fund.

**6. Class Representative or Kirchner.**

Plaintiff Michael Kirchner.

**7. Court.**

The United States District Court for the Eastern District of California.

**8. Covered Period(s).**

The period of time from June 16, 2009, through June 16, 2014.

**9. Defendant, Shred-it, or Released Persons.**

Defendant Shred-it USA Inc. and Shred-it USA LLC, and their respective present, former, and future affiliates, parents, subsidiaries, corporate family members, joint venturers, officers, directors, partners, employees, agents, attorneys, heirs, administrators, executors, members, member entities, shareholders, predecessors, successors, representatives, trustees, principals, and assigns, individually, jointly, and severally (collectively, "Shred-it" or the "Released Persons"). This excludes First Advantage LNS Screening Solutions, Inc. and any of its related entities and any other Credit Reporting Agency as that term is defined in the FCRA that provided any consumer reports to Shred-it.

**10. Final Approval Order and Judgment.**

The Court's Order granting final approval of this settlement.

**11. Net Settlement Fund.**

The amount of money remaining after the Settlement Fund is reduced by the following amounts:

> **A.** the service payment to Kirchner that the Court approves in an amount not to exceed $5,000;
>
> **B.** the costs to Class Counsel that the Court approves in an amount not to exceed $5,000; and
>
> **C.** The Settlement Administration Costs that the Court approves.

**12. Notice of Settlement and Release of Claims.**

The form, approved by Class Counsel and Defendant, subject to Court approval, which the Settlement Administrator will mail, via first-class U.S. mail, to each Settlement Class Member to

explain the terms of the settlement, including the procedure for objecting to or opting out of the settlement.

**13.    Opt-Out or Objections Deadline.**

The date the Court establishes as the deadline by which Settlement Class Members must postmark a written notice of their intent to opt-out of the settlement and by which objections to the preliminarily approved settlement must be filed with the Court.

**14.    Parties.**

Kirchner and Shred-it.

**15.    Settlement Administrator.**

Simpluris, Inc. located at 3176 Pullman Street, Suite 123, Costa Mesa, CA  92626.

**16.    Settlement Administrator Costs.**

The costs incurred by the Settlement Administrator in administering the settlement, not to exceed $31,000.

**17.    Settlement Class.**

All individuals as to whom, during the Covered Period, Shred-it procured or caused to be procured a consumer report for employment purposes who signed an authorization form, in electronic or written form, allowing for consumer reports to be obtained which included a liability release or other language of any kind other than the authorization and disclosure permitted under the Fair Credit Reporting Act, 15 U.S.C. 1681b(b)(2), but not any individuals who timely opt-out of the settlement.

**18.    Settlement Class Member.**

Any individual who is a member of the Settlement Class who does not file a timely and valid written notice of intent to opt-out by the Opt-Out Deadline.

**19.    Settlement Effective Date.**

The first day after the first date on which all of the following have occurred:

      A.    all parties, Class Counsel, and Defendant's counsel have executed this Agreement;

      B.    the Court has preliminarily approved this settlement;

      C.    reasonable notice has been given to Settlement Class Members, including

providing them an opportunity to opt out of or object to the settlement;

D.    the Court has held a final approval hearing, entered a Final Approval Order and Judgment approving the settlement, awarded the Kirchner any incentive awards, and awarded Class Counsel its reasonable attorneys' fees and costs, and authorized the payment of the Administration costs to the Settlement Administrator; and

E.    only if there are written objections filed before the final approval hearing and those objections are not later withdrawn, the last of the following events to occur:

i.    if no appeal is filed, then the date on which the objector's time to appeal the Final Approval Order has expired with no appeal or any other judicial review having been taken or sought; or

ii.    if an appeal of the Final Approval Order has been timely filed or other judicial review was taken or sought, the date that Order is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review or the date the appeals or any other judicial review are finally dismissed with no possibility of subsequent appeal or other judicial review.

F.    It is the intention of the Parties that the settlement shall not become effective until the Court's Final Approval Order has become completely final and until there is no timely recourse by an appellant or objector who seeks to contest the settlement.

**20.    Settlement Fund.**

The sum of $170.000.00, which, along with the Class Counsel Attorney's Fees in the amount of $80,000.00, total $250,000.00, which $250,000.00 is the total amount of money Shred-it will pay pursuant to this settlement (the "Settlement Fund"). The Settlement Fund and Class Counsel Attorney's Fees include all attorneys' fees, costs, and expenses related to this Action, any service

payment to Kirchner, and all Settlement Administration Costs in connection with this Settlement.

## **RELIEF AND BENEFITS**

**21.     Monetary Benefits to Settlement Class Members.**

In exchange for the releases and waivers of claims described below, Shred-it will pay the amount of $250,000.00 in settlement of all claims asserted against it in this Action. The total amount of this payment will constitute the Class Counsel Attorney's Fees of $80,000.00 and the Settlement Fund, from which Settlement Fund Kirchner and the Settlement Class Members will be paid, from which Class Counsel's Court-approved costs will be paid, from which the Kirchner's Court-approved service payment will be paid, and from which Court-approved Settlement Administration Costs will be paid.

**22.     Distribution of Monetary Benefits.**

The total monetary benefit will be distributed as follows:

**A.     Service Payment to Kirchner.**

Plaintiff's Counsel may apply to the Court for a service award to Kirchner in an amount not to exceed $5,000, which shall be paid from the Settlement Fund, as consideration for his service as the named class representative and his agreement not to receive any recovery to which he would otherwise be entitled to as a Settlement Class Member. Shred-it agrees not to oppose the motion for such service payment. If approved by the Court, this service payment will be paid to the Kirchner by the Settlement Administrator at the same time as the Settlement Payments are issued to the Settlement Class Members. Shred-it shall have no other payment obligations owed to the Kirchner for any amount, directly or indirectly, however denominated or for whatever purpose allegedly incurred in connection with this Action. By signing this Agreement, the Parties warrant the Kirchner's service payments were negotiated only after the total consideration agreed to be paid by Shred-it had been agreed upon.

**B.     Attorneys' Fees.**

Shred-it has agreed to pay Plaintiff's Counsel the sum of $80,000.00 as reasonable attorneys' fees incurred in prosecuting this Action and in connection with obtaining the approval of this

settlement. Plaintiff's Counsel may apply for Court approval of such fee award, which shall be paid separately by Shred-it to Class Counsel. Shred-it agrees not to oppose an application for fees consistent with this limitation. Any fees not approved by the Court shall not increase the Net Settlement Fund, but shall only benefit Shred-it.

### C. Attorneys' Costs.

Class Counsel shall make application for approval for reimbursement of the Court of costs in an amount not to exceed $5,000, which costs shall include costs incurred in connection with the approval of the settlement and the administration of the settlement by Class Counsel, which shall be paid from the Settlement Fund. By signing this Agreement, the Parties warrant that Class Counsel's attorneys' fees and costs were negotiated only after the total consideration agreed to be paid by Shred-it had been agreed upon.

### D. Settlement Class Members' Pro Rata Distribution.

The Net Settlement Fund will be distributed pro rata in the form of a check to each Settlement Class Member who did not validly and timely opt-out of the Settlement Class. Settlement Class Members shall have 180 days from the date on which checks are mailed to negotiate their checks.

### E. Cy Pres Fund.

Any uncashed settlement compensation from the Settlement Fund after distributing the Net Settlement Fund proceeds and after the 180-day period for negotiating checks will constitute a cy pres fund which will be donated to a mutually agreed upon and non-controversial charity, approved by the Court that serves interests that are aligned with those of the Settlement Class.

### 23. Taxes.

The Parties agree the payments to each Settlement Class Members are not wages, each Settlement Class Member will be solely responsible for correctly characterizing this payment for tax purposes and for paying any taxes owed on this payment, and Shred-it or the Settlement Administrator on Shred-it's behalf will issue to each Settlement Class Member an IRS Form 1099 for this payment. The Parties also agree that the approved service payment to Kirchner is not wages,

Kirchner will be solely responsible for correctly characterizing this payment for tax purposes and for paying any taxes owed on this payment, and Shred-it or the Settlement Administrator on Shred-it's behalf will issue to Kirchner an IRS Form 1099 for this payment.

### 24. Payments to Class Counsel.

As soon as practicable after the Settlement Effective Date, but in no event later than five (5) business days after that Date, Shred-it will pay, or cause to be paid, either by check or wire transfer, any approved attorneys' fees and costs to Class Counsel.

### 25. Payment of Net Settlement Fund.

As soon as practicable after the Settlement Effective Date, but in no event later than five (5) business days thereafter, Shred-it will pay, or cause to be paid the Settlement Fund, either by check or wire transfer, to the Settlement Administrator, the Settlement Fund, less any separately approved Class Counsel Costs paid by Shred-it.

### 26. Service Payment to Kirchner and Payments to Settlement Class Members.

Any service payment to Kirchner and all payments to Settlement Class Members will be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail, postmarked within 15 business days of the Settlement Effective Date. The Settlement Administrator will include with each check an Internal Revenue Service (IRS) Form 1099 for Kirchner or any Settlement Class Member for whom a form is required. All checks will expire 180 days after they are issued and will state this on their face. Shred-it shall have no further obligations to Kirchner or any Settlement Class Member upon payment of the Net Settlement Fund. If any such payment is returned by the U.S. Postal Service as undeliverable, or is uncashed or not negotiated before it expires, neither Shred-it nor the Settlement Administrator nor Class Counsel shall have any further obligations to Kirchner or any Settlement Class Member, except that:

A. for any check returned by the U.S. Postal Service with a forwarding address before the check's expiration date, the Settlement Administrator will mail the check to the forwarding address;

B. if Kirchner or a Settlement Class Member contacts the Settlement

Administrator or Class Counsel to request a replacement check, the Settlement Administrator will comply with that request by cancelling the initial check and issuing a replacement check, but the replacement check shall expire on the same date as the original check; and

C. the parties agree that all Settlement Class Members waive and abandon any ownership interest in any undeliverable, returned, uncashed, or non-negotiated checks and further agree that no obligation has been generated or proven with respect to such undeliverable, returned, uncashed, or non-negotiated checks.

## APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SETTLEMENT ADMINISTRATOR COSTS

27. **Attorneys' Fees and Class Counsel Costs and Settlement Administrator Costs.**

Kirchner will seek Class Counsel's customary, reasonable, and documented out-of-pocket costs, including any expenses associated with settlement administration, which shall be paid from the Settlement Fund. Kirchner agrees to provide the Court and Shred-it with documentation for all claimed costs for review and verification. Within the monetary limitations stated in this Agreement, and upon adequate documentations, Shred-it agrees not to oppose Kirchner's motion for approval of an award of attorneys' fees, costs and Settlement Administration Costs as described above. Upon payment of any approved attorneys' fees and costs to Class Counsel, Shred-it shall have no other payment obligations to Class Counsel relating to this Action for any amount, individually or collectively, directly or indirectly, however denominated or for whatever purpose incurred. Kirchner will file his Motion for approval of Attorneys' Fees and Costs, Class Representative Service Payment, and Payment of the Settlement Administrator's Expenses no later than seven (7) days before the hearing on the Motion for Final Approval.

## RELEASE OF CLAIMS

28. **Settlement Class Release and Waiver of Claims.**

On the Settlement Effective Date, for the Settlement Class's benefits and for other good and

valuable consideration, the receipt and sufficiency of which are hereby acknowledged, all Settlement Class Members who have not timely and properly opted out of the settlement, and all those acting or purporting to act on their behalf, fully and forever release, waive, acquit, and discharge Shred-it and the Released Persons from any and all claims that the Settlement Class has arising out of or relating directly or indirectly in any manner whatsoever to the facts alleged in the Action, including but not limited to any and all claims under 15 U.S.C. § 1681b(b)(2)(A) of the FCRA and any parallel state or common law claims.  It is expressly intended and understood by the Parties that this Settlement Agreement is to be construed as a complete settlement, accord, and satisfaction of the Settlement Class member's released claims.

29.    **Kirchner's Release and Waiver of Claims.**

On the Settlement Effective Date, Kirchner, on behalf of himself, his agents, insurers, representatives, attorneys, assignees, heirs, executors, vendors, and administrators, releases and forever discharges Shred-it and the Released Persons, to the fullest extent permitted by law, from any and all claims Kirchner has by reason of any cause, matter or thing whatsoever, from the beginning of the world to the date on which the final Settlement Agreement is executed, including both known and unknown and suspected and unsuspected claims and causes of action in addition to or different from those which he now knows or believes to be true with respect to the allegations and subject matters in this case and including but not limited to any claims relating to his employment or separation of his employment with Shred-it. Kirchner's release and waiver of claims, however, shall not apply to any valid worker's compensation claims or to any claims previously asserted on or before November 25, 2014 by or on behalf of Kirchner against Shred-it, including those asserted (a) in the litigation entitled *Kirchner v. Shred-it USA Inc, et al*, No. 39-2014-00309874-CU-OE-STK (Superior Court of the State of California, County of San Joaquin, filed April 11, 2014); (b) under Worker's Compensation Laws; (c) for unemployment benefits; (d) before the California Labor Commissioner's Office or Division of Labor Standards Enforcement; and (e) pending charges before the United States Equal Employment Opportunity Commission.

30.    **Prior Releases and Waivers of Claims.**

Shred-it agrees that the Settlement Class Members', Kirchner's, or Class Counsel's receipt of

any funds as a result of this settlement or the assertion of any claims in this Action is not a violation of any prior promises, contracts, agreements, waivers, or covenants between Shred-it and the Settlement Class Members, the Kirchner, or Class Counsel.

**31.    Known and Unknown Claims Released.**

The Settlement Class Members and Kirchner acknowledge they are releasing both known and unknown and suspected and unsuspected claims and causes of action and are aware that they may hereafter discover legal or equitable claims or remedies presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true regarding the allegations in and subject matter of this Action. Nevertheless, it is the intention of the Settlement Class Members and Kirchner to fully, finally, and forever settle and release all such matters, and all claims and causes of action relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in the Action) from the beginning of the world through the Effective Date.

## NO ADMISSION OF LIABILITY

**32.    No Admission.**

The Parties expressly acknowledge and agree that neither the fact of, nor any provision contained in, this Agreement, nor the implementing documents or actions taken under them, nor Shred-it's willingness to enter into this Agreement, nor the content or fact of any negotiations, communications, and discussions associated with the settlement shall constitute or be construed as an admission by or against Shred-it or any of the Released Persons of any fault, wrongdoing, violation of law, or liability whatsoever, the validity of any claim or fact alleged in this Action, or any infirmity of any defenses asserted by Shred-it in this Action.

## NOTICE, OPT-OUT, OBJECTIONS AND SETTLEMENT APPROVAL

**33.    Notice to Settlement Class Members.**

As soon as practicable but in no event more than seven (7) days after the Court has issued an order preliminarily approving this settlement in substantially the same form as Exhibit A, the Settlement Administrator will send the approved Notice of Settlement and Release of Claims form,

attached as Exhibit B, to all Settlement Class Members via first-class U.S. Mail, postage prepaid and return service requested. The Notice shall be mailed to each Settlement Class Member's last known mailing address, as updated by using the U.S. Postal Service's database of verifiable mailing addresses (the CASS database) and the National Change-of-Address database. The Notice shall bear the Settlement Administrator's mailing address as the return-mail address. The envelope in which the Notice is sent will include an indication it is a "Court Approved Settlement Notice authorized by the U.S. District Court for the Eastern District of California" and may also include a bar code.

**34.    Notices Returned as Undeliverable.**

For all Notices returned to the Settlement Administrator without forwarding addresses, the Settlement Administrator will use publicly available databases as practicable to update Settlement Class Members' addresses and will cause the Notice to be re-mailed by the Settlement Administrator to such Settlement Class Members who can be located.

**35.    Toll-Free Telephone Line.**

The Settlement Administrator will establish and staff a toll-free telephone line that Settlement Class Members can use to contact the Settlement Administrator with questions about the settlement or to change their addresses.

**36.    Right to Opt Out.**

All Settlement Class Members will have the right to be excluded from, i.e., to "opt out" of, the Settlement Class. On or before the Opt-Out Deadline established by the Court, but no later than sixty (60) days after the mailing date of the initial Notice, each Settlement Class Member who elects to opt out of the settlement must send, by first-class U.S. mail, written notice addressed to the Settlement Administrator indicating his or her name and address and stating that he or she desires to opt-out of the settlement or otherwise does not want to participate in the settlement. Any Settlement Class Member who does not timely (as measured by the postmark on that individual's written notice) opt out of the settlement by written notice correctly directed to Class Counsel and containing the requisite information shall remain members of the Settlement Class and shall be bound by any Orders of the Court about the settlement or the Settlement Class. In no event shall Settlement Class Members who purport to opt-out of the settlement as a group, aggregate, collective, or class

involving more than one Settlement Class Member be considered a successful opt-out. Any Settlement Class Member who fails to timely and validly opt out of the Settlement Classes under this Settlement Agreement shall be bound by the terms of this settlement. If more than 100 Settlement Class Members validly, timely, and individually opt out of the class, then Shred-it may in its sole discretion exercise its right to void the settlement, in which case this Agreement will be vacated, rescinded, cancelled, and annulled, and the Parties will return to the status quo ante as if they had not entered into this settlement. In that event, the settlement and all negotiations and proceedings related to the settlement will be without prejudice of the rights of the Parties, and evidence of the settlement, negotiations, and proceedings will be inadmissible and will not be discoverable.

### 37. Objections.

Any Settlement Class Member who wishes to object to the settlement must file a timely written statement of objection with the Clerk of Court, and mail a copy of that objection with the requisite postmark to Class Counsel and Defense Counsel no later than the Objections Deadline. The Notice of Objection must state the case name and number; the basis for and an explanation of the objection; the name, address, telephone number, and email address of the Settlement Class Member making the objection; and a statement of whether the Settlement Class Member intends to appear at the Final Approval Hearing, either with or without counsel. In addition, any objection must be personally signed by the Settlement Class Member and, if represented by counsel, then by counsel. Any Settlement Class Member who fails to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objections, whether by appeal or otherwise, to the settlement. No Settlement Class Member shall be entitled to contest in any way the approval of the terms and conditions of this Agreement or the Court's Final Approval Order except by filing and serving written objections in accordance with the provisions of this Settlement Agreement. Any Settlement Class Member who fails to object in the manner prescribed shall be deemed to have waived and shall be foreclosed forever from raising any objections to the settlement.

### 38. Preliminary Settlement Approval.

As soon as practicable after the Parties execute this Agreement, Kirchner will present this

Agreement to the Court for preliminary settlement approval and will request by unopposed motion that the Court enter an order preliminarily approving the settlement in substantially in same form as attached Exhibit A.

**39. Compliance with CAFA.**

Within ten (10) business days of Kirchner's filing the motion for preliminary settlement approval, the Settlement Administrator, on behalf of Shred-it, shall serve upon the appropriate State officials of each State in which a Kirchner or a Settlement Class Member resides and upon the pertinent U.S. Attorney General for each such state, a notice of this proposed settlement in accordance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. The Settlement Administrator will provide a copy of this notice to Class Counsel and counsel for Shred-it and will file with the Court a notice of compliance with CAFA's requirements. The costs associated with this CAFA notice procedure shall be a part of the Settlement Administration costs. Shred-it shall provide to the Settlement Administrator any information required to be provided under Section 1715.

**40. Final Fairness Hearing & Final Approval Order and Judgment.**

The Parties will apply to the Court for an Order finally approving the settlement and entering a final Order in substantially the same form attached as Exhibit C. The Parties agree to cooperate to work to schedule a fairness hearing so it shall be held as soon as practicable, but in no event not before 90 days after the Settlement Administrator has issued the required CAFA notices.

**41. Settlement Not Approved.**

If the Court, the U.S. Court of Appeals for the Ninth Circuit, or the U.S. Supreme Court either disapproves or sets aside the Parties' settlement or this Agreement or any material part of either for any reason, or refuses to enter or give effect to the Final Approval Order as defined below, or holds that any terms of the settlement or this Agreement or any of the attached exhibits should be modified in any material way, then the Parties may either jointly agree to accept the settlement or this Agreement as judicially modified or, if they do not agree, either Party may appeal that ruling to the extent possible. If an appeal is filed and if the settlement, this Agreement, or the Final Approval Order or its equivalent in all material respects are not in effect after the termination of all

proceedings arising out of that appeal, then unless the Parties jointly agree otherwise, this Agreement shall become null and void, the Parties will return to the status quo ante, and the Parties will jointly request that the Action proceed. In such event, Shred-it expressly reserves the right to re-file its motion to dismiss the First Amended Complaint which was withdrawn without prejudice. The amount of the Settlement Fund is agreed by the parties to be a material term of this Agreement. The amount of attorneys' fees and costs awarded to Class Counsel are expressly deemed not to be material terms to this Agreement.

**42. Settlement Modification.**

The Parties may agree by stipulation executed by counsel to modify the exhibits to this Agreement to effectuate the purpose of this Agreement or to conform to guidance from the Court about the contents of such exhibits without the need to further amend this Agreement. A stipulation modifying the settlement will be filed with the Court and subject to the Court's approval.

**43. Class Certification for Settlement Purposes Only.**

The Parties' settlement and this Agreement are contingent upon the Court's certifying a Rule 23 class for settlement purposes only based upon the class definition set forth in this Agreement, and if the Court does not so certify a Rule 23 class, this Agreement will have no effect and will be null and void. Class certification will in all instances be based on Shred-it's waiver of certification arguments, but only for purposes of settlement, that may exist to defeat class certification and shall not be construed as an admission by Shred-it as to the suitability of class treatment. Specifically, Shred-it denies that a Rule 23 class may be properly certified other than for purposes of this Settlement and reserves its rights to continue to contest any existing or prospective class-certification motion, and nothing in this Agreement shall be construed as an admission by Shred-it or any of the Released Persons that this Action or any similar case is amenable to class certification. Furthermore, nothing in this Agreement shall prevent Shred-it from seeking decertification of a certified class if the Court does not issue a Final Approval Order or if that Order is not upheld on appeal. In addition, the Parties agree that if, for any reason, the settlement is not approved, the settlement classes shall be decertified, and that certification or denial of certification shall not be used by any person, a Party, or the Court as a basis for certifying or denying certification of any class for litigation purposes.

## CONFIDENTIALITY AND COMMUNICATIONS

**44.     No Public Comment.**

The Parties agree that Class Counsel will not issue or cause to be issued any press releases or their equivalent and will not conduct or participate in any press conferences about the settlement. The Parties also agree that, after the settlement is preliminarily approved, Class Counsel may post on their website a mutually agreeable description of the settlement and resolution of the case. The Parties also agree that Shred-it may issue a communication about the settlement to its management team and that from time to time Shred-it's managers may be asked questions about the case or the settlement, in which case Shred-it will prepare a standard FAQ, which Class Counsel will approve and which Shred-it's managers may use.

**45.     Communications with Settlement Class Members.**

The Parties agree that Class Counsel may communicate directly with Settlement Class Members to ensure as much participation in the settlement as possible. The Parties also agree that Shred-it may communicate with its customers, employees, or prospective employees, including Settlement Class Members, in the ordinary course of business.

**46.     No Waiver.**

Nothing in this Agreement is intended to limit or waive the confidentiality of attorney-client privileged communications between Class Counsel and their current clients and Settlement Class Members, nor is anything in this Agreement intended to limit the ability of Class Counsel to make truthful representations to judicial authorities about either its appointment as class counsel or the settlement of this Action. Likewise, nothing in this Agreement is intended to limit Shred-it's or its agents' communications with their counsel or their ability to respond to judicial authorities.

## OTHER PROMISES

**47.     Agreement Not Evidence.**

Neither this Agreement nor any related documents, negotiations, statements, or Court proceedings may be construed as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including

but not limited to Shred-it, or as a waiver by Shred-it of any applicable defense to the merits of the claims asserted or to Plaintiff's ability to maintain this Action as a class action, except that this Agreement is admissible at hearings necessary to obtain and implement Court approval of the Parties' settlement or in hearings to enforce the terms of this Agreement or any related order of the Court.

**48.  No Waiver.**

A Party's failure to exercise any rights under this Agreement shall not constitute waiver of that Party's right to exercise those rights later, except as expressly provided in this Agreement. No delay by any Party in exercising any power or right under this Agreement will operate as a waiver of that power or right, nor will any single or partial exercise of any power or right under this Agreement preclude other or further exercises of that or any other power or right, except as expressly provided. The waiver by one Party of any breach of this Agreement will not be deemed to be a waiver of any prior or subsequent breach.

**49.  Authority.**

The signatories below represent they are fully authorized to enter into this Agreement.

**50.  Best Reasonable Efforts and Mutual Full Cooperation.**

The Parties agree to fully cooperate with one other to accomplish the terms of this Agreement, including but not limited to, executing such documents and taking such other actions as may be reasonably necessary to implement the terms of this settlement.  The Parties to this Agreement will use their best reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary or ordered by the Court, or otherwise, to effectuate this Agreement and the terms set forth in it and to ensure that checks are mailed to Settlement Class Members as soon as practicable under the terms of this Agreement.  As soon as practicable after execution of this Agreement, Class Counsel will, with the assistance and cooperation of Defendant and its counsel, take all necessary steps reasonably necessary to secure the Court's preliminary and final approval of the Parties' settlement.

**51.  Entire Agreement.**

This Agreement constitutes the full and entire agreement among the Parties with regard to the

subject matter and supersedes all prior representations, agreements, promises, or warranties, written, oral, or otherwise. No Party shall be liable or bound to any other Party for any prior representation, agreement, promise, or warranty, oral or otherwise, except for those that are expressly set forth in or attached to this Agreement.

**52. Modification.**

This Agreement may not be changed, altered, or modified except in a writing signed by the Parties. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

**53. Binding.**

This Agreement will be binding upon and will inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

**54. No Prior Assignments.**

The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or that are rights released or discharged in this settlement except as set forth in this Agreement.

**55. Construction.**

The Parties agree that the terms and conditions of this Agreement are the result of lengthy, arms-length negotiations between the Parties and that this Agreement will not be construed in favor of or against any Party by reason of the extent to which any Party or the Party's counsel participated in the drafting of this Agreement.

**56. Construction of Captions and Interpretations.**

Paragraph titles, captions, or headings in this Agreement are inserted as a matter of convenience and for reference and in no way define, limit, extend, or describe the scope of this Agreement or any provision in it. Each term of this Agreement is contractual and is not merely a recital.

**57. Notices.**

Unless otherwise specifically provided in this Agreement, should any notices, demands or

other communications be required after entry of the Court's Final Approval Order and Judgment, they will be in writing and will be deemed to have been duly given as of the third business day after mailing by U.S. registered or certified mail, return receipt requested, addressed as follows:

**If to Plaintiff:**

THE DION-KINDEM LAW FIRM
Peter R. Dion-Kindem, P.C.
peter@dion-kindemlaw.com
21550 Oxnard Street, Suite 900
Woodland Hills, California 91367
Telephone: (818) 883-4900
Facsimile: (818) 883-4902

and

THE BLANCHARD LAW GROUP, APC
Lonnie C. Blanchard, III
lonnieblanchard@gmail.com
3311 East Pico Boulevard
Los Angeles, California 90023
Telephone: (213) 599-8255
Facsimile: (213) 402-3949

**If to Shred-it:**

WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP
Greg S. Zucker, Esq.
gzucker@westermanllp.com
1201 RXR Plaza
Uniondale, New York 11556
Telephone: (516) 622-9200
Facsimile: (516) 622-9212

Any communication made in connection with this Agreement shall be deemed to have been served when sent by overnight delivery or registered or certified first-class U.S. mail, postage prepaid, or when delivered in person at the addresses designed above.

58. **Class Signatories.**

The Parties agree that because the Settlement Class Members are so numerous, it is impossible and impracticable to have each Settlement Class Member execute this Agreement.

Therefore, the Notice will advise all Settlement Class Members of the binding nature of the release and will have the same force and effect as if this Agreement were executed by each Settlement Class Member to the extent applicable law so provides.

**59. Counterparts.**

This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart will be deemed an original, and, when taken together with other signed counterparts, will constitute one Agreement, which will be binding upon and effective as to all Parties, subject to the Court's approval.

## <u>EXHIBITS</u>

A – Proposed Order Preliminarily Approving Settlement

B – Notice of Settlement and Release of Claims Form

C – Proposed Final Approval Order and Judgment

Executed as of ~~February 11,~~ March 16 2015

On behalf of Defendant Shred-it USA Inc.
n/k/a Shred-it USA LLC

_____

Michael Kirchner, Plaintiff

WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP

By:  /s/ Philip J. Campisi, Jr.
        Philip J. Campisi, Jr.
        Attorneys for Defendant Shred-it USA Inc. n/k/a
        Shred-it USA LLC

THE DION-KINDEM LAW FIRM

By:  s/ PETER R. DION-KINDEM
        PETER R. DION-KINDEM, P.C.
        PETER R. DION-KINDEM
        Attorney for Plaintiff Michael Kirchner

Executed as of February 11, 2015

_____

On behalf of Defendant Shred-it USA Inc.

n/k/a Shred-it USA LLC

_Michael Kirchner_

Michael Kirchner, Plaintiff

WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP

By: ___/s/ Philip J. Campisi, Jr.___
      Philip J. Campisi, Jr.
      Attorneys for Defendant Shred-it USA Inc. n/k/a
      Shred-it USA LLC

THE DION-KINDEM LAW FIRM

By: ___s/ PETER R. DION-KINDEM___
      PETER R. DION-KINDEM, P.C.
      PETER R. DION-KINDEM
      Attorney for Plaintiff Michael Kirchner

Exhibit A

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Michael Kirchner, an individual, on behalf of himself and all others similarly situated, | **Case No. 2:14-CV-01437-WBS-EFB** **CLASS ACTION** |
| Plaintiff, | **[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT** |
| vs. | |
| Shred-It USA Inc., a Delaware Corporation, First Advantage LNS Screening Solutions, Inc., and Does 1 through 10, | |
| Defendants. | |

Based on the parties' Joint Motion for Preliminary Approval of the Proposed Settlement and good cause shown therein, IT IS HEREBY ORDERED:

1.   <u>Preliminary Approval of Proposed Settlement</u>. The Agreement, including all exhibits thereto, is preliminarily approved as fair, reasonable and adequate and within the range of reasonableness for preliminary settlement approval. The Court finds that: (a) the Agreement resulted from extensive arm's length negotiations; and (b) the Agreement is sufficient to warrant notice of the Settlement to persons in the Settlement Class and a full hearing on the approval of the Settlement;

2. <u>Class Certification for Settlement Purposes Only</u>. Pursuant to Federal Rule of Civil Procedure 23(c), the Court conditionally certifies, for settlement purposes only, the following Settlement Class:

> All individuals as to whom, during the period from June 16, 2009 through June 16, 2014, Shred-it procured or caused to be procured a consumer report for employment purposes who signed an authorization form, in electronic or written form, allowing for consumer reports to be obtained which included a liability release or other language of any kind other than the authorization and disclosure permitted under the Fair Credit Reporting Act, 15 U.S.C. 1681b(b)(2), but not any individuals who timely opt-out of the settlement.

3. In connection with this conditional certification, the Court makes the following preliminary findings for settlement purposes only:

   a. The Settlement Class appears to be so numerous that joinder of all members is impracticable;

   b. There appear to be questions of law or fact common to the Settlement Class for purposes of determining whether this Settlement should be approved;

   c. Plaintiff's claims appear to be typical of the claims being resolved through the proposed settlement;

   d. Plaintiff appears to be capable of fairly and adequately protecting the interests of the Settlement Class Members in connection with the proposed settlement;

   e. Common questions of law and fact appear to predominate over questions affecting only individual persons in the Settlement Class. Accordingly, the Settlement Class appears to be sufficiently cohesive to warrant settlement by representation; and

   f. Certification of the Settlement Class appears to be superior to other available methods for the fair and efficient resolution of the claims of the Settlement Class.

4. <u>Class Counsel</u>. The Dion-Kindem Law Firm and The Blanchard Law Group, APC are hereby appointed as Class Counsel.

5. <u>Class Representative</u>. Plaintiff Michael Kirchner is hereby appointed Class Representative;

6. <u>Class Notice</u>. The parties' proposed Class Notice is approved for distribution in accordance with the schedule included in the Settlement Agreement.

**ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT**

1    7.     <u>Opt-Outs and Objections</u>. Class Members shall have the right to either opt-out or object to this

2         settlement pursuant to the procedures and scheduled included in the Settlement Agreement.

3    8.     <u>Final Approval Hearing</u>. A Final Approval Hearing is set for___, 2015 at_____, in Courtroom

4         5.

5         Dated: _____     _____

6

7                          Hon. William B. Shubb, United States District Judge

**ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT**

Exhibit B

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

If You Applied or Worked at a Shred-it Location, You Could Get a Payment from a Class Action Settlement.

A federal court authorized this notice. This is not a solicitation from a lawyer.

- This Notice relates to a proposed settlement in a class action lawsuit which alleges that Shred-it USA Inc. ("Shred-it") violated the Fair Credit Reporting Act ("FCRA") by procuring or causing to be procured background reports without properly making legally required disclosures in advance. Shred-it denies that it violated the law in any way, but the parties have agreed to resolve the lawsuit by a proposed settlement.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| Your Legal Rights and Options in this Lawsuit | |
|---|---|
| **Do Nothing** | If you do nothing and the Court approves this settlement, you will receive a settlement payment. You will not be able to sue Shred-it for the same issues as in this lawsuit again. |
| **Ask to be Excluded by Date.** | If you do not want to be included in the case and the settlement, you must exclude yourself. This is called "opting out." This is the only option that allows you to sue Shred-it for these same issues again. |
| **Object by Date.** | You may write to the Court about why you don't like the settlement. You cannot object if you opt out. |
| **Go to a Hearing on Date.** | You may ask to speak in Court about the fairness of the settlement. |

**Description of the Lawsuit:** This case is about whether Shred-it violated the Fair Credit Reporting Act by procuring or causing to be procured background checks on employees and job applicants without providing a "stand alone" disclosure informing them that a background check would be procured.

Shred-it disputes Plaintiff's allegations and denies all liability to Plaintiff and the Settlement Class. No court has found Shred-it to have violated the law in any way. No court has found that Plaintiff could recover any certain amount in this litigation.

Although the Court has authorized Notice to be given of the proposed settlement, this Notice does not express the opinion of the Court on the merits of the claims or defenses asserted by either side in the lawsuit. The Settlement is not yet final.

1

**Who is Included in the Settlement:** You are part of the settlement if at any time from June 16, 2009 to June 16, 2014, Shred-it procured or caused to be procured a consumer report for employment purposes concerning you and you signed an authorization form, in electronic or written form, allowing for consumer reports to be obtained which included a liability release or other language of any kind other than the authorization and disclosure permitted under the Fair Credit Reporting Act, 15 U.S.C. 1681b(b)(2).

Shred-it's records indicate you are a member of the Settlement Class. If you are uncertain as to whether you are a member of the Settlement Class, you may contact Class Counsel to find out. In all cases, the question of class membership will be determined based on Shred-it's records.

**Settlement Benefits:** If you are a member of the Settlement Class, you are eligible to receive a benefit under the settlement. If you remain a member of the Settlement Class and do not exclude yourself, you will receive a check for your share of the settlement. Shred-it has agreed to pay approximately $170,000 into a settlement fund, which, after deductions for Attorney costs, Class Representative Fee, and Administration Costs, will be divided pro rata among all Settlement Class members who do not opt out. Shred-it has also agreed separately to pay Attorney's Fees of $80,000 to Class Counsel. If requested expenses and awards to Plaintiff are granted, your share of the fund will be approximately $38.76.

To receive your settlement payment, you do not have to do anything. Your interest as a member of the Settlement Class will be represented by the Plaintiff and Counsel for the Class. You will be bound by any judgment arising from the settlement.

Upon the Court's approval of the settlement, all members of the Settlement Class who do not exclude themselves (as well as their spouses, heirs, and other who may possess rights on their behalf) will release Shred-it (and its affiliates, subsidiaries, employees, and others who may be subject to claims with respect to Shred-it as specified in the Settlement Agreement) from any and all claims arising out of or relating directly or indirectly in any manner whatsoever to the facts alleged or which could have been alleged or asserted in the Complaint, including but not limited to any and all claims under the 15 U.S.C. § 1681b(b)(2)(A) of the Fair Credit Reporting Act and any parallel state or common law claims.

This release may affect your rights, and may carry obligations, in the future. To view the full terms of the release, review Paragraph 28 of the Settlement Agreement, which is available through Class Counsel.

**Excluding Yourself:** If you choose to be excluded from the settlement, you will not be bound by any judgment or other final disposition of the lawsuit. You will retain any claims against Shred-it you may have.

To ask to be excluded, you must send an "Exclusion Request" in the form of a letter sent by U.S. mail, stating that you want to be excluded from *Kirchner v. Shred-it USA Inc, et al.* Be sure to include your name and address and sign the letter. You must mail your Exclusion Request so that it is postmarked by DATE to:

Simpluris, Inc.
3176 Pullman Street, Suite 123
Costa Mesa, CA 92626

If the request is not postmarked on or before DATE, your exclusion will be invalid, and you will be bound by the terms of the settlement approved by the Court, including without limitation, the judgment ultimately rendered in the case, and you will be barred from bringing any claims which arise out of or relate in any way to the claims in the case as specified in the release referenced in above.

Unless you exclude yourself, you give up any right to sue Shred-it for the claims that this settlement resolves. If you have a pending lawsuit against Shred-it, speak to your lawyer in that case immediately.

**Objecting to the Settlement:** You can object to any aspect of the proposed settlement by filing and serving a written objection. Your written objection must include: (1) a statement of the objection(s) being asserted; (2) a detailed description of the facts and legal authorities underlying each objection; (3) a notice of your intent to appear at the final Fairness Hearing at TIME on DATE, if you intend to appear; (4) a list of any witnesses who may be called to testify at the Fairness Hearing, whether in person, by deposition, or affidavit; and (5) a list of any exhibits, and copies of the same, which you may offer at the Fairness Hearing.

You must file any objection with the Clerk of Court at the address below by DATE:

United States District Court for the Eastern District of California
Robert T. Matsui United States Courthouse
501 I Street, Sacramento, CA 95814
Case: *Kirchner v. Shred-it USA Inc., et al.*, No. 2:14-cv-01437

You must also send your objection by first class mail, postmarked on or before DATE, to Class Counsel and Shred-it's Counsel. These documents should be mailed to Class Counsel at:

The Dion-Kindem Law Firm
Attn: Peter R. Dion-Kindem
21550 Oxnard Street, Suite 900
Woodland Hills, California 91367

and

The Blanchard Law Group, APC
Attn: Lonnie C. Blanchard, III
3311 East Pico Boulevard
Los Angeles, California 90023

and to Shred-it's Counsel at:

Westerman Ball Ederer Miller Zucker & Sharfstein, LLP
Attn: Greg S. Zucker, Esq.
1201 RXR Plaza
Uniondale, New York 11556

Any member of the Settlement Class who does not file and serve an objection in the time and manner described above will not be permitted to raise that objection later.

**Final Fairness Hearing:** There will be a final Fairness Hearing to consider approval of the proposed settlement at ==TIME== on ==DATE== at the United States District Court for the Eastern District of California, Courtroom 5, 501 I Street, Sacramento, CA 95814. The hearing may be postponed to a later date without further notice. The purpose of the hearing is to determine the fairness, reasonableness, and adequacy of the terms of the settlement, whether the Settlement Class is adequately represented by the Plaintiff and Class Counsel, and whether an order and final judgment should be entered approving the proposed settlement. The Court also will consider Class Counsel's application for an award of attorneys' fees and expenses, administration expenses, and Plaintiff Kirchner's compensation.

You will be represented by Class Counsel at the Fairness Hearing, unless you choose to enter an appearance in person or through your own counsel. The appearance of your own attorney is not necessary to participate in the Fairness Hearing.

If you send any objection, you do not have to come to Court to talk about it. As long as you filed and mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, if you wish. If you wish to speak at the Fairness Hearing yourself, you must send with your objection, a notice of intention to appear at the hearing as described above. You may not be allowed speak at the hearing if you exclude yourself.

**Lawyers Representing You:** The Court decided that the law firms of The Dion-Kindem Law Firm and The Blanchard Law Group, APC will represent you and the Settlement Class as Class Counsel.

Class Counsel represent the interests of the Settlement Class. You may hire your own attorney to advise you, but if you hire your own attorney, you will be responsible for paying that attorney's fees.

Shred-it has agreed to pay Class Counsel $80,000 in attorney's fees. Class Counsel intend to apply to the Court for approval of such attorneys' fees as well as documented, customary, out-of-pocket expenses incurred during the case in an amount not to exceed $5,000. Class Counsel also will seek compensation for Plaintiff Kirchner in an amount not to exceed $5,000 and administration expenses payable to the third party settlement administration company, Simpluris, Inc., in an amount not to exceed $31,000. The attorney costs, payment to Kirchner, and administration expenses will be paid from the settlement fund, not by you.

**More Information:** This Notice is only a summary. You may contact Class Counsel at 818-883-4900 or 213-599-8255. Do not contact the Court for information.

Exhibit C

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Kirchner, an individual, on behalf of himself and all others similarly situated, | **Case No. 2:14-CV-01437-WBS-EFB CLASS ACTION** |
| Plaintiff, | **[PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT** |
| vs. | |
| Shred-It USA Inc., a Delaware Corporation, First Advantage LNS Screening Solutions, Inc., and Does 1 through 10, | |
| Defendants. | |

Based on the parties' Joint Motion for Final Approval of the Proposed Settlement, the Final Fairness Hearing, and good cause shown, and the Court expressly finding that there is no just reason for delay, IT IS HEREBY ORDERED:

1. The Settlement Agreement, dated February 11, 2015 , including its exhibits (the "Settlement Agreement") and the definition of words and terms contained therein are incorporated by reference in this Order. The terms of this Court's Preliminary Approval Order are also incorporated by reference in this Order.

2. This Court has jurisdiction over the subject matter of the Action and over the Parties, including all members of the following Settlement Class certified for settlement purposes in this

Court's Preliminary Approval Order:

> All individuals as to whom, during the period from June 16, 2009 through June 16, 2014, Shred-it procured or caused to be procured a consumer report for employment purposes who signed an authorization form, in electronic or written form, allowing for consumer reports to be obtained which included a liability release or other language of any kind other than the authorization and disclosure permitted under the Fair Credit Reporting Act, 15 U.S.C. 1681b(b)(2), but not any individuals who timely opt-out of the settlement.

3. The Court hereby finds that the Settlement Agreement is the product of arm's length settlement negotiations among Plaintiff, Class Counsel and Shred-it.

4. The Court hereby finds and concludes that Class Notice was disseminated to members of the Settlement Class in accordance with the terms set forth in Paragraphs 33 through 35 of the Settlement Agreement in compliance with this Court's Preliminary Approval Order.

5. The Court further finds and concludes that the Class Notice and Settlement Award distribution procedures set forth in Paragraphs 21 through 26 and 33 through 35 of the Settlement Agreement fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, was the best notice practicable under the circumstances, provided individual notice to all members of the Settlement Class who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Settlement and this Order.

6. This Court hereby finds and concludes that the notice provided by Shred-it to the appropriate state and federal officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, fully satisfied the requirements of that statute.

7. The Court hereby finally approves the Settlement Agreement and the Settlement contemplated thereby, and finds that the terms and conditions constitute, in all respects, a "fair, reasonable and adequate" settlement as to all Settlement Class Members in accordance with Rule 23(e) of the Federal Rules of Civil Procedure, and directs its consummation pursuant to its terms and conditions.

8. The Court reserves jurisdiction over all matters arising out of the Settlement Agreement.

9. The Court approves Class Counsel's application for $80,000 attorney's fees.

10. The Court approves Class Counsel's application for costs in the amount of $_____.

11. The Court approves the service award to Michael Kirchner in the amount of $5,000.

12. The Court approves the payment of Settlement Administrator Costs to Simpluris, Inc. in the amount of $31,000.

13. The releases provided for in the Settlement Agreement shall and are be effective as of the Effective Date of the Settlement Agreement.

14. Finding that there is no just reason for delay, the Court orders that this Final Approval Order and Judgment shall constitute a final judgment pursuant to Rule 54 of the Federal Rules of Civil Procedure that is binding on the parties and the Settlement Class. The Clerk of the Court is directed to enter this Order on the docket forthwith.

Dated: _____        _____

                                                          Hon. William B. Shubb  United States District Judge