1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12  MICHAEL KIRCHNER, an individual,    CIV. No. 2:14-1437 WBS EFB
    on behalf of himself and all
13  others similarly situated,

14            Plaintiff,               MEMORANDUM AND ORDER RE:
                                       MOTION FOR PRELIMINARY
15      v.                             SETTLEMENT APPROVAL

16  SHRED-IT USA INC., a Delaware
    Corporation; FIRST ADVANTAGE LNS
17  SCREENING SOLUTIONS, INC., and
    Does 1 through 10,
18
              Defendants.
19

20

21                          ----oo0oo----

22          Plaintiff Michael Kirchner brought this putative class-

23  action lawsuit against defendants Shred-it USA ("Shred-it") and

24  First Advantage Background Services Corp. ("First Advantage"),

25  alleging that defendants failed to comply with federal credit

26  reporting laws while conducting pre-employment background checks.

27  Presently before the court is plaintiff and Shred-it's joint

28  motion for preliminary approval of class action settlement.

                                1

1   (Docket No. 53.)

2   I.   <u>Factual and Procedural Background</u>

3         Plaintiff applied for a job with Shred-it on April 13,

4   2011. (First Am. Compl. ("FAC") ¶ 14 (Docket No. 17).) As part

5   of the application process, plaintiff received and signed a one-

6   page disclosure form. (<u>Id.</u> ¶ 14, Ex. A.) In addition to

7   disclosing the fact that Shred-it might procure a consumer report

8   for employment purposes on plaintiff, the form also included

9   release and discharge language that plaintiff alleges violated

10   the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 <u>et seq.</u>

11   Specifically, plaintiff claims the language failed to comply with

12   15 U.S.C. § 1681b's requirement that an employer disclose that a

13   consumer report may be obtained for employment purposes in a form

14   consisting "solely of the disclosure." (FAC ¶ 17); <u>see</u> 15 U.S.C.

15   § 1681b(b)(2).

16         On October 8, 2014, Shred-it moved to dismiss

17   plaintiff's FAC. (Docket No. 31.) Before the court could rule

18   on that motion, however, plaintiff and Shred-it notified the

19   court that they had agreed to settlement terms and withdrew

20   Shred-it's motion to dismiss without prejudice. (Docket No. 43.)

21   The parties now seek preliminary approval of their stipulated

22   class action settlement.

23   II.   <u>Discussion</u>

24         Federal Rule of Civil Procedure 23(e) provides that

25   "[t]he claims, issues, or defenses of a certified class may be

26   settled . . . only with the court's approval." Fed. R. Civ. P.

27   23(e). "Approval under 23(e) involves a two-step process in

28   which the Court first determines whether a proposed class action

1  settlement deserves preliminary approval and then, after notice

2  is given to class members, whether final approval is warranted."

3  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523,

4  525 (C.D. Cal. 2004) (citing Manual for Complex Litig., Third, §

5  30.41 (1995)).

6       This Order is the first step in that process and only

7  analyzes whether the proposed class action settlement deserves

8  preliminary approval.  See Murillo v. Pac. Gas & Elec. Co., 266

9  F.R.D. 468, 473 (E.D. Cal. 2010).  Preliminary approval

10  authorizes the parties to give notice to putative class members

11  of the settlement agreement and lays the groundwork for a future

12  fairness hearing, at which the court will hear objections to (1)

13  the treatment of this litigation as a class action and/or (2) the

14  terms of the settlement.  See id.; Diaz v. Trust Territory of

15  Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989) (stating that a

16  district court's obligation when considering dismissal or

17  compromise of a class action includes holding a hearing to

18  "inquire into the terms and circumstances of any dismissal or

19  compromise to ensure that it is not collusive or prejudicial").

20  The court will reach a final determination as to whether the

21  parties should be allowed to settle the class action on their

22  proposed terms after that hearing.

23       The Ninth Circuit has declared a strong judicial policy

24  favoring settlement of class actions.  Class Plaintiffs v. City

25  of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nevertheless,

26  where, as here, "the parties reach a settlement agreement prior

27  to class certification, courts must peruse the proposed

28  compromise to ratify both [1] the propriety of the certification

3

1  and [2] the fairness of the settlement." Staton v. Boeing Co.,

2  327 F.3d 938, 952 (9th Cir. 2003).

3       The first part of this inquiry requires the court to

4  "pay 'undiluted, even heightened, attention' to class

5  certification requirements" because, unlike in a fully litigated

6  class action suit, the court "will lack the opportunity . . . to

7  adjust the class, informed by the proceedings as they unfold."

8  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997); see

9  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

10 The parties cannot "agree to certify a class that clearly leaves

11 any one requirement unfulfilled," and consequently the court

12 cannot blindly rely on the fact that the parties have stipulated

13 that a class exists for purposes of settlement. See Windsor, 521

14 U.S. at 621-22 (stating that courts cannot fail to apply the

15 requirements of Rule 23(a) and (b)).

16      The second part of this inquiry obliges the court to

17 "carefully consider 'whether a proposed settlement is

18 fundamentally fair, adequate, and reasonable,' recognizing that

19 '[i]t is the settlement taken as a whole, rather than the

20 individual component parts, that must be examined for overall

21 fairness . . . .'" Staton, 327 F.3d at 952 (quoting Hanlon, 150

22 F.3d at 1026); see also Fed. R. Civ. P. 23(e) (outlining class

23 action settlement procedures).

24    A. Class Certification

25      A class action will only be certified if it meets the

26 four prerequisites identified in Rule 23(a) and additionally fits

27 within one of the three subdivisions of Rule 23(b). See

28 Ontiveros v. Zamora, Civ. No. 2:08-567 WBS DAD, 2014 WL 3057506,

at *4 (E.D. Cal. July 7, 2014); Fed. R. Civ. P. 23(a)-(b).

Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, see Califano v. Yamasaki, 442 U.S. 682, 701 (1979); Montgomery v. Rumsfeld, 572 F.2d 250, 255 (9th Cir. 1978), the court must conduct a rigorous inquiry before certifying a class, see Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982); E. Tex. Motor Freight Sys. v. Rodriguez, 431 U.S. 395, 403-05 (1977).

### 1. Rule 23(a) Requirements

Rule 23(a) restricts class actions to cases where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### a. Numerosity

Under the first requirement, "[a] proposed class of at least forty members presumptively satisfies the numerosity requirement." Avilez v. Pinkerton Gov't Servs., 286 F.R.D. 450, 456 (C.D. Cal. 2012); see also, e.g., Collins v. Cargill Meat Solutions Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011) (Wanger, J.) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members."). The proposed class, which the parties estimate will contain approximately 3,328 members, (see Pl.'s Mem. at 6 (Docket No. 53-1)), easily satisfies this requirement.

### b. Commonality

5

1    Commonality requires that the class members' claims
2  "depend upon a common contention" that is "capable of classwide
3  resolution--which means that determination of its truth or
4  falsity will resolve an issue that is central to the validity of
5  each one of the claims in one stroke." Wal-Mart Stores, Inc. v.
6  Dukes, 131 S. Ct. 2541, 2550 (2011).  "[A]ll questions of fact
7  and law need not be common to satisfy the rule," and the
8  "existence of shared legal issues with divergent factual
9  predicates is sufficient, as is a common core of salient facts
10  coupled with disparate legal remedies within the class." Hanlon,
11  150 F.3d at 1019.

12    Plaintiff states that, had the case proceeded to trial,
13  all putative class members would have predicated their claims on
14  Shred-it's alleged failure to comply with the FCRA by using a
15  disclosure form with additional language, such as a liability
16  release or indemnity provision.  (Pl.'s Mem. at 14.)  Although
17  the exact factual predicates for each claim may vary, plaintiff
18  argues that Shred-it's policy of including additional language in
19  its disclosure forms creates common questions of fact and law
20  regarding the adequacy of those forms under 15 U.S.C.
21  § 1681b(b)(2).  (See id.)

22    The court agrees that the potential claims of the class
23  members would arise from a set of circumstances similar to that
24  of plaintiff's, namely, the receipt or signing of a form provided
25  by Shred-it that contained language beyond the disclosure and
26  authorization language permitted by the FCRA.  Whether these
27  forms complied with § 1681b(b)(2) is a question common to all
28  class members.  Class members would also face the common question

1  of whether Shred-it "willfully" failed to comply with

2  § 1681b(b)(2)'s requirement.  See 15 U.S.C. § 1681n(a); Safeco

3  Ins. Co. of Am. v. Burr, 551 U.S. 47, 56-60 (2007).  These

4  questions of law are therefore applicable in the same manner to

5  each member of the class, making class relief based on

6  commonality appropriate.  See Califano v. Yamasaki, 442 U.S. 682,

7  701 (1979) (holding that commonality issues of the class "turn on

8  questions of law applicable in the same manner to each member of

9  the class"); Acosta v. Trans Union, LLC, 243 F.R.D. 377, 384

10 (C.D. Cal. 2007) (finding commonality when "[t]he same alleged

11 conduct of Defendants forms the basis for each of the plaintiffs'

12 claims").

13                      c. Typicality

14      Typicality requires that named plaintiffs have claims

15 "reasonably coextensive with those of absent class members," but

16 their claims do not have to be "substantially identical."

17 Hanlon, 150 F.3d at 1020.  The test for typicality "'is whether

18 other members have the same or similar injury, whether the action

19 is based on conduct which is not unique to the named plaintiffs,

20 and whether other class members have been injured by the same

21 course of conduct.'"  Hanon v. Dataproducts Corp., 976 F.2d 497,

22 508 (9th Cir. 1992) (citation omitted).

23      Plaintiff argues that all putative class members were

24 subject to the same course of conduct by Shred-it: providing them

25 with disclosure and authorization forms that included extra

26 language.  (Pl.'s Mem. at 14-15.)  The putative class members

27 were thus deprived of proper disclosure in the form required by

28 § 1681b(b)(2) in the same manner as plaintiff.

1     Because the parties proposed a settlement prior to
2  certification, the court has little in the way of a record to
3  independently verify these assertions.  The court must instead
4  rely on the declaration of plaintiff's counsel.  (See Pl.'s Mem.
5  at 21-24 (providing the declaration of Peter R. Dion-Kindem).)
6  The parties' common interest in settling their dispute also
7  deprives the court of adversarial briefs on this subject, making
8  it difficult to assess whether plaintiff "possess[es] the same
9  interest and suffer[s] the same injury" as the putative class
10 members--an important part of the typicality inquiry.  Rodriguez,
11 431 U.S. at 403 (quoting Schlesinger v. Reservists Comm. to Stop
12 the War, 418 U.S. 208, 216 (1974)).

13     Nevertheless, for the purpose of preliminary
14 certification, the court accepts that the injuries of the named
15 plaintiff are likely to be "reasonably coextensive" with those of
16 the putative class.  The routine nature of the practice that
17 allegedly violates the FCRA and the statutory damages available
18 to the plaintiff and putative class members under 15 U.S.C.
19 § 1681n(a) make it unlikely that any class member's particular
20 background or situation diverges significantly from plaintiff's.[1]

21

22     [1]   15 U.S.C. § 1681n(a) provides, in relevant part:
23     (a) In general
24     Any person who willfully fails to comply with any
       requirement imposed under this subchapter with
25     respect to any consumer is liable to that consumer
       in an amount equal to the sum of--
26     (1)(A) any actual damages sustained by the
       consumer as a result of the failure or damages of
27     not less than $100 and not more than $1,000 . . .
28 15 U.S.C. § 1681n(a)(1)(A).

8

1  See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner

2  & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990) (noting that

3  class certification should not be granted if "there is a danger

4  that absent class members will suffer if their representative is

5  preoccupied with defenses unique to it").  This settlement

6  agreement does not appear to be the result of exceptional

7  circumstances or atypical claims proffered by plaintiff.

8                    d. Adequacy of Representation

9          Finally, to resolve the question of adequacy, the court

10  must make two inquiries: "(1) do the named plaintiffs and their

11  counsel have any conflicts of interest with other class members

12  and (2) will the named plaintiffs and their counsel prosecute the

13  action vigorously on behalf of the class?"  Hanlon, 150 F.3d at

14  1020.  These questions involve consideration of a number of

15  factors, including "the qualifications of counsel for the

16  representatives, an absence of antagonism, a sharing of interests

17  between representatives and absentees, and the unlikelihood that

18  the suit is collusive."  Brown v. Ticor Title Ins., 982 F.2d 386,

19  390 (9th Cir. 1992).

20          Under the first inquiry, plaintiff's interests appear

21  to be aligned with those of the class.  The class is defined to

22  include individuals who suffered a similar injury as plaintiff:

23  those on which Shred-it procured or caused to be procured a

24  consumer report after that individual signed a form that included

25  language other than the authorization and disclosure permitted by

26  § 1681b(b)(2).  This definition is narrowly tailored to reflect

27  plaintiff's alleged injury and should adequately align his

28  interests with those he seeks to represent.  See Windsor, 521

1   U.S. at 625–26 ("[A] class representative must be part of the

2   class and possess the same interest and suffer the same injury as

3   the class members."); Murillo, 266 F.R.D. at 476 (finding that an

4   appropriate class definition ensured that "the potential for

5   conflicting interests will remain low while the likelihood of

6   shared interests remains high").

7         The settlement also provides for an incentive award of

8   $5,000 to plaintiff.[2]  (Settlement Agreement § 11.)  Although the

9   Ninth Circuit has specifically approved the award of "reasonable

10  incentive payments" to named plaintiffs, the use of an incentive

11  award nonetheless raises the possibility that plaintiff's

12  interest in receiving that award will cause his interests to

13  diverge from the class's interest in a fair settlement.  Staton,

14  327 F.3d at 977–78 (declining to approve a settlement agreement

15  where size of incentive award suggested that named plaintiffs

16  were "more concerned with maximizing [their own] incentives than

17  with judging the adequacy of the settlement as it applies to

18  class members at large").  As a result, district courts

19  "scrutinize carefully the awards so that they do not undermine

20  the adequacy of the class representatives."  Radcliffe v.

21  Experian Info. Sys., Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).

22        The incentive award in this case does not appear to

23  create a clear conflict of interest.  "In general, courts have

24  found that $5,000 incentive payments are reasonable."  Hopson v.

25  Hanesbrands Inc., Civ. No. 08-0844 EDL, 2009 WL 928133, at *10

26  ─────────────
           [2]      "Incentive awards are payments to class representatives
27  for their service to the class in bringing the lawsuit."
    Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1163
28  (9th Cir. 2013).

1  (N.D. Cal. Apr. 3, 2009) (citing <u>In re Mego Fin. Corp. Sec.</u>

2  <u>Litig.</u>, 213 F.3d 454, 463 (9th Cir. 2000); <u>In re SmithKline</u>

3  <u>Beckman Corp.</u>, 751 F. Supp. 525, 535 (E.D. Pa. 1990); <u>Alberto v.</u>

4  <u>GMRI, Inc.</u>, 252 F.R.D. 652, 669 (E.D. Cal. 2008)).  The proposed

5  amount of plaintiff's incentive award is lower than awards found

6  to be fair and reasonable in other cases.  <u>See, e.g.</u>, <u>Van Vranken</u>

7  <u>v. Atl. Richfield Co.</u>, 901 F. Supp. 294, 300 (N.D. Cal. 1995)

8  (holding that incentive award of $50,000 to each named plaintiff

9  was fair and reasonable); <u>Glass v. UBS Fin. Servs., Inc.</u>, Civ.

10  No. 04-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007)

11  (approving incentive award of $25,000 for each of four named

12  plaintiffs).

13          Plaintiff states that each member of the proposed class

14  will recover approximately $45.55 under the terms of the

15  settlement agreement.  (Pl.'s Mem. at 6.)  An incentive award of

16  $5,000 to plaintiff is thus somewhat disproportionate to the

17  recovery of other class members.  <u>See, e.g.</u>, <u>Monterrubio v. Best</u>

18  <u>Buy Stores, L.P.</u>, 291 F.R.D. 443, 463 (E.D. Cal. 2013) (England,

19  J.) (finding $7,500 incentive award unreasonable when average

20  class member would receive $65.79 and reducing the award to

21  $2,500).  This disproportionality does not automatically render

22  plaintiff an inadequate class representative, but it gives the

23  court pause, particularly given the lack of evidence before the

24  court demonstrating the quality of plaintiff's representative

25  service.[3]  The incentive award is not dispositive of plaintiff's

26  ───────────────

27  [3]   In his declaration, plaintiff's counsel states,
   "Plaintiff has been instrumental in prosecuting this action and
   has personally risked liability for a large cost bill if the

28  matter was not successful."  (Pl.'s Mem. at 21; Dion-Kindem Decl.

1   adequacy, and its justification can be further explored at the

2   final Fairness Hearing.  See Alberto, 252 F.R.D. at 662-63, 669

3   (certifying plaintiff as an adequate class representative

4   "pending the introduction at the final fairness hearing of

5   evidence in support of counsel's findings").  Accordingly, the

6   court preliminarily finds that the proposed incentive award does

7   not render plaintiff an inadequate representative of the class.

8   On or before the date of the Fairness Hearing, however, the

9   parties shall present or be prepared to present evidence of the

10  named plaintiff's efforts taken as class representative, such has

11  his hours of service or an itemized list of his activities, to

12  justify the discrepancy between his award and those of the

13  unnamed plaintiffs.[4]

14         The second prong of the adequacy inquiry examines the

15  vigor with which the named plaintiff and her counsel have pursued

16  the common claims.  "Although there are no fixed standards by

17  which 'vigor' can be assayed, considerations include competency

18  of counsel and, in the context of a settlement-only class, an

19  assessment of the rationale for not pursuing further litigation."

20  Hanlon, 150 F.3d at 1021.

21         Plaintiff's counsel states that he has expertise in

22  prosecuting employment claims throughout his career and has

23  ────────────────────────────────────────────────────────────────

24  ¶ 6.)  The declaration does not justify this assertion, however,
    rendering it of limited persuasive value.

25         [4]  Relevant factors for the evaluation of the amount of
26  incentive payments made to the named plaintiff include "the
    actions the plaintiff has taken to protect the interests of the
27  class, the degree to which the class has benefitted from those
    actions, . . . and reasonabl[e] fear[s of] workplace
28  retaliation."  Staton, 327 F.3d at 977 (citation omitted).

                                12

1  served as the counsel of record for at least twenty-three class

2  actions in federal and state court.  (Pl.'s Mem. at 21; Dion-

3  Kindem Decl. ¶¶ 2, 4.)  The court therefore has some assurance

4  that plaintiff's counsel has the experience necessary to maximize

5  the return on his labor and vindicate the injuries of the class.

6        Plaintiff's counsel also indicates that the decision to

7  settle plaintiff's claim was made after taking into account the

8  uncertainty and risk of further litigation, the potential outcome

9  of pursuing the case, and the difficulties and delays inherent in

10  litigation.  (Pl.'s Mem. at 21; Dion-Kindem Decl. ¶ 7.)  In

11  particular, plaintiff's counsel points to this court's recent

12  rejection of a nearly identical claim brought in a case involving

13  different parties.  (See Pl.'s Mem. at 18); Syed v. M-I LLC, Civ.

14  No. 1:14-742 WBS, 2014 WL 5426862, at *3-4 (E.D. Cal. Oct. 23,

15  2014).  The court agrees that these considerations weigh in favor

16  of settlement.  Therefore, the court holds that the named

17  plaintiff is an adequate class representative.

18           2. Rule 23(b)

19        An action that meets all the prerequisites of Rule

20  23(a) may only be certified as a class action if it also

21  satisfies the requirements of one of the three subdivisions of

22  Rule 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th

23  Cir. 2013).  Plaintiff seeks certification under Rule 23(b)(3),

24  which provides that a class action may be maintained only if (1)

25  "the court finds that questions of law or fact common to class

26  members predominate over questions affecting only individual

27  members" and (2) "that a class action is superior to other

28  available methods for fairly and efficiently adjudicating the

13

1  controversy."  Fed. R. Civ. P. 23(b)(3).

2                    a. Predominance

3            "Because Rule 23(a)(3) already considers commonality,

4  the focus of the Rule 23(b)(3) predominance inquiry is on the

5  balance between individual and common issues."  Murillo, 266

6  F.R.D. at 476 (citing Hanlon, 150 F.3d at 1022); see also

7  Windsor, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry

8  tests whether proposed classes are sufficiently cohesive to

9  warrant adjudication by representation").  Here, plaintiff's

10  claim turns on the legality of a common method used by Shred-it

11  for disclosing that it will seek consumer reports for employment

12  purposes and whether this method was a willful violation of the

13  FCRA.  All of the disclosure and authorization forms that

14  predicate class members' claims were allegedly deficient because

15  they included release and/or indemnity provisions.  (See Pl.'s

16  Mem. at 16-17.)  The class claim therefore demonstrates "[a]

17  common nucleus of facts and potential legal remedies" for

18  putative class members that can be resolved in a single

19  adjudication.  See Hanlon, 150 F.3d at 1022.

20            To the extent that any variations may exist, there is

21  no indication that those issues would be anything more than

22  "local variants of a generally homogenous collection of causes"

23  that derive from plaintiff's allegations.  See id.  These

24  idiosyncratic differences are therefore "not sufficiently

25  substantive to predominate over the shared claims."  Id. at 1022-

26  23.  Accordingly, the court finds that common questions of law

27  and fact predominate over those affecting only individuals.

28                    b. Superiority

1    Rule 23(b)(3) also requires a showing that "a class

2    action is superior to other available methods for fairly and

3    efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)

4    (3).  It sets forth four non-exhaustive factors to consider in

5    making this determination:

6        (A) the class members' interests in individually
         controlling the prosecution or defense of separate
7        actions; (B) the extent and nature of any litigation
         concerning the controversy already begun by or against
8        class members; (C) the desirability or undesirability
         of concentrating the litigation of the claims in the
9        particular forum; and (D) the likely difficulties in
         managing a class action.
10

11   Id.  The parties' pre-certification settlement renders factors

12   (C) and (D) inapplicable here.  See Murillo, 266 F.R.D. at 477

13   (citing Windsor, 521 U.S. at 620).

14        The court is unaware of any concurrent litigation

15   regarding the issues presented here against Shred-it.  In the

16   absence of competing lawsuits, it is also unlikely that other

17   individuals have an interest in controlling the prosecution of

18   this action or other actions, although objectors at the Fairness

19   Hearing may reveal otherwise.  See Alberto, 252 F.R.D. at 664.

20   As it stands now, the class action device appears to be the

21   superior method for adjudicating this controversy.

22             3. Rule 23(c)(2) Notice Requirements

23        If the court certifies a class under Rule 23(b)(3), it

24   "must direct to class members the best notice that is practicable

25   under the circumstances, including individual notice to all

26   members who can be identified through reasonable effort." Fed.

27   R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

28

1   content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.

2   651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,

3   417 U.S. 156, 172–77 (1974)).  Although that notice must be

4   "reasonably certain to inform the absent members of the plaintiff

5   class," actual notice is not required.  Silber v. Mabon, 18 F.3d

6   1449, 1454 (9th Cir. 1994) (citation omitted).

7        Here, the Settlement Agreement provides that Simpluris,

8   Inc., the settlement administrator, will mail notice to each

9   putative class member via first-class U.S. mail.  (Settlement

10  Agreement ¶ 12.)  The court is satisfied that this system of

11  providing notice is reasonably calculated to provide notice to

12  class members and is the best form of notice available under the

13  circumstances.  See Monterrubio, 291 F.R.D. at 443 (approving

14  settlement in which Simpluris provided notice by mail to class

15  members in a similar manner).

16       The parties have also supplied the "Notice of

17  Settlement and Release of Claims Form" that they propose to send

18  to class members after filling in the dates and deadlines set by

19  the court.  (See Settlement Agreement Ex. B.)  The form explains

20  the proceedings, the definition of the class, the terms of the

21  settlement, and the procedure for objecting or opting out of the

22  settlement.  (Id.)  The content of the form therefore also

23  satisfies Rule 23(c)(2)(B).  See Fed R. Civ. P. 23(c)(2)(B); see

24  also Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575

25  (9th Cir. 2004) ("Notice is satisfactory if it 'generally

26  describes the terms of the settlement in sufficient detail to

27  alert those with adverse viewpoints to investigate and to come

28  forward and be heard.'" (quoting Mendoza v. Tucson Sch. Dist. No.

16

1 | 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).

2 |     B. Preliminary Settlement Approval

3 |         After determining that the proposed class satisfies the

4 | requirements of Rule 23, the court must determine whether the

5 | terms of the parties' settlement appear fair, adequate, and

6 | reasonable.  See Fed. R. Civ. P. 23(e)(2); Hanlon, 150 F.3d at

7 | 1026.  This process requires the court to "balance a number of

8 | factors," including:

> the strength of the plaintiff's case; the risk,
> expense, complexity, and likely duration of further
> litigation; the risk of maintaining class action
> status throughout the trial; the amount offered in
> settlement; the extent of discovery completed and the
> stage of the proceedings; the experience and views of
> counsel; the presence of a governmental participant;
> and the reaction of the class members to the proposed
> settlement.

Hanlon, 150 F.3d at 1026.  Many of these factors cannot be

considered until the final Fairness Hearing, so the court need

only conduct a preliminary review at this time to resolve any

"glaring deficiencies" in the Settlement Agreement before

authorizing notice to class members.  Ontiveros, 2014 WL 3057506,

at *12 (citing Murillo, 266 F.R.D. at 478).

        1. Terms of the Settlement Agreement

        The key terms of the Settlement Agreement can be

summarized as follows:

(1) **Settlement Class:**  All individuals as to whom, from June

16, 2009, through June 16, 2014, Shred-it procured or

caused to be procured a consumer report for employment

purposes who signed an authorization form, in electronic

or written form, allowing for consumer reports to be

1          obtained which included a liability release or other

2          language of any kind other than the authorization and

3          disclosure permitted under the Fair Credit Reporting Act,

4          15 U.S.C. 1681b(b)(2).   (Settlement Agreement ¶ 17.)

5     (2)  **Notice:**  Not more than seven days after the court has

6          issued an order preliminarily approving the settlement,

7          the Settlement Administrator will send a "Notice of

8          Settlement and Release of Claims form" to all class

9          members via first-class U.S. mail, postage prepaid and

10         return service requested.  The notice shall be mailed to

11         each class member's last known mailing address, as

12         updated by using the U.S. Postal Service's database of

13         verifiable mailing addresses and the National Change-of-

14         Address database.  The notice shall bear the Settlement

15         Administrator's mailing address as the return-mail

16         address.  The envelope in which the notice is sent will

17         include an indication that it is a "Court Approved

18         Settlement Notice Authorized by the U.S. District Court

19         for the Eastern District of California" and may also

20         include a bar code.  If a notice is returned as

21         undeliverable, the Settlement Administrator will use

22         publically available databases as practicable to update

23         the address and cause the notice to be re-mailed.  The

24         Settlement Administrator will also establish and staff a

25         toll-free telephone line that class members can use to

26         contact the Settlement Administrator with questions about

27         the settlement or change their addresses.  (Id. ¶¶ 33-

28         35.)

1      (3)   **Opt-out Procedure:**  To opt out of the settlement, a class

2            member must, within sixty days after the mailing date of

3            the initial settlement notice, submit by first-class U.S.

4            mail a written notice addressed to the Settlement

5            Administrator indicating his or her name and stating that

6            he or she desires to opt out or otherwise does not want

7            to participate in the settlement.  Any class member who

8            does not timely (as measured by the postmark on that

9            individual's written notice) opt out of the settlement by

10           written notice containing the requisite information shall

11           remain members of the settlement class and shall be bound

12           by any orders of the court about the settlement or the

13           settlement class.  (Id. ¶ 36.)

14     (4)   **Objections to Settlement:**  Any class member who wishes to

15           object to the settlement must file a timely written

16           statement of objection with the Clerk of Court, and mail

17           a copy of that objection with the requisite postmark to

18           class counsel and defense counsel no later than sixty

19           days from the date this Order is signed.  The objection

20           must state the case name and number; the basis for and an

21           explanation of the objection; the name, address,

22           telephone number, and email address of the class member

23           making the objection; and a statement of whether the

24           class member intends to appear at the final Fairness

25           Hearing, either with or without counsel.  In addition,

26           any objection must be personally signed by the class

27           member and, if represented by counsel, then by counsel.

28           Any class member who fails to make objections in the

manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objections, whether by appeal or otherwise, to the settlement.  No class member shall be entitled to contest in any way the approval of the terms and conditions of the Settlement Agreement or the court's final approval order except by filing and serving written objections in accordance with the provisions of the Settlement Agreement.  Any settlement member who fails to object in the manner prescribed shall be deemed to have waived and shall be foreclosed forever from raising any objections to the settlement.  (Id. ¶ 37.)

(5) **Settlement Amount:**  Shred-it has agreed to pay a gross settlement amount of $250,000.  That payment consists of up to $80,000 in attorneys' fees, subject to court approval, and a Settlement Fund of $170,000.  The Settlement Fund shall be used to satisfy the claims of all participating class members, class counsel's litigation expenses, named plaintiff's incentive award, and settlement administration costs.  (See id. ¶¶ 20-26.)

(6) **Attorney's Fees, Costs, and Plaintiff's Incentive Award:** Shred-it has agreed to pay class counsel up to $80,000 as reasonable attorneys' fees.  Any attorneys' fees not approved by the court shall not increase the net Settlement Fund, but shall only result in less compensation from Shred-it.  Class counsel will also apply to the court for litigation costs not to exceed $5,000, class administration costs not to exceed $31,000,

20

and an incentive award for plaintiff of $5,000.  These
amounts will be satisfied from the Settlement Fund,
reducing the net amount available for distribution to
class members.  (See id. ¶¶ 4-5, 11, 21, 22.)

(7) **Settlement Distribution**:  After being reduced by the
amount of plaintiff's incentive award, litigation costs,
and administration costs, the remaining Settlement Fund
will be distributed pro rata in the form of a check to
each class member who did not validly and timely opt out
of the settlement.  Class members shall have 180 days
from the date on which checks are mailed to negotiate
their checks.  Any uncashed settlement compensation from
the Settlement Fund after distributing the net Settlement
Fund proceeds and after the 180-day period for
negotiating checks will constitute a cy pres fund which
will be donated to a mutually agreed upon and non-
controversial charity, approved by the court that serves
interests that are aligned with those of the settlement
class.  (Id. ¶ 22, § D-E.)

(8) **Release**:  Class members who participate in the settlement
agree to "fully and forever release, waive, acquit, and
discharge . . . any and all claims that the Settlement
Class has arising out of or relating directly or
indirectly in any manner whatsoever to the facts alleged
in the Action."  This includes but is not limited to "any
and all claims under 15 U.S.C. § 1681b(b)(2)(A) of the
FCRA and any parallel state or common law claims."  (Id.
¶ 28.)  In addition, plaintiff agrees to discharge Shred-

21

it from any and all claims plaintiff has by reason of "any cause, matter or thing whatsoever . . . including both known and unknown and suspected and unsuspected claims and causes of action." Plaintiff's release does not apply, however, to any valid worker's compensation claims or any claims asserted on or before November 25, 2014, against Shred-it. (Id. ¶ 29.)

2. Preliminary Determination of Adequacy

At the preliminary stage, "the court need only 'determine whether the proposed settlement is within the range of possible approval.'" Murillo, 266 F.R.D. at 479 (quoting Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982)). This generally requires consideration of "whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." Id. (quoting W. v. Circle K Stores, Inc., Civ. No. 04-0438 WBS GGH, 2006 WL 1652598, at *11-12 (E.D. Cal. June 13, 2006)). Courts often begin by examining the process that lead to the settlement's terms to ensure that those terms are "the result of vigorous, arms-length bargaining" and then turn to the substantive terms of the agreement. See, e.g., West, 2006 WL 1652598, at *11-12; In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("[P]reliminary approval of a settlement has both a procedural and a substantive component.").

a. Negotiation of the Settlement Agreement

Plaintiff's counsel states that the settlement

22

1   agreement is the result of arms-length negotiations.  (Pl.'s Mem.

2   at 18-19.)  This assertion is supported by the fact that the

3   parties entered into the agreement at the same time that Shred-it

4   had a pending motion to dismiss plaintiff's claims.  (See id. at

5   10.)  Counsel further declares that the decision to settle the

6   case was informed by the time and expense that both sides would

7   incur in the course of further litigation, as well as the

8   substantial uncertainty of recovery posed by this court's recent

9   rejection of a nearly identical claim brought in a case involving

10  different parties.  (Pl.'s Mem. at 18, 21; Dion-Kindem Decl. ¶¶

11  5, 7.); see Syed, 2014 WL 5426862, at *3-4.  In light of these

12  considerations, the court sees no reason to second-guess

13  counsel's determination that settlement is in the best interest

14  of the class.  See Fraley v. Facebook, Inc., 966 F. Supp. 2d 939,

15  942 (N.D. Cal. 2013) (holding that a settlement reached after

16  informed negotiations "is entitled to a degree of deference as

17  the private consensual decision of the parties" (citing Hanlon,

18  150 F.3d at 1027)).

19              b. Amount Recovered and Distribution

20              In determining whether a settlement agreement is

21  substantively fair to the class, the court must balance the value

22  of expected recovery against the value of the settlement offer.

23  See Tableware, 484 F. Supp. 2d at 1080.  This inquiry may involve

24  consideration of the uncertainty class members would face if the

25  case were litigated to trial.  See Ontiveros, 2014 WL 3057506, at

26  *14.

27              Here, 15 U.S.C. § 1681n provides for recovery of "not

28  less than $100 and not more than $1,000" in statutory damages,

1    plus any punitive damages.  See 15 U.S.C. 1681n(a)(1)(A).  The

2    average recovery under the terms of the settlement is expected to

3    be approximately $45.55 per class member.  (See Pl.'s Mem. at 6.)

4    While this amount is lower than the minimum potential statutory

5    damages available in § 1681n, "it is well-settled law that a

6    proposed settlement may be acceptable even though it amounts to

7    only a fraction of the potential recovery that might be available

8    to the class members at trial."  DIRECTV, 221 F.R.D. at 527.

9    Plaintiff's counsel states that this amount is fair and

10   reasonable in light of the court's rejection of an identical

11   claim in Syed.  (Pl.'s Mem. at 6 (citing Syed, 2014 WL 5426862).

12           Turning to the distribution of this amount, Simpluris

13   Inc., the settlement administrator, is an experienced claims

14   administrator who has been appointed by the court in prior cases.

15   See, e.g., Ontiveros, 2014 WL 3057506, at *14; Adoma v. Univ. of

16   Phoenix, Inc., 913 F. Supp. 2d 964, 971–72 (E.D. Cal. 2012)

17   (Karlton, J.).  The settlement's cap on class administration

18   costs of up to $31,000 is slightly higher than the fees awarded

19   to it in other cases.  See, e.g., Adoma, 913 F.Supp.2d at 985

20   (approving a $19,000 fee for Simpluris to manage 1,725-member

21   class); Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482,

22   484 (E.D. Cal. 2010) (approving a $25,000 fee for a settlement

23   administrator that managed 177 class members).  However, this

24   case involves a much larger class--estimated by Shred-it at 3,328

25   members, (see Pl.'s Mem. at 6)--which justifies a higher cost of

26   settlement administration.  Moreover, class counsel's claimed

27   litigation costs of no more than $5,000 are lower than many other

28   cases, helping to minimize the amount deducted from the common

1   fund available for distribution to class members.  See, e.g.,

2   Ontiveros, 2014 WL 3057506, at *14 (preliminarily approving

3   claimed expenses and costs of $50,000); Hartless v. Clorox Co.,

4   273 F.R.D. 630, 646 (S.D. Cal. 2011) (awarding $111,002.22 in

5   costs); Loretz v. Regal Stone, Ltd., 756 F. Supp. 2d 1203, 1218

6   (N.D. Cal. 2010) (awarding a total of over $70,000 in costs to

7   two law firms acting as class counsel).  The court therefore

8   concludes that the amount recovered for class members and the

9   method of distribution "fall[] within the range of possible

10  approval."  See Tableware, 484 F. Supp. 2d at 1079.

11                    c. Attorneys' Fees

12          If a negotiated class action settlement includes an

13  award of attorneys' fees, that fee award must be evaluated in the

14  overall context of the settlement.  Knisley v. Network Assocs.,

15  312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio, 291 F.R.D. at

16  455.  The court "ha[s] an independent obligation to ensure that

17  the award, like the settlement itself, is reasonable, even if the

18  parties have already agreed to an amount."  In re Bluetooth

19  Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

20          "Under the 'common fund' doctrine, 'a litigant or a

21  lawyer who recovers a common fund for the benefit of persons

22  other than himself or his client is entitled to a reasonable

23  attorney's fee from the fund as a whole."  Staton, 327 F.3d at

24  969 (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).

25  The Ninth Circuit has approved two methods of assigning

26  attorneys' fees in common fund cases: the "percentage of the

27  fund" method and the "lodestar" method.  Vizcaino v. Microsoft

28  Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (citing In re Wash.

1  Pub. Power Supply Sys. Litig., 19 F.3d 1291, 1295–96 (9th Cir.

2  1994)).  Under the percentage method, the court may award class

3  counsel a percentage of the common fund recovered for the class.

4  Id.  The percentage method is particularly appropriate in common

5  fund cases, where "the benefit to the class is easily

6  quantified."  Bluetooth, 654 F.3d at 942.  The Ninth Circuit has

7  approved a "benchmark" percentage of twenty-five percent, and

8  courts may adjust this figure upwards or downwards if the record

9  shows "'special circumstances' justifying a departure."  Id.

10 (quoting Six (6) Mexican Workers v. Ariz. Citrus Growers, 904

11 F.2d 1301, 1311 (9th Cir. 1990)).

12       Under the lodestar method, the court determines an

13 appropriate attorney's fee by multiplying the number of hours

14 reasonably expended by class counsel by a reasonable hourly rate.

15 Id. at 941.  The court may then adjust the lodestar upwards or

16 downwards based on a "host of 'reasonableness' factors."  Id. at

17 942 (citing Hanlon, 150 F.3d at 1029).  While the lodestar method

18 is most often applied in class actions brought under fee-shifting

19 statutes or those where the relief obtained is not easily

20 monetized, it may be used in common fund cases as well.  Id. at

21 941–42.  In addition, the lodestar method may be used to

22 "crosscheck" the reasonableness of a percentage award.  Vizcaino,

23 290 F.3d at 1050–51.

24       Here, the Settlement Agreement provides for attorneys'

25 fees of up to $80,000.  (See Settlement Agreement ¶¶ 20-22.)

26 These fees "shall be paid separately by Shred-it to Class

27 Counsel."  (Id. ¶ 22, § B.)  Shred-it has agreed not to oppose an

28 application for attorney's fees, but "[a]ny fees not approved by

1  the Court shall not increase the Net Settlement Fund, but shall

2  only benefit Shred-it." (Id.) The court understands this

3  arrangement to mean that only $170,000 is available for

4  distribution to class members and that plaintiff's counsel seeks

5  a separate fee award directly from Shred-it.

6          Plaintiff's counsel states in a declaration that

7  "Plaintiff's counsel will only be seeking 25% of the gross

8  settlement, or $62,500." (Pl.'s Mem. at 22; Dion-Kindem Decl. ¶

9  11.) He further states that "given that this is a settlement

10  with a common-fund, a fee request of 25%, or $62,500 is fair and

11  reasonable." (Pl.'s Mem. at 23; Dion-Kindem Decl. ¶ 16.) The

12  court assumes counsel calculated this percentage in fees based on

13  the $250,000 in total liability that Shred-it faces under the

14  Settlement Agreement. (See Settlement Agreement ¶ 21 ("Shred-it

15  will pay the amount of $250,000 in settlement of all claims

16  asserted against it in this Action.").)

17          The court has doubts about the appropriateness of

18  justifying a fee award using a percentage-of-the-fund calculation

19  based on this amount. The Settlement Agreement does not

20  establish a common fund of $250,000. It states only that

21  "$250,000 is the total amount of money Shred-it will pay pursuant

22  to this settlement," (id. ¶ 20), and it arrives at that number by

23  combining the $170,000 available to class members with class

24  counsel's right to be paid a maximum of $80,000 from Shred-it.

25  Normal percentage-of-the-fund calculation arrives at an award

26  based on the amount available for distribution to class members.[5]

27  ─────────────────

28          [5]    The arrangement devised by plaintiff's counsel and
Shred-it differs from normal common fund procedure. "Under

1  See Staton, 327 F.3d at 967-69.   It is therefore particularly

2  troubling to the court that plaintiff's counsel bases his

3  percentage-of-the-fund calculation in part on an amount that

4  Shred-it may never pay.  (See Settlement Agreement ¶ 22, § B

5  ("Any fees not approved by the Court shall not increase the Net

6  Settlement Fund, but shall only benefit Shred-it.").)   Including

7  funds earmarked for other purposes may distort the reasonableness

8  of a fee award using the percentage method.[6]

9         If the court accepts plaintiff counsel's framing, the

10  maximum attorneys' fee award of $80,000 is approximately thirty-

11  two percent of $250,000.  If the court measures this award

12  against the amount available to for class members, however, an

13  award of $80,000 represents approximately forty-seven percent of

14  the amount recovered.  The same disparity appears with regard to

15  the amount plaintiff's counsel declares he will seek.  His

16  request of $62,500 is twenty-five percent of $250,000, but it is

17  approximately thirty-seven percent of $170,000.

18         Having noted its reservations, the court need not make

19  a final decision on the fee award in this Order.  See Murillo,

20  regular common fund procedure, the parties settle for the total

21  amount of the common fund and shift the fund to the court's
   supervision.  The plaintiffs' lawyers then apply to the court for

22  a fee award from the fund."  Staton, 327 F.3d at 969.  "The court
   then determines the amount of attorney's fees that plaintiffs'

23  counsel may recover from this fund, thereby diminishing the
   amount of money that ultimately will be distributed to the

24  plaintiff class."  Id. (quoting Florin v. Nationsbank of Georgia,
   N.A., 34 F.3d 560, 563 (7th Cir. 1994)).

25

26      [6]   The Manual For Complex Litigation cautions judges to
   beware of agreements that "calculat[e] the fee based on the

27  allocated settlement funds, rather than the funds actually
   claimed by and distributed to class members."  Manual For Complex

28  Litig., Fourth, § 21.61 (2004).

1  266 F.R.D. at 480 (granting preliminary approval of the

2  settlement despite concerns that the proposed fee award was

3  unreasonable).  Plaintiff's counsel has not yet presented

4  evidence to justify the amount he intends to request, such as

5  documentation of the amount of hours worked or a reasonable

6  hourly rate for a lawyer of his experience in the region.  See

7  Bluetooth, 654 F.3d at 942.  Accordingly, the court will

8  preliminarily approve the fee award on the understanding that

9  plaintiff's counsel must demonstrate, on or before the date of

10 the final Fairness Hearing, that the proposed award is reasonable

11 in light of the court's concerns.  In the event that counsel is

12 unable to do so, the court will be forced to reduce fees to a

13 reasonable amount or to deny final approval of this settlement.

14 See Vizcaino, 290 F.3d at 1047; Alberto, 252 F.R.D. at 667-68.

15        IT IS THEREFORE ORDERED that plaintiff's motion for

16 preliminary certification of a conditional settlement class and

17 preliminary approval of the class action settlement be, and the

18 same hereby is, GRANTED.

19        IT IS FURTHER ORDERED that:

20        (1)  the following class be provisionally certified for

21             the purpose of settlement:  All individuals as to

22             whom, from June 16, 2009, through June 16, 2014,

23             Shred-it procured or caused to be procured a

24             consumer report for employment purposes who signed

25             an authorization form, in electronic or written

26             form, allowing for consumer reports to be obtained

27             which included a liability release or other

28             language of any kind other than the authorization

1    and disclosure permitted under the Fair Credit

2    Reporting Act, 15 U.S.C. 1681b(b)(2);

3    (2)  the proposed settlement is preliminarily approved

4    as fair, just, reasonable, and adequate to the

5    members of the settlement class, subject to

6    further consideration at the final Fairness

7    Hearing after distribution of notice to members of

8    the settlement class;

9    (3)  for purposes of carrying out the terms of the

10    settlement only:

11    (a)  plaintiff Michael Kirchner is appointed

12    as the representative of the settlement

13    class and is provisionally found to be

14    an adequate representative within the

15    meaning of Rule 23;

16    (b)  The Dion-Kindem Law Firm and The

17    Blanchard Law Group, APC are

18    provisionally found to be a fair and

19    adequate representatives of the

20    settlement class and are appointed as

21    class counsel for the purposes of

22    representing the settlement class

23    conditionally certified in this Order;

24    (4)  Simpluris, Inc. is appointed as the settlement

25    administrator;

26    (5)  the form and content of the proposed Notice of

27    Settlement and Release of Claims Form are

28    approved, except to the extent that those forms

30

1       reflect dates modified by this Order;

2    (6) no later than five (5) days from the date this

3       Order is signed, Shred-it's counsel shall provide

4       the names and contact information of all

5       settlement class members to Simpluris;

6    (7) no later than seven (7) days from the date this

7       Order is signed, Simpluris shall mail the notice

8       form to all members of the settlement class;

9    (8) no later than sixty (60) days from the date this

10       Order is signed, any member of the settlement

11       class who intends to object to, comment upon, or

12       opt out of the settlement shall mail written

13       notice of that intent to Simpluris pursuant to the

14       instructions in the Notice of Settlement and

15       Release of Claims Form;

16    (9) a final Fairness Hearing shall be held before this

17       court on Monday, July 13, 2015, at 2:00 p.m. in

18       Courtroom 5 to determine whether the proposed

19       settlement is fair, reasonable, and adequate and

20       should be approved by this court; to determine

21       whether the settlement class's claims should be

22       dismissed with prejudice and judgment entered upon

23       final approval of the settlement; to determine

24       whether final class certification is appropriate;

25       and to consider class counsel's applications for

26       attorneys' fees, costs, and an incentive award to

27       plaintiff.  The court may continue the final

28       Fairness Hearing without further notice to the

1        members of the class;

2        (10)  no later than twenty-eight (28) days before the

3              final Fairness Hearing, class counsel shall file

4              with this court a petition for an award of

5              attorneys' fees and costs.  Any objections or

6              responses to the petition shall be filed no later

7              than fourteen (14) days before the final Fairness

8              Hearing.  Class counsel may file a reply to any

9              objections no later than seven (7) days before the

10             final Fairness Hearing;

11       (11)  no later than twenty-eight (28) days before the

12             final Fairness Hearing, class counsel shall file

13             and serve upon the court and Shred-it's counsel

14             all papers in support of the settlement, the

15             incentive award for the class representative, and

16             any award for attorneys' fees and costs;

17       (12)  no later than twenty-eight (28) days before the

18             final Fairness Hearing, Simpluris shall prepare,

19             and class counsel shall file and serve upon the

20             court and Shred-it's counsel, a declaration

21             setting forth the services rendered, proof of

22             mailing, a list of all class members who have

23             opted out of the settlement, a list of all class

24             members who have commented upon or objected to the

25             settlement, and copies of any forms received;

26       (13)  any person who has standing to object to the terms

27             of the proposed settlement may appear at the final

28             Fairness Hearing in person or by counsel and be

1    heard to the extent allowed by the court in

2    support of, or in opposition to, (a) the fairness,

3    reasonableness, and adequacy of the proposed

4    settlement, (b) the requested award of attorneys'

5    fees, reimbursement of costs, and incentive award

6    to the class representative, and/or (c) the

7    propriety of class certification.  To be heard in

8    opposition at the final Fairness hearing, a person

9    must, no later than sixty (60) days from the date

10   this Order is signed, (a) serve by hand or through

11   the mails written notice of his or her intention

12   to appear, stating the name and case number of

13   this action and each objection and the basis

14   therefore, together with copies of any papers and

15   briefs, upon class counsel and counsel for Shred-

16   it, and (b) file said appearance, objections,

17   papers, and briefs with the court, together with

18   proof of service of all such documents upon

19   counsel for the parties.  Responses to any such

20   objections shall be served by hand or through the

21   mails on the objectors, or on the objector's

22   counsel if any there be, and filed with the court

23   no later than fourteen (14) calendar days before

24   the final Fairness Hearing.  Objectors may file

25   optional replies no later than seven (7) calendar

26   days before the final Fairness Hearing in the same

27   manner described above.  Any settlement class

28   member who does not make his or her objection in

1        the manner provided herein shall be deemed to have

2        waived such objection and shall forever be

3        foreclosed from objecting to the fairness or

4        adequacy of the proposed settlement, the judgment

5        entered, and the award of attorneys' fees, costs,

6        and an incentive award to the class representative

7        unless otherwise ordered by the court.

8  Dated:  March 31, 2015

9        _____

10       WILLIAM B. SHUBB
         UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34